**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JAMES E. SHELTON, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>   v.<br><br>PURE ENERGY USA, PA, LLC d/b/a PURE ENERGY USA,<br><br>        Defendant. | CASE NO. 2:25-cv-03590-MMB |

<u>**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT
OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT**</u>

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................ 1

RELEVANT ALLEGATIONS AND FACTS ...................................................................... 2

      I.     The Allegations in the Complaint ...................................................................... 2

      II.    Pure Energy's Extrinsic Evidence ....................................................................... 4

APPLICABLE LEGAL STANDARDS ............................................................................... 4

      I.     Rule 12(b)(1) – Lack of Standing / Subject Matter Jurisdiction ......................... 4

      II.    Rule 12(b)(6) – Failure to State a Claim for Relief ........................................... 5

ARGUMENT ...................................................................................................................... 6

      I.     The Entire Complaint Should Be Dismissed Under Rule 12(b)(1) Because Extrinsic Evidence Shows that Plaintiff Lacks Article III Standing. ..................... 6

      II.    In the Alternative, The Entire Complaint Should Be Dismissed Under Rule 12(b)(6) For Failure to State a Claim for Relief Under the TCPA. ...................... 9

            A.     Plaintiff Fails to Sufficiently Plead a Theory of TCPA Liability. ............... 9

            B.     Plaintiff Also Fails to Plead Sufficient Facts Supporting Other Essential Elements of His Asserted TCPA Claims. ................................................... 17

CONCLUSION ................................................................................................................. 19

# TABLE OF AUTHORITIES

## CASES

*Aaronson v. CHW Grp., Inc.*,
2019 WL 8953349 (E.D. Va. Apr. 15, 2019) ................................................................ passim

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .................................................................................................................6

*Baccari v. Carguard Admin., Inc.*,
2022 WL 3213839 (E.D. Pa. Aug. 8, 2022) ................................................................ passim

*Ballentine v. U.S.*,
486 F.3d 806 (3d Cir. 2007) .................................................................................................4

*Bank v. Alleviate Tax, LLC*,
2024 WL 1332635 (E.D.N.Y. Mar. 28, 2024) ..................................................................16

*Bank v. Vivint Solar, Inc.*,
2019 WL 2280731 (E.D.N.Y. Feb. 25, 2019) ..................................................................15

*Barnes v. SunPower Corp.*,
2023 WL 2592371 (N.D. Cal. Mar. 16, 2023) ...........................................................13, 14

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .................................................................................................................5

*Belleville v. Florida Ins. Servs, Inc.*,
2024 WL 2342337 (S.D. Fla. May 23, 2024) ....................................................................16

*Bennett v. Celtic Ins. Co.*,
2022 WL 865837 (N.D. Ill. Mar. 23, 2022) ......................................................................14

*Bridges v. Torres*,
809 F.App'x 69 (3d Cir. 2020) .............................................................................................6

*Brown v. Nano Hearing Tech OPCP, LLC*,
2024 WL 3367536 (S.D. Cal. July 9, 2024) .......................................................................16

*CNA v. U.S.*,
535 F.3d 132 (3d Cir. 2008) .................................................................................................5

*Constitution Party of Pennsylvania v. Aichele*,
757 F.3d 347 (3d Cir. 2014) .................................................................................................5

*Cramer v. Ursuline Acad. of Wilmington, Del., Inc.*,
450 F.3d 130 (3d Cir. 2006) .................................................................................................6

*Cunningham v. Daybreak Solar Power, LLC*,
2023 WL 3985245 (N.D. Tex. June 13, 2023) ............................................................13, 17

*Dobronski v. Russo*,
2024 WL 4363118 (E.D. Mich. Sept. 30, 2024) ...............................................................16

*Dobronski v. Selectquote Ins. Servs.*,
462 F. Supp. 3d 784 (E.D. Mich. 2020) .............................................................................19

*Dobronski v. Selectquote Ins. Servs.*,
  773 F. Supp. 3d 373 (E.D. Mich. 2025)....................................................19

*Dobronski v. Selectquote Ins. Servs.*,
  2025 WL 900439 (E.D. Mich. Mar. 25, 2025) ...........................................19

*Dobronski v. Total Ins. Brokers, LLC*,
  2021 WL 4452218 (E.D. Mich. Sept. 29, 2021) .........................................19

*Doyle v. GoHealth, LLC*,
  2023 WL 3984951 (D.N.J. Mar. 30, 2023)...................................9, 15, 16

*Doyle v. Matrix Warranty Sols., Inc.*,
  2023 WL 4188313 (D.N.J. June 26, 2023) .........................................10, 16

*Eggleston v. Reward Zone USA LLC*,
  2022 WL 886094 (C.D. Cal. Jan. 28, 2022) ...............................................18

*Frank v. Cannabis & Glass, LLC*,
  2019 WL 4855378 (E.D. Wash. Oct. 1, 2019) ............................................15

*Gillam v. Reliance First Capital, LLC*,
  2023 WL 2163775 (E.D.N.Y. Feb. 22, 2023)........................................17, 18

*Greene v. Select Funding, LLC*,
  2021 WL 4926495 (C.D. Cal. Feb. 5, 2021)................................................17

*Hall v. Xanadu Mktg., Inc.*,
  682 F. Supp. 3d 1278 (N.D. Ga. 2023) .........................................................7

*Hamilton v. El-Moussa*,
  2020 WL 2614625 (C.D. Cal. Feb. 10, 2020)..............................................14

*Hurley v. Messer*,
  2018 WL 4854082 (S.D.W.Va. Oct. 4, 2018) .............................................10

*In re Dish Network, LLC*,
  2013 WL 1934349, 28 FCC Rcd. 6574 (2013)......................................10, 11

*In re Rules & Regs. Implementing the TCPA*,
  30 FCC Rcd. 7961 (2015)...............................................................................6

*Klein v. Just Energy Grp., Inc.*,
  2016 WL 3539137 (W.D. Pa. June 29, 2016)..............................................10

*Landy v. Nat. Power Sources, LLC*,
  2021 WL 3634162 (D.N.J. Aug. 17, 2021) .................................................10

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
  572 U.S. 118 (2014)....................................................................................5, 6

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992)....................................................................................5, 9

*Matthews v. Senior Life Ins. Co.*,
  2025 WL 1181789 (E.D. Va. Apr. 22, 2025) ..............................................15

*Metzler v. Pure Energy USA LLC*,
  2023 WL 1779631 (S.D.N.Y. Feb. 6, 2023)..................................2, 12, 13

*Meyer v. Cap. All. Grp.*,
    2017 WL 5138316 (S.D. Cal. Nov. 6, 2017) ...................................................................19

*Morse v. Lower Merion Sch. Dist.*,
    132 F.3d 902 (3d Cir. 1997) ......................................................................................6

*Mortensen v. First Fed. Sav. & Loan Ass'n*,
    549 F.2d 884 (3d Cir. 1977) .................................................................................5, 17

*Murray v. Choice Energy, LLC*,
    2015 WL 4204398 (S.D. Ohio July 10, 2015) ...............................................................14

*Nelums v. Mandu Wellness, LLC*,
    2023 WL 5607594 (D.N.M. Aug. 30, 2023) ..................................................................10

*Norman v. Northern Ill. Gas Co. Inc.*,
    2014 WL 184774 (N.D. Ill. Jan. 16, 2014) ...................................................................18

*Pascal v. Agentra, LLC*,
    2019 WL 5212961 (N.D. Cal. Oct. 16, 2019) ...............................................................10

*Public Int. Research of NJ v. Powell Duffryn*,
    913 F. 2d 64 (3rd. Cir. 1990) ....................................................................................5

*Rogers v. Assurance IQ, LLC*,
    2023 WL 2646468 (W.D. Wash. Mar. 27, 2023) ......................................................15, 17

*Santiago v. Warminster Township*,
    629 F.3d 121 (3d. Cir. 2010) ....................................................................................6

*Scruggs v. CHW Grp., Inc.*,
    2020 WL 9348208 (E.D. Va. Nov. 12, 2020) .........................................................11, 15

*Sheski v. Shopify (USA) Inc.*,
    2020 WL 2474421 (N.D. Cal. May 13, 2020) ...............................................................10

*Simon v. Eastern Ky. Welfare Rights Org.*,
    426 U.S. 26 (1976) ..................................................................................................9

*Smith v. Direct Building Supplies, LLC*,
    2021 WL 4623275 (E.D. Pa. Oct. 7, 2021) ...............................................9, 10, 11, 15

*Smith v. Vision Solar LLC*,
    2020 WL 5632653 (E.D. Pa. Sept. 21, 2020) .........................................................9, 10, 11

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016) ..................................................................................................5

*St. Louis Heart Ctr., Inc. v. Nomax, Inc.*,
    899 F.3d 500 (8th Cir. 2018), *cert. denied,* 139 S. Ct. 1198 (2019) ...................................7

*Stewart v. Network Cap. Funding Corp.*,
    549 F. Supp. 3d 1058 (C.D. Cal. 2021) ........................................................................7

*Weingrad v. Top Healthcare Options Ins. Agency Co.*,
    2024 WL 4228149 (E.D. Pa. Sept. 17, 2024) ...............................................................18

*Wick v. Twilio Inc.*,
    2017 WL 2964855 (W.D. Wash. July 12, 2017) ......................................................14, 15

*Winner v. Kohl's Dept. Stores, Inc.*,
    2017 WL 3535038 (E.D. Pa. Aug. 17, 2017) .................................................7

*Woodard v. Health Ins. All.*,
    2024 WL 942629 (N.D. Ill. Mar. 5, 2024).................................................15

*Worsham v. Travel Options, Inc.*,
    2016 WL 4592373 (D. Md. Sept. 2, 2016) .................................................19

*Zarichny v. Complete Payment Recovery Servs., Inc.*,
    80 F. Supp. 3d 610 (E.D. Pa. 2015) .................................................17

## STATUTES

47 U.S.C. § 227 *et seq.*.................................................... passim

## OTHER AUTHORITIES

47 C.F.R. § 64.1200 .................................................9, 17

47 C.F.R. § 64.1601(e).................................................9, 19

U.S. Const., Art. III.................................................. passim

## RULES

Fed. R. Civ. P. 12(b)(1).................................................. passim

Fed. R. Civ. P. 12(b)(6).................................................. passim

## INTRODUCTION

In his Complaint, Plaintiff James Shelton, a serial litigant who is no stranger to this Court, conclusorily alleges that Pure Energy violated certain provisions of the Telephone Consumer Protection Act ("TCPA") by placing unsolicited marketing calls to his cell phone. *See generally* Dkt. 1. As shown herein, such allegations are woefully insufficient and cannot withstand dismissal here.

While the Complaint is facially deficient in several respects, its primary defect is more fundamental and relates to Plaintiff's lack of standing. That is because extrinsic evidence submitted with this Motion demonstrates that Plaintiff's alleged injuries are not "fairly traceable" to Pure Energy, as required to have standing under Article III of the U.S. Constitution to pursue this action.[1] In fact, this evidence shows (among other things) that Pure Energy does not place outbound marketing calls at all, did not have any involvement in placing any calls to Plaintiff, and indeed contractually prohibits third parties from making outbound marketing calls on its behalf. In short, ***Pure Energy simply had nothing to do with the alleged calls here***, and the conduct discussed in the Complaint is not attributable to Pure Energy even at the most basic level. Given his lack of standing, Plaintiff's Complaint should be dismissed under Fed. R. Civ. P. 12(b)(1) for lack of federal subject matter jurisdiction. *See Baccari v. Carguard Admin., Inc.*, 2022 WL 3213839, at *2–3 (E.D. Pa. Aug. 8, 2022) (Beetlestone, J.) (dismissing TCPA complaint under 12(b)(1) where defendant presented similar extrinsic "evidence directly contradicting the bases for [plaintiff]'s standing").

Even if Plaintiff had standing (and he does not), Plaintiff's Complaint is facially defective and should be dismissed under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. Among other deficiencies, Plaintiff baldly concludes, without any requisite factual support, that he received three calls (none of which he answered) either from Pure Energy itself "and/or" from unidentified

---

[1] *See generally* Declaration of Michael Larsen ("Larsen Decl."), attached hereto.

"affiliates, agents, and/or other persons or entities acting on [its] behalf." Dkt. 1, ¶¶ 44, 53, 55, 59, 61. But Plaintiff fails to meaningfully connect the relevant calls to Pure Energy, much less plausibly establish that Pure Energy bears any legal responsibility for the subject calls or that they even violated the TCPA in the first instance.[2] In all, such threadbare allegations do not meet federal pleadings standards and cannot survive dismissal in any federal case, much less under the weight of applicable authority on the standards for adequately pleading TCPA claims. *See, e.g., Metzler v. Pure Energy USA LLC*, 2023 WL 1779631, at *5-6 (S.D.N.Y. Feb. 6, 2023) (dismissing similarly ill-pled TCPA complaint against Pure Energy by another plaintiff under Rule 12(b)(6) with prejudice). Therefore, Plaintiff's entire Complaint must be dismissed under Rules 12(b)(1) and/or 12(b)(6).

## RELEVANT ALLEGATIONS AND FACTS

### I.    The Allegations in the Complaint

Plaintiff's Complaint alleges (or, rather, concludes) that Plaintiff "received at least three telemarketing calls from the Defendant in June 2025" made to his purported "residential" cell phone number—a number he claims "has been listed on the National Do Not Call Registry for over a year prior to the calls at issue." Dkt. 1, ¶¶ 17, 21, 22, 24. Demonstrating the implausibility of his allegations from the start, Plaintiff seemingly claims the first two calls occurred simultaneously on June 23, 2025 at 4:02 p.m. and originated from someone using the phone number (833) 423-0533. *Id*. ¶ 25. But he did not answer them. *Id*. The third call allegedly occurred on June 24, 2025 at 12:03 p.m. and originated from the same toll-free number. *Id*. ¶ 26. Plaintiff again did not answer. *Id*.

Later that day, Plaintiff "called back (833) 423-0533 to see who had called him" and spoke with "Tessa" from "Energy Source Services" (*i.e.*, <u>not</u> Pure Energy), who purportedly stated the company "was calling and looking to assist all Pennsylvania electric customers to ensure they were

---

[2] To the contrary, Plaintiff admits the subject calls were from <u>third party</u> called "Energy Source Services" and <u>not</u> Pure Energy.  *Id.* ¶ 28. He is just throwing darts at a dartboard, not pleading facts.

getting their benefits applied to onto the correct account by a competitive energy supplier." *Id*. ¶¶ 27-28. This inbound call apparently dropped, at which time Plaintiff called the number back again. *Id*. ¶¶ 29-30. This time, Plaintiff apparently spoke with "Travis" who also said he was with "Energy Source Services." *Id*. ¶ 30. On this inbound call, Plaintiff "told Travis he had another property in King of Prussia Pennsylvania and provided him with his electric account number." *Id*. ¶ 32. "Travis" then "told Plaintiff he would be eligible for a reimbursement of up to $200 from Pure Energy USA every six months." *Id*. ¶ 33. After apparently agreeing to sign-up, Plaintiff completed an ill-described "third party verification process" during the call. *Id*. ¶¶ 34-35. Then, on some unspecified later date, Plaintiff contends he received a contract in the mail that "identified" Pure Energy USA PA, LLC. *Id*. ¶¶ 35-36. Plaintiff does not, however, allege that "Tessa" or "Travis" were Pure Energy employees, let alone that either of them confirmed Pure Energy itself placed the alleged calls at issue.

In any event, though Plaintiff does not allege what his cell phone's caller ID displayed at the time of these calls, he vaguely avers that his counsel has the ability to query "the Caller ID database of the calling carrier" to show what caller ID information would have been displayed, and that the carrier was "transmitting a placeholder indicating that the call was a toll free call, instead of the caller's name." *Id*. ¶¶ 37-38. Yet, Plaintiff provides no factual support for his conclusion that the "carrier" his counsel supposedly queried has any connection to Pure Energy; and he otherwise pleads nothing remotely connecting Pure Energy to the alleged 833 phone number used by the caller(s).

Nevertheless, based solely on the foregoing threadbare and wholly speculative allegations, Plaintiff equivocates and baldly concludes that "Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf violated the TCPA." *Id*. ¶¶ 44, 53, 55, 59, 61.

## II.    <u>Pure Energy's Extrinsic Evidence</u>

Extrinsic evidence submitted with this Motion tells a much different story. In reality, Plaintiff did <u>not</u> receive any calls from or on behalf of Pure Energy, as alleged. *See* Larsen Decl., ¶¶ 7-13. In fact, this evidence shows that Pure Energy purposefully goes far out of its way to <u>avoid</u> telemarketing issues and, thus, that Plaintiff's alleged harm in this case could not possibly be traceable to Pure Energy. For example, among other things, Pure Energy: (i) does <u>not</u> make any outbound calls to market its services at all and could not have called Plaintiff, (ii) does <u>not</u> permit any third parties who work with Pure Energy to make outbound marketing calls on its behalf to sell its services, and indeed ***contractually prohibits*** any such calls, (iii) does not own, use, or have any connection with the toll-free 833 number allegedly used to call Plaintiff, and (iv) did not authorize or have any involvement in the alleged calls to Plaintiff. *Id*. Instead, Pure Energy has adopted a strictly consumer-initiated marketing program, whereby: (i) it works with third-party independent contractors (who are not employees of Pure Energy and, again, contractually prohibited from making outbound marketing calls on its behalf) to place internet ads on third party websites; and (ii) consumers must make an ***inbound*** call to the contractor (using a phone number in the internet ad) to inquire about and purchase Pure Energy's services. *Id.* ¶¶ 7-10. Beyond the aforementioned contractual prohibition on outbound marketing calls, however, Pure Energy does not direct or have control over, knowledge of, or involvement in the calling activities of these independent contractors. *Id.* ¶¶ 11, 13.

## <u>APPLICABLE LEGAL STANDARDS</u>

## I.    <u>Rule 12(b)(1) – Lack of Standing / Subject Matter Jurisdiction</u>

Rule 12(b)(1) mandates dismissal of a complaint for lack of federal subject matter jurisdiction where, as here, a federal plaintiff fails to establish his or her standing under Article III of the United States Constitution. *See, e.g., Ballentine v. U.S.*, 486 F.3d 806, 810 (3d Cir. 2007). To

show Article III standing and avoid dismissal under Rule 12(b)(1), Plaintiff bears the sole burden of demonstrating that: (1) he suffered a concrete and particularized "injury in fact," (2) there is a causal connection between the injury and the alleged unlawful conduct complained of (*a.k.a.* "causation" or "traceability"), and (3) the injury is capable of being redressed via a favorable decision (*a.k.a.* "redressability"). *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). The second element requires that the alleged "injury in fact" be "fairly traceable" only to the <u>defendant's</u> conduct, not to anyone else. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 125 (2014). To meet the "traceability" requirement, a plaintiff must show there was a "substantial likelihood" that the defendant's conduct caused the alleged harm. *Public Int. Research of NJ v. Powell Duffryn*, 913 F. 2d 64, 72 (3rd. Cir. 1990).

Further, a defendant can raise either a "facial" or a "factual" challenge to a plaintiff's standing under Rule 12(b)(1). *Baccari*, 2022 WL 3213839, at *2 (citations omitted). A factual standing challenge, as Pure Energy makes in this motion, "concerns the actual failure of a plaintiff's claims to comport factually with the jurisdictional prerequisites." *CNA v. U.S.,* 535 F.3d 132, 139 (3d Cir. 2008) (cleaned up). Put differently, a factual standing challenge argues "that there is no subject matter jurisdiction because the facts of the case . . . do not support the asserted jurisdiction." *Constitution Party of Pennsylvania v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014). In evaluating a factual challenge, therefore, "evidence outside of the pleadings may be weighed and considered, and 'no presumptive truthfulness attaches' to the facts pled in the [C]omplaint." *Baccari*, 2022 WL 3213839, at *2 (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)).

## II.      <u>Rule 12(b)(6) – Failure to State a Claim for Relief</u>

It is axiomatic that bare assertions or conclusory allegations will not suffice to avoid a dismissal under Rule 12(b)(6). *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007). A

"formulaic recitation of the elements" of a claim also fails to meet the requisite pleading standard. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While this Court must accept well-pled factual allegations as true under Rule 12(b)(6), it need not accept conclusory allegations or bare legal conclusions, nor must the court draw unwarranted or unreasonable inferences from the Complaint. *See, e.g., Cramer v. Ursuline Acad. of Wilmington, Del., Inc.*, 450 F.3d 130, 133 (3d Cir. 2006); *Bridges v. Torres*, 809 F.App'x 69, 71 (3d Cir. 2020); *Santiago v. Warminster Township,* 629 F.3d 121, 128 (3d. Cir. 2010); *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir. 1997).

## ARGUMENT

As the FCC noted, the TCPA "has strayed far from its original purpose" as a beneficial remedial statute and has "become the poster child for lawsuit abuse" ever since its enactment. *In re Rules & Regs. Implementing the TCPA*, 30 FCC Rcd. 7961, 8073 (2015). Given this potential for abuse by profit-seeking plaintiffs and their counsel, federal courts across the country (particularly in this Circuit) have strictly held TCPA plaintiffs to applicable pleadings standards. Plaintiff here fails to satisfy those standards and, more fundamentally, simply lacks standing to assert his TCPA claims.

### I.    The Entire Complaint Should Be Dismissed Under Rule 12(b)(1) Because Extrinsic Evidence Shows that Plaintiff Lacks Article III Standing.

As a threshold factual issue, the Complaint must be dismissed under Rule 12(b)(1) because Plaintiff lacks Article III standing, as extrinsic evidence submitted herewith shows that he did not suffer any "injury in fact" that is "fairly traceable" to Pure Energy. *See Lexmark*, 572 U.S. at 125.

The *Baccari* case cited above is highly instructive on this point, as the facts are closely analogous to those at bar. There, the plaintiff filed a TCPA complaint claiming a third-party made certain phone calls on behalf of the defendant. Like in the present case, those claims were supported by a variety of purely conclusory allegations. *See* 2022 WL 3213839, at *3. The defendant asserted an Article III factual standing challenge under Rule 12(b)(1) and submitted extrinsic evidence,

including a sworn declaration from a corporate officer, "directly contradicting the bases for [plaintiff's] standing." *Id*. This evidence showed that the defendant had no connection to the alleged calls. In fact, similar to Pure Energy here, the defendant in *Baccari* "contractually prohibited" the alleged third-party caller "from engaging in any form of telemarketing to market [the defendant's] products," thereby "break[ing] the factual link" between the defendant and the plaintiff's alleged harm, as Judge Beetlestone held. *Id*. Thus, given the plaintiff's lack of standing, Judge Beetlestone dismissed the entire complaint under Rule 12(b)(1) for lack of subject matter jurisdiction. *Id*.

*Baccari* does not stand alone on this point, and other courts in this Circuit and nationally have dismissed TCPA cases in response to factual standing challenges under Rule 12(b)(1) where, as here, evidence showed that the plaintiff lacked an injury traceable to the defendant. *See, e.g., Winner v. Kohl's Dept. Stores, Inc.,* 2017 WL 3535038, at *7-8 (E.D. Pa. Aug. 17, 2017); *Stewart v. Network Cap. Funding Corp.*, 549 F. Supp. 3d 1058, 1059 (C.D. Cal. 2021); *Hall v. Xanadu Mktg., Inc.,* 682 F. Supp. 3d 1278, 1285-1286 (N.D. Ga. 2023); *St. Louis Heart Ctr., Inc. v. Nomax, Inc.,* 899 F.3d 500, 504 (8th Cir. 2018), *cert. denied,* 139 S. Ct. 1198 (2019). This Court should join them.

Here, the extrinsic evidence shows that Pure Energy had no relevant connection with the subject calls in this case—and likewise contractually prohibits third parties from engaging telemarketing on its behalf—and, therefore, that Plaintiff did not suffer an injury-in-fact traceable to Pure Energy. *See* Larsen Decl., ¶¶ 7-13. To the contrary, Pure Energy did <u>not</u> call Plaintiff, did <u>not</u> know of or participate in any such calls, did <u>not</u> authorize (and indeed forbade) any third parties to make any outbound marketing calls to anyone, and has <u>zero</u> connection with the caller's phone number (which, if called, does not reach Pure Energy in any event). *Id*. Moreover, Pure Energy's marketing program is strictly (and quite purposefully) consumer initiated, where the consumer must initiate the sale process by making an inbound call to the contractor before there is any sale of its

services, and Pure Energy has no involvement in this process. *Id*. ¶¶ 7-10. In summary, this evidence shows Plaintiff did not suffer any injury at all in this case, as he simply did not receive any call from or made on behalf of Pure Energy, let alone a call that is fairly traceable to Pure Energy sufficient for Article III standing to bring a TCPA claim. Put differently and quite aptly by Judge Beetlestone in *Baccari*, this evidence firmly "break[s] the factual link" between Pure Energy and Plaintiff's alleged harm in this case, and shows that he lacks Article III standing. 2022 WL 3213839, at *3.

Plaintiff's own pled allegations, as conclusory and facially-deficient as they may be, help destroy this link. For example, though he dubiously claims to have received three inbound calls from the same 833 number—two of which somehow occurred at the exact same time—Plaintiff readily admits that he did not answer these calls and he does not connect the number used to Pure Energy at all. *See* Dkt. 1, ¶¶ 24-27. Plaintiff also admits that he initiated two ***inbound*** calls to that 833 number, reached a ***third party*** ("Energy Source Services"), and voluntarily (albeit inexplicably) completed a verification process on the second inbound call. *Id*. ¶¶ 28-35.[3] Yet, Plaintiff does <u>not</u> allege that (i) he ever spoke to someone from Pure Energy at any point for any call, (ii) anyone he spoke to identified Pure Energy as having placed the three subject calls to him or confirmed they were placed on behalf of Pure Energy, or (iii) he was solicited to purchase Pure Energy's services specifically.

Moreover, it was not until the second inbound call he made to the third party caller (Energy Source Services)—where Plaintiff lied and falsely expressed interest in receiving a rebate about a ***different*** property—that Pure Energy's name was even mentioned. *Id.* ¶¶ 32-33. Assuming *arguendo* that the same third party made the three calls at issue to Plaintiff's cell phone, the bottom line (per the irrefutable evidence submitted here) is that Pure Energy did not cause, have anything to do with,

---

[3] Of course, inbound calls by Plaintiff do not violate the TCPA. Only the three alleged calls to his cell phone (if they even occurred, which is not conceded) could result in a violation. But, again, Pure Energy contractually prohibits third parties from engaging in any form of outbound telemarketing to market its services and only permits them to receive inbound calls to make a sale.

authorize, or even know about those three calls. *See* Larsen Decl., ¶¶ 7-13. In all, therefore, Plaintiff's alleged harm (if any) from the calls at issue here is not traceable to any conduct by Pure Energy. *See Lujan*, 504 U.S. at 560-61 (an injury not fairly traceable to the defendant for Article III standing purposes if it is "'th[e] result [of] the ***independent action of some third party*** not before the court'") (emphasis added) (quoting *Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 41–42 (1976)). Thus, as a factual matter, Plaintiff lacks Article III standing, which deprives this Court of federal subject matter jurisdiction and mandates dismissal of his entire Complaint under Rule 12(b)(1).

## II.    In the Alternative, The Entire Complaint Should Be Dismissed Under Rule 12(b)(6) For Failure to State a Claim for Relief Under the TCPA.

Beyond his obvious lack of standing, which alone is fatal to both claims, Plaintiff's entire Complaint is also subject to dismissal on its face under Rule 12(b)(6) for failure to state a claim. In Count I of the Complaint (*see* ¶¶ 51-56), Plaintiff invokes the TCPA's "Do Not Call" ("DNC") rules which, in pertinent part, prohibit "initiat[ing]" more than one "telephone solicitation" call "by or on behalf of the same entity" in a 12-month period to a "residential telephone subscriber who has registered his or her telephone number" on the National DNC Registry. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2). In Count II (*see* ¶¶ 57-62), Plaintiff invokes 47 C.F.R. § 64.1601(e), which contains technical regulations relating to Caller ID requirements. As demonstrated below, however, Plaintiff failed to plausibly allege such claims with sufficient supporting facts in several key ways.

### A.    Plaintiff Fails to Sufficiently Plead a Theory of TCPA Liability.

There are only two potential theories of TCPA liability that must be adequately plead in <u>all</u> cases to avoid a dismissal under Rule 12(b)(6): direct liability and vicarious liability. *See, e.g., Smith v. Vision Solar LLC*, 2020 WL 5632653, at *3 (E.D. Pa. Sept. 21, 2020) (**Baylson, J**.) (citing *Aaronson v. CHW Grp., Inc.,* 2019 WL 8953349, at *2 (E.D. Va. Apr. 15, 2019)); *Smith v. Direct Building Supplies, LLC*, 2021 WL 4623275, at *3 (E.D. Pa. Oct. 7, 2021); *Doyle v. GoHealth, LLC*,

2023 WL 3984951, at *4–6 (D.N.J. Mar. 30, 2023); *Doyle v. Matrix Warranty Sols., Inc.,* 2023 WL 4188313, at *4 (D.N.J. June 26, 2023); *Landy v. Nat. Power Sources, LLC,* 2021 WL 3634162, at *3 (D.N.J. Aug. 17, 2021). As one court summarized, "for a person to 'make' [or 'initiate'] a call under the TCPA [and thus be subject to any TCPA liability], the person must either (1) directly make the call, or (2) have [a common law] agency relationship with the person who made the call." *Pascal v. Agentra, LLC*, 2019 WL 5212961, at *2 (N.D. Cal. Oct. 16, 2019) (citation omitted).

Failure to adequately plead these theories warrants dismissal of <u>any</u> TCPA claim under Rule 12(b)(6), regardless of whether facts supporting other essential elements of the claim. *See, e.g., Nelums v. Mandu Wellness, LLC*, 2023 WL 5607594, at *9 (D.N.M. Aug. 30, 2023) ("Because Plaintiff fails to satisfy the first elements of the TCPA and [an equivalent state statute]—that Defendants were directly or vicariously liable for the [subject] text messages—the Court does not reach Defendants' arguments regarding whether Plaintiff adequately plead the other elements" of the asserted claims.). *See also Hurley v. Messer*, 2018 WL 4854082, at *4 (S.D.W.Va. Oct. 4, 2018) (recognizing plaintiffs must plead such theories without the benefit of discovery). Here, Plaintiff's Complaint fails to plausibly allege either theory, as is required, warranting its complete dismissal.

As to the former theory, direct TCPA liability applies <u>only</u> to persons or entities that "initiate" or "make" telemarketing calls directly to the plaintiff. *Sheski v. Shopify (USA) Inc.*, 2020 WL 2474421, at *2 (N.D. Cal. May 13, 2020) (citing *In re Dish Network, LLC*, 2013 WL 1934349, 28 FCC Rcd. 6574, 6583 ¶ 26 (2013). *Accord Direct Building Supplies*, 2021 WL 4623275, at *3 (citing, *inter alia, Aaronson*); *Vision Solar*, 2020 WL 5632653, at *3 (same); *Klein v. Just Energy Grp., Inc.*, 2016 WL 3539137, at *8 (W.D. Pa. June 29, 2016) (citation omitted). In this context, "a person or entity 'initiates' a telephone call when it takes the steps necessary to ***physically place*** a telephone call, and generally does not include persons or entities, such as third-party retailers, that might merely

have some role, however minor, in the causal chain that results in the making of a telephone call."
*In re Dish Network, LLC*, 28 FCC Rcd. at 6583 ¶ 26 (emphasis added). As Judge Schiller aptly
summarized, "'[a]t the pleadings stage, plaintiff must allege facts to support his conclusion or belief
that defendant is the party that [physically] made the calls to plaintiff's cellular phone.'" *Direct
Building Supplies,* 2021 WL 4623275, at *3 (quoting *Scruggs v. CHW Grp., Inc.,* 2020 WL 9348208,
at *10 (E.D. Va. Nov. 12, 2020)). In short, there must be a "direct connection between a person or
entity and the making of a call" for direct TCPA liability to attach. *In re Dish Network, LLC*, 28 FCC
Rcd. at 6583 ¶ 26. An <u>indirect</u> connection will not suffice.

This Court's prior ruling in *Vision Solar* is instructive on this point. There, the Court found
that the plaintiff did not sufficiently plead the subject calls were physically placed by the defendant,
where he only alleged that the "[d]efendant contacted or attempted to contact [one of the plaintiffs]
from multiple telephone numbers confirmed to belong to Defendant." 2020 WL 5632653, at *3.
Similarly, in *Direct Building Supplies*, Judge Schiller ruled that the plaintiff had "not pleaded facts
sufficient to identify Direct Building Supplies as the initiator of the offending calls" for direct
liability purposes—*i.e.,* that it physically placed them—because he merely alleged in a conclusory
fashion that the defendant "called" him, "placed multiple calls soliciting its business to Plaintiff,"
and/or "contacted" him "in an attempt to solicit Plaintiff to purchase [d]efendant's services." 2021
WL 4623275, at *3 (applying, *inter alia, Scruggs*, *Vision Solar*, and *Aaronson*, *supra*). The
complaint in that case likewise "provide[d] no details specifying how Smith knew that Direct
Building Supplies in fact [physically] placed these calls. *Id*. All this rings true in this case.

Here, Plaintiff concludes he "received at least three telemarketing calls from the Defendant."
Dkt. 1, ¶¶ 25-29. However, Plaintiff fails to allege facts directly connecting Pure Energy to the
physical placement of these calls. In fact, Plaintiff did not even answer them, nor does he allege the

caller left messages referencing Pure Energy in any fashion. *Id*. ¶¶ 25-26. Nor does he claim that Pure Energy's name appeared on his Caller ID—in fact, he claims the opposite (none did). *Id*. ¶ 37. Plaintiff also does not allege Pure Energy owns or uses the 833 number allegedly used to place them.

Rather, he alleges that *he* called the 833 number back and spoke to someone from "Energy Source Services," *not Pure Energy*, who supposedly told him that Energy Source Services was "looking to assist all Pennsylvania electric customers to ensure they were getting their benefits applied to onto the correct account by getting a competitive electric supplier." *Id*. ¶ 28. And after that call unexpectedly dropped, Plaintiff made *another* inbound call and again spoke to someone from Energy Source Services who informed Plaintiff that they "assist[] customers with their utilities and the 'customer choice program on their bill.'" *Id*. ¶¶ 29-30. Yet, neither individual from Energy Source Services indicated they were associated with or calling on Pure Energy's behalf or were Pure Energy employees. And it was not until after Plaintiff lied on the second inbound call he made to Energy Source Services (about a different property no less) that Pure Energy's name was mentioned—and even then, the person with whom he allegedly spoke ("Travis") did not give any indication that Pure Energy physically placed the three subject calls to his cell or even knew about them. *Id*. ¶¶ 32-33.

In sum, these conclusory allegations fail to show **<u>any</u>** meaningful connection between Pure Energy and the person or entity that physically placed the subject calls, much less the **<u>direct</u>** connection required to plausibly allege direct TCPA liability. In other words, there is nothing in the Complaint remotely supporting an inference Pure Energy took any steps necessary to physically place the three calls at issue, as is required to plead direct TCPA liability. Therefore, the Complaint should be dismissed on this basis. *See Metzler*, 2023 WL 1779631, at *6 (dismissing on this basis, holding that while a plaintiff "does not have to 'definitively connect' [the defendant] to the [subject]

call[s], he does have to allege facts from which the Court can plausibly infer that [the defendant] has direct liability, even if it is also plausible that a third party made the call.").

The allegations in this case are even more deficient than those in *Metzler*. As such, Plaintiff's Complaint should suffer the same fate. Indeed, in *Metzler*, the plaintiff alleged that he received a "ringless" voicemail (*i.e.,* a voicemail message sent to his cell phone) that identified "PECO," not Pure Energy. However, the plaintiff there attempted to connect Pure Energy to the calls by concluding that the phone number from which the call originated was "owned or operated" by Pure Energy and that, when he called the phone number back, he "connected to an agent who identified herself as a Pure Energy USA representative" and "informed [p]laintiff that 'his new energy supplier will be Pure Energy USA.'" *See* 2023 WL 1779631, at *6 The court found these allegations at best showed some relation to Pure Energy but were insufficient to plausibly allege that Pure Energy <u>directly</u> placed the subject call to the plaintiff. *See id*. ("Those facts confirm that the voicemail related to Defendant, but they do not allow the Court to infer that Defendant—as opposed to a telemarketer working to drum up business for Defendant—[physically] made the call at issue"). The same deficiencies exist here.

Indeed, the <u>only</u> arguably non-conclusory allegation connecting Pure Energy to the subject calls is a vague assertion that, after he mentioned "another property" (*i.e.*, not the property that the callers were calling about), "Travis" from "Energy Source Services" informed Plaintiff that he "would be eligible for a reimbursement of up to $200 from Pure Energy USA." Dkt. 1, ¶¶ 32, 33. However, mere mention of a defendant's name or products on a call does not plausibly establish direct TCPA liability, without more. *See, e.g., Cunningham v. Daybreak Solar Power, LLC,* 2023 WL 3985245, at *2 (N.D. Tex. June 13, 2023) (dismissing, use of defendant's name in voicemail alone insufficient); *Barnes v. SunPower Corp.,* 2023 WL 2592371, at *3 (N.D. Cal. Mar. 16, 2023) (dismissing, even though one plaintiff spoke to someone "who identified herself as working for"

defendant, and the other received an email from defendant after the call); *Murray v. Choice Energy, LLC*, 2015 WL 4204398, at *2 (S.D. Ohio July 10, 2015) (dismissing, even though plaintiff was "informed that the call was from Choice Energy," where there were "no factual allegations … that Choice Energy had any active role or involvement in [physically] placing the calls").

The foregoing analytical approach represents a proper application of federal pleadings standards in TCPA cases, which federal courts across the country have employed for decades. That is because courts correctly recognize companies often hire third parties to handle their outbound communications. Indeed, calls from a third-party call vendor would naturally identify the defendant by name and may result in subsequent communications identifying the defendant, like Plaintiff alleges. But such calls are not "physically placed" by the defendant and thus cannot support direct TCPA liability. *See, e.g., Bennett v. Celtic Ins. Co.,* 2022 WL 865837, at *3 (N.D. Ill. Mar. 23, 2022) (dismissing on this basis, holding "a [TCPA] defendant 'generally does not [physically] initiate calls placed by third-party telemarketers,' even if the third party had acted on its behalf"); *Wick v. Twilio Inc.,* 2017 WL 2964855, at *3 (W.D. Wash. July 12, 2017) ("The FCC recognizes that merely offering a good or service for sale does not mean that a retailer initiates the marketing calls for that product"). In sum, these cases (and many others) demonstrate that the alleged content of a call alone is not dispositive of direct liability, and more factual enhancement is needed. Plaintiff provides none.[4]

Instead, Plaintiff's Complaint is perhaps more notable for the facts it omits on this front. For example, Plaintiff does not allege any facts indicating, *inter alia,* that (i) Pure Energy owns or uses

---

[4] While Plaintiff also vaguely contends he received a "contract" that "identified" Pure Energy on some unspecified date after the subject calls, he does not allege any facts connecting that "contract" to the subject calls in any fashion. Dkt. 1, ¶ 36. This ***subsequent*** communication is insufficient alone to plausibly infer that the subject calls came ***directly*** from Pure Energy. *See, e.g., Hamilton v. El-Moussa,* 2020 WL 2614625, at *2 (C.D. Cal. Feb. 10, 2020) (email from defendant received after call insufficient to plausibly allege direct or vicarious TCPA liability); *see also Barnes*, *supra*.

the alleged callers' numbers, (ii) he called those numbers back and reached Pure Energy (in fact, he confirms that it does not), (iii) he ever spoke to a Pure Energy employee, or (iv) Pure Energy's name appeared on his Caller ID (in fact, he pleads a name was not displayed). Such facts, if pled, could support an inference of direct TCPA liability, as other courts have recognized. *See, e.g., Direct Building Supplies,* 2021 WL 4623275, at *3; *Aaronson*, 2019 WL 8953349, at *4; *Doyle*, 2023 WL 3984951, at *4–6; *Bank v. Vivint Solar, Inc.*, 2019 WL 2280731, at *2 (E.D.N.Y. Feb. 25, 2019), *report and rec. adopted*, 2019 WL 1306064 (Mar. 22, 2019) (each dismissing on this basis where complaint lacked such specific facts about the numbers, calls, and callers at issue). That Plaintiff did not plead such facts, which should be within his knowledge, is fatal and warrants dismissal of his Complaint on direct liability grounds. *See Matthews v. Senior Life Ins. Co.*, 2025 WL 1181789, at *3 (E.D. Va. Apr. 22, 2025) (dismissing and holding "[a]s a party to these calls, [p]laintiff[s] 'should be able to provide greater detail" in their complaints) (quoting *Scruggs,* 2020 WL 9348208, at *3).

At bottom, Plaintiff's allegations amount to nothing more than bald conclusions and rank speculation that the subject calls came either "from" Pure Energy and/or countless unidentified third parties. *See* Dkt. 1, ¶¶ 44, 53, 55, 59, 61 (alleging, *inter alia*, that the calls were placed either by Pure Energy "and/or" "affiliates, agents, and/or other persons or entities acting on [its] behalf"). Consistent with bedrock federal pleadings standards, however, it is well-settled that "merely alleging that [a defendant] 'made' or 'initiated' [a] call" or that an unidentified third party did is not sufficient to allege a [direct] TCPA [liability] claim" and cannot survive dismissal under Rule 12(b)(6). *Frank v. Cannabis & Glass, LLC*, 2019 WL 4855378, at *2 (E.D. Wash. Oct. 1, 2019). *See also Woodard v. Health Ins. All.,* 2024 WL 942629, at *3 (N.D. Ill. Mar. 5, 2024) (holding that all "TCPA actions must allege some facts which are distinguishable from the statutory language of the TCPA itself to state a claim and survive dismissal" under Rule 12(b)(6)); *Rogers v. Assurance IQ, LLC*, 2023 WL

2646468, at *5 (W.D. Wash. Mar. 27, 2023) (dismissing on this basis where "[p]laintiffs have not pleaded any *facts* supporting their inference that [said defendant] physically dialed the calls to four of the individual plaintiffs" (emphasis in original)); *Belleville v. Florida Ins. Servs, Inc.,* 2024 WL 2342337, at *4 (S.D. Fla. May 23, 2024), *report and rec. adopted in part,* 2024 WL 2794108 (May 31, 2024) (recommending and approving dismissal, even though caller said they were calling "from" the defendant and provided its website, where plaintiff merely alleged "in conclusory fashion that [the] Defendant was directly involved in making" the calls). Countless federal district courts in this Circuit and elsewhere have agreed, and thus have often dismissed such naked and equivocating conclusions at the pleadings stage. *See, e.g., Doyle,* 2023 WL 3984951, at *4–6 (dismissing, holding allegations the alleged calls were "from Defendant, its employees and/or agents" were insufficient for directly liability, standing alone).[5] And as one federal district court noted when dismissing a similarly-deficient complaint on this basis, "simply asserting a purported fact [like Plaintiff did here] does not make it one, where there are no factual allegations to support the asserted conclusion." *Bank v. Alleviate Tax, LLC*, 2024 WL 1332635, at *5, n.6 (E.D.N.Y. Mar. 28, 2024). This Court should rule similarly in the present case and dismiss Plaintiff's Complaint on direct TCPA liability grounds.

Lastly, Plaintiff also fails to plead facts suggesting Pure Energy can be held vicariously liable under the TCPA. Beyond using legal buzzwords suggestive of agency (which are not facts), Plaintiff does not plead anything supporting an inference that Pure Energy had any "control" over a third party "agent" and its call campaign, which is the key touchstone of agency (and thus vicarious liability) under the TCPA and must also be pled to avoid dismissal. *See, e.g., Doyle.,* 2023 WL

---

[5] *See also Brown v. Nano Hearing Tech OPCP, LLC*, 2024 WL 3367536, at *3 (S.D. Cal. July 9, 2024) (dismissing on this basis where plaintiff concluded the caller's "numbers belonged to [defendant] Nano or Nano's agent," without supporting facts suggesting the defendant itself physically placed each call directly); *Dobronski v. Russo*, 2024 WL 4363118, at *5 (E.D. Mich. Sept. 30, 2024) (dismissing on this basis, holding that a plaintiff "simply alleg[ing] that 'Defendants or Defendants' agent' initiated calls" was insufficient to plead a theory of TCPA liability without more).

4188313, at *4; *Cunningham,* 2023 WL 3985245, at *3; *Rogers*, 2023 WL 2646468, at *6 (each dismissing for same reasons). Absent well-pled facts suggesting Pure Energy had such "control" over a third party and its call campaign, dismissal of the Complaint on vicarious TCPA liability grounds is also warranted. *See, e.g., Zarichny v. Complete Payment Recovery Servs., Inc.*, 80 F. Supp. 3d 610, 619 (E.D. Pa. 2015) (dismissing where plaintiff did not plead facts supporting agency).

> **B. Plaintiff Also Fails to Plead Sufficient Facts Supporting Other Essential Elements of His Asserted TCPA Claims.**

The Complaint should also be dismissed under Rule 12(b)(6) because Plaintiff fails to plead sufficient facts supporting other essential elements of his two asserted TCPA claims.

<u>**First**</u>, to allege a violation of the DNC rules he invoked for Count I, Plaintiff must allege that he received two "telephone solicitations" to his phone within a 12-month period. 47 C.F.R. § 64.1200(c). A telephone solicitation "means the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." 47 C.F.R. § 64.1200(f)(15). However, Plaintiff did not answer any of the outbound calls he allegedly received; thus, he cannot plausibly allege facts regarding the content of the calls from which the Court could infer that the purpose of the calls was to "encourag[e] the purchase or rental of, or investment in, property, goods, or services." 47 C.F.R. § 64.1200 (f)(15) (defining "telephone solicitation"). *See, e.g., Greene v. Select Funding, LLC,* 2021 WL 4926495, at *5 (C.D. Cal. Feb. 5, 2021) (dismissing where plaintiff failed to allege the content of the other calls he did not answer that would allow the Court to reasonably infer that these other calls were solicitations); *Gillam v. Reliance First Capital, LLC*, 2023 WL 2163775, at *3 (E.D.N.Y. Feb. 22, 2023) (dismissing where plaintiff "failed to allege sufficient facts regarding the content of the calls from which the [c]ourt could infer that the purpose of the calls was to encourage 'the purchase or rental of, or investment in, property, goods, or services'" and "merely conclude[d], without any factual support, [defendant's]

17

agent 'solicit[ed] refinancing products'"); *Norman v. Northern Ill. Gas Co. Inc*., 2014 WL 184774, at *2 (N.D. Ill. Jan. 16, 2014) (dismissing where plaintiff failed to allege the defendant "encouraged the purchase or rental or investment in any goods or services" despite multiple calls from the defendant with knowledge plaintiff was not the correct party). Count I fails for this reason alone.

**Second**, while Plaintiff seemingly relies on the content of the ***inbound*** calls he made to infer that the outbound calls he failed to answer were "telephone solicitations," there are no plausible allegations suggesting that Plaintiff was encouraged to purchase anything during these calls. Instead, and at best, Plaintiff alleges that after expressing interest and providing his account information, the individual from Energy Source Services informed him that he "would be eligible for a reimbursement of up to $200 from Pure Energy USA." Dkt. 1, ¶ 33; *see also Id.* ¶ 28 (alleging "Energy Source Services" "was calling and looking to assist all Pennsylvania electric customers to ensure they were getting their benefits applied to onto the correct account by getting a competitive electric supplier"). Federal courts have regularly dismissed TCPA DNC claims where the plaintiff fails to plead actual facts demonstrating that calls they received fit the statutory definition of a "telephone solicitation." *See, e.g., Weingrad v. Top Healthcare Options Ins. Agency Co*., 2024 WL 4228149, at *3–4 (E.D. Pa. Sept. 17, 2024) (dismissing DNC claim where plaintiff similarly "only plead[ed] [that] 'the purpose of the [subject] call was to sell the Plaintiff health insurance" and thus did "not plead a statutory violation without 'further factual enhancement'" as required by federal pleading standards); *Eggleston v. Reward Zone USA LLC,* 2022 WL 886094, at *7 (C.D. Cal. Jan. 28, 2022) ("Plaintiff simply relies on conclusory labels such as 'advertisement' and 'promotion' without any supporting factual detail. This falls short of Plaintiff's burden to plead sufficient factual matter to state a plausible claim" under Section 227(c)); *Gilliam*, 2023 WL 2163775, at *3

(dismissing on this basis where the plaintiff "merely conclude[d], without any factual support, that [defendant's] agent 'solicit[ed] refinancing products'"). This too is fatal to Count I of the Complaint.

**Third**, for Count II, Plaintiff invokes 47 C.F.R. § 64.1601(e) of the TCPA's implementing regulations, which relate to Caller ID requirements. But since he does not plead facts connecting Pure Energy to the subject calls or the phone number from which they purportedly originated, as discussed above, he has not plausibly alleged Pure Energy is responsible for such a violation.

Moreover, many other courts have thoroughly analyzed the statute and dismissed claims based Section 64.1601(e) because those regulations ***do not afford consumers a private cause of action***. *See, e.g., Dobronski v. Selectquote Ins. Servs.*, 462 F. Supp. 3d 784, 790 (E.D. Mich. 2020); *Dobronski v. Total Ins. Brokers, LLC*, 2021 WL 4452218, at *3 (E.D. Mich. Sept. 29, 2021); *Meyer v. Cap. All. Grp.,* 2017 WL 5138316, at *15 (S.D. Cal. Nov. 6, 2017) (same); *Worsham v. Travel Options, Inc.,* 2016 WL 4592373, at *3-4 (D. Md. Sept. 2, 2016). As the *Worsham* court concluded, "[a]ny violation of § 64.1601(e) is a violation of technical and procedural standards under subsection *d,* and as earlier noted, no private right of action exists under the latter subsection of the TCPA." This Court should rule similarly here and dismiss Count II under Rule 12(b)(6) given this defect, as well.[6]

## CONCLUSION

For all the reasons provided above, the Court should dismiss the entire Complaint.

---

[6] Anticipating this argument, the Complaint cites to "*Dobronski v. Selectquote Ins. Servs.,* No. 2:23-CV-12597, 2025 WL 900439, at *3 (E.D. Mich. Mar. 25, 2025)" (Dkt. 1, ¶ 15), which is a summary judgment decision where the court expressly noted that it was ***ruling against the majority of courts on this issue***. *See Dobronski v. Selectquote Ins. Servs.*, 773 F. Supp. 3d 373, 380 (E.D. Mich. 2025). There is no good reason for <u>this</u> Court to depart from the majority approach on this same issue here.

Dated: August 25, 2025                    Respectfully submitted,

                                          /s/ Frederick P. Santarelli
                                          FREDERICK P. SANTARELLI (PA 53901)
                                          STEVEN C. TOLLIVER, JR. (PA 327165)
                                          **ELLIOTT GREENLEAF, P.C.**
                                          Union Meeting Corporate Center V
                                          925 Harvest Drive, Suite 300
                                          Blue Bell, PA 19422
                                          (215) 977-1000 (phone)
                                          (215) 977-1099 (fax)
                                          FPSantarelli@elliottgreenleaf.com
                                          sct@elliottgreenleaf.com

                                          JOHN W. MCGUINNESS
                                          (*Pro Hac Vice* to be requested)
                                          A. PAUL HEERINGA
                                          (*Pro Hac Vice* to be requested)
                                          **MANATT, PHELPS & PHILLIP, LLP**
                                          1050 Connecticut Avenue, NW, Suite 600
                                          Washington, D.C. 20036
                                          Telephone: 202-585-6500
                                          Facsimile: 202-585-6600
                                          jmcguinness@manatt.com
                                          pheeringa@manatt.com

                                          *Counsel for Defendant Pure Energy USA, PA, LLC*
                                          *d/b/a Pure Energy USA*

20

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that I am causing the foregoing to be filed electronically with the Court, where it is available for viewing and downloading from the Court's ECF system, and that such electronic filing automatically generates a Notice of Electronic Filing constituting service of the filed document upon all counsel of record.

Dated: August 25, 2025

*/s/ Frederick P. Santarelli*
FREDERICK P. SANTARELLI

*Counsel for Defendant Pure Energy USA, PA, LLC d/b/a Pure Energy USA*