IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAMES E. SHELTON, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>PURE ENERGY USA, PA, LLC d/b/a PURE ENERGY USA,<br><br>Defendant. | CASE NO. 2:25-cv-03590-MMB |

## DECLARATION OF MICHAEL LARSEN

I, Michael Larsen, hereby declare pursuant to 28 U.S.C. § 1746 as follows:

1. I am over 18 years of age. Unless otherwise stated, the information set forth herein and below is true and correct, is based on my own personal knowledge, and if asked to testify thereto, I could and would do so competently.

2. I am Owner of Pure Energy USA, PA, LLC d/b/a Pure Energy USA ("Pure Energy"), the Defendant in this matter. I have held this position since 2019.

3. I submit this Declaration in my professional capacity in support of "Defendant's Motion to Dismiss Plaintiff's Complaint" (the "Motion"), filed by Pure Energy contemporaneously herewith in the above-captioned matter (the "Action").

4. In my professional capacity, I am familiar with Pure Energy's business operations, policies, and practices, including but not limited to with respect to Pure Energy's product sales, marketing, and communications with current or potential customers. Further, in my professional capacity, I am generally familiar with Pure Energy's business records and records-keeping procedures relating to sales and contact center procedures.

5. I have reviewed the putative class action complaint (*see* Dkt. 1, the "Complaint") filed by Plaintiff James Shelton ("Plaintiff") in the Action, and I am familiar with the allegations made against Pure Energy therein.

6. Pure Energy is a licensed alternative retail electricity supplier in Pennsylvania. We supply electricity to residential, commercial, and industrial customers in the state.

7. Pure Energy's products are marketed primarily through internet advertisements, and consumers will place inbound calls to Pure Energy or to certain third parties, and request information about and/or purchase those services. As such, Pure Energy does not make outbound telemarketing calls, does not authorize third parties to make outbound telemarketing calls on its behalf, and in fact contractually prohibits any third parties from making outbound telemarketing calls on behalf of Pure Energy.

8. In other words, Pure Energy has implemented a strictly "inbound" marketing program, where the consumer initiates the sales process through an inbound call to a contractor. Pure Energy does so to avoid any legal issues that may arise with respect to telemarketing.

9. How Pure Energy's sales process works generally is that a consumer places an inbound call to a third party independent contractor working with Pure Energy in response to ads on websites hosted by third parties, and then a sale is completed during that inbound call. In other words, any calls involved in the sale process are to be initiated by the consumer via inbound call to a third party contractor, per Pure Energy's contract with any third parties.

10. Commonly, the sale is completed during the initial inbound call to the contractor, and Pure Energy is notified electronically that the sale was completed. Outbound calls made in the sale process by the third party contractors, if any, are generally infrequent and are to be limited to necessary and ordinary business calls after the consumer initiated call, such as where a customer

expressly requests (and thus consents to) a callback or there is an ongoing business relationship with an existing customer and the customer needs to be called in relation to their account (such as if there is a billing issue or to complete a transaction that was initiated by the customer), or if an inbound call is inadvertently disconnected, but not for advertising or marketing purposes.

11. Any third parties that may work with Pure Energy as part of its marketing efforts are independent contractors and are not employees of Pure Energy. Pure Energy is not involved in the calls made to or by those third parties at any point (for example, calls are not transferred to Pure Energy). Pure Energy does not direct, control, or have any knowledge of or involvement in the calling activities of these independent contractors, other than contractually prohibiting unsolicited outbound telemarketing calls as noted above.

12. Pure Energy does not own or use the phone number identified in the Complaint (833) 423-0533 that allegedly was used to call Plaintiff. If the number is called, the caller does not reach Pure Energy.

13. In sum, Pure Energy contractually prohibits third parties from making outbound marketing or advertising calls on its behalf, and any third party contractors are only authorized to receive inbound calls. Pure Energy does not authorize third parties to make outbound phone calls on its behalf for marketing or advertising purposes. At no time are unsolicited outbound telemarketing calls made by Pure Energy or with the authorization or knowledge of Pure Energy. If any such calls were made to Plaintiff or to the cell phone number alleged in the Complaint (which is not conceded), they were not made or authorized by Pure Energy, and Pure Energy had no participation in such calls. Such calls would have been in violation of Pure Energy's contract.

14. Nothing in this Declaration should be understood as an admission of liability by Pure Energy (which is expressly denied), or an admission of any fact alleged by Plaintiff in the Action,

3

including as alleged in the Complaint.

    I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge and belief.

    Executed on August 22, 2025, in Red Bank, New Jersey,

By: *Michael Larsen*
Michael Larsen