## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JAMES E. SHELTON,** individually and on behalf of all others similarly situated, | Case No. |
| | 2:25-cv-03590-MMB |
| *Plaintiff,* | **CLASS ACTION** |
| *v.* | |
| **PURE ENERGY USA, PA, LLC d/b/a PURE ENERGY USA** | **JURY TRIAL DEMANDED** |
| *Defendant.* | |

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

### I.    INTRODUCTION

Defendant Pure Energy USA, PA, LLC's motion revolves around a familiar but fundamentally flawed premise: that it can transform a factual merits dispute into a Rule 12(b)(1) jurisdictional challenge by filing a self-serving affidavit claiming "we didn't do it." That tactic, often deployed in TCPA and other cases when defendants want to avoid discovery into their conduct by simply denying responsibility for the acts they are alleged to have committed, has been repeatedly rejected by courts in this Circuit and elsewhere. *Davis v. Wells Fargo*, 824 F.3d 333, 347 (3d Cir. 2016); *Holloway v. Pagan River Dockside Seafood, Inc.*, 669 F.3d 448, 452-53 (4th Cir. 2012). Despite an individual named Alan from Pure Energy calling counsel for the Plaintiff *the day after this lawsuit was filed* and admitting to Plaintiff's counsel that it placed the subject calls, Defendant Pure Energy attempts to do what the Supreme Court has repeatedly cautioned against in recent years: urging this Court to make a drive-by jurisdictional ruling

1

seeking to dismiss a claim for lack of jurisdiction when some threshold fact has not been established, without explicitly considering whether the dismissal should be for lack of subject matter jurisdiction or for failure to state a claim. *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 511 (2006). Pure Energy's motion is the latest iteration of that gambit. It asks the Court to credit a self-serving declaration over Plaintiff's detailed allegations, Plaintiff and his Counsel's own evidence, and Pure Energy's very own admissions, to weigh competing evidence at the pleadings stage, and to shut the courthouse doors before any discovery is taken. That is not the law in the Third Circuit, and it is not how TCPA cases are adjudicated.

The premise of Pure Energy's motion is simple, but it is simply wrong. Plaintiff alleges three sales calls on June 23 and 24, 2025 to his residential cellular number on the National Do Not Call Registry, during which, by Defendant's own admission, the callers attempted to sell Pure Energy's services and left voicemail messages "trying to just sign up a business for a lower rate on the electricity bill." And the Plaintiff affirmatively identified that Pure Energy was the caller by getting a letter confirming the Plaintiff's electric sign up in the mail, as well as by going through the state-mandated Third Party Verification (TPV) process on the call, which such process confirmed that the Plaintiff spoke to a Pure Energy representative. All those facts were pled in the Plaintiff's complaint. Pure Energy replies with a single affidavit that purports to say the opposite: that it makes no outbound marketing and made no calls to Plaintiff, a contention which contradicts the Plaintiff's telephone records and evidence and the Defendant's own admission the day after this lawsuit was filed. If taken at face value, that affidavit would decide the central merits question of who made the calls. But at the pleadings stage, even with a jurisdictional challenge, courts do not pick sides in a swearing contest. They apply the

well-settled rule that where jurisdictional facts are intertwined with the merits, a 12(b)(1) motion must be denied and the case allowed to proceed to discovery.

Even under Rule 12(b)(6), the Complaint easily clears the plausibility bar. It alleges specific dates and times and immediate, verifiable attempts to consummate a transaction with Pure Energy in the form of a TPV verification and subsequent letter. Those facts state claims for direct liability under the TCPA. They also plausibly allege a violation of the TCPA's Caller ID rules, for which this Court has already held there is a private right of action. Pure Energy's contrary authorities are out-of-circuit, procedurally distinct, or deal with threadbare pleadings, unlike those here. The motion should be denied in full.

## II.    FACTUAL BACKGROUND

On June 23 and 24, 2025, Plaintiff's residential cellular number, registered continuously on the National DNC Registry for over a year, rang three times from the caller ID 833-423-0533. Each call was missed, but Defendant subsequently admitted that it placed the calls and attempted to leave voicemail messages "saying if you want us to call this back to see if you can, you know, save on your energy bill." The Plaintiff called the number back. During the first call, the Plaintiff spoke with an individual named "Tessa" who stated that she was with the fictitious and illegally named "Energy Source Services" and was calling to get benefits applied to Plaintiff's electric account, i.e. sign the Plaintiff up for Defendant Pure Energy's services as an alternative electric supplier. The call dropped, and the Plaintiff called the number back immediately. During this call, the Plaintiff spoke with "Travis." The Plaintiff indicated that he received a call from the 833-423-0533 number and wanted to see the purpose of the call. "Travis" used the same script as "Tessa," and stated that Pure Energy would be the Plaintiff's alternative electric supplier, after initially using the fake name "Energy Source Services" on the calls.

The Plaintiff was then transferred to Verbatim TPV, a Third Party Verification company

mandated by the Commonwealth of Pennsylvania to verify a customer's change to an alternative energy supplier. Verbatim TPV confirmed that the Defendant, Pure Energy, would become the Plaintiff's electric supplier. Moreover, during that TPV call, the Plaintiff was asked to "agree to the terms of services described by the Pure Energy USA representative." The sale was completed through the TPV verification in which the system further thanked him for "choosing Pure Energy USA," and provided a Pure Energy contact number. The Plaintiff subsequently received a letter in the mail confirming the sign up with Pure Energy.

And, the day after this lawsuit was filed, the Plaintiff's counsel received a call from "Alan" from Pure Energy, who confirmed that Pure Energy called the Plaintiff, was attempting to call a business to give them a lower rate on their electric bill, and "left a voicemail for [Plaintiff]" in order to get "lower rates on [the] electricity bill" and that voicemail would have urged the Plaintiff to "call back" to see if he could "save on [his] energy bill." Alan further admitted that "we called Mr. Shelton three times," and confirmed that Mr. Shelton "called back and signed up for our services and went through verification."

In response to those well-pled allegations, Pure Energy has moved to dismiss on the theory that it had nothing to do with the calls. It supports these assertions with a declaration from an employee asserting that Pure Energy does not conduct outbound telemarketing and did not call the Plaintiff. This response follows.

### III.    LEGAL STANDARD

The standards for 12(b)(1) challenges for a lack of subject matter jurisdiction are well-settled in this circuit. Notably, there exist two types of 12(b)(1) challenges, each with their corresponding standards: facial and factual challenges. *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). Here, Defendant has submitted an affidavit and additional evidence in order to support its contention that the case should be dismissed. In so

4

doing, Defendant mounts a factual challenge. In such a challenge, this Court is "free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id.* "In evaluating whether a complaint adequately pleads the elements of standing, courts apply the standard of reviewing a complaint pursuant to a Rule 12(b)(6) motion to dismiss for failure to state a claim: Court[s] must accept as true all material allegations set forth in the complaint, and must construe those facts in favor of the nonmoving party." *Huertas v. Bayer US LLC*, 120 F.4th 1169, 1174 (3d Cir. 2024). Moreover, to the extent that the motion does not properly address jurisdiction but instead sounds in the factual merits of the Plaintiff's claims, such motion also ought to be denied and the case proceed. *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991).

Under Rule 12(b)(6), a court may dismiss a complaint that fails to state a claim upon which relief can be granted. In order to state a claim upon which relief can be granted, a complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Rather than require detailed pleadings, the Rules demand only a "short and plain statement of the claim showing that the pleader is entitled to relief, in order to give defendant fair notice of what the claim is and the grounds upon which it rests." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (cleaned up). The requirement that a plaintiff "show" that he or she is entitled to relief means that a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up).

In determining whether a claim is plausible, the court must "draw on its judicial experience and common sense." *Connelly*, 809 F.3d at 786–87. After identifying elements to set forth a claim and removing conclusory allegations, the Court must accept all well-pled factual allegations as true and determine if they give rise to relief. *Id.* A complaint may be dismissed

only where it appears that there are not "enough facts to state a claim that is plausible on its face," not merely because the defendant proffers some contrary facts. *Twombly*, 550 U.S. at 570.

### IV.    ARGUMENT

*A.    Pure Energy's Rule 12(b)(1) attack fails because the jurisdictional facts are intertwined with the merits.*

The Defendant's motion mounts a factual jurisdictional challenge to the Plaintiff's complaint. In a factual challenge, the Plaintiff is entitled to submit evidence, such as the two declarations, as here, evidencing facts which support the exercise of subject matter jurisdiction. (Shelton Dec.) (Perrong Dec.). The factual challenge can be easily dispensed with, because it relies on an extremely contested issue that is hotly disputed and perhaps the most intertwined with the merits as any other issue in this case, to put it charitably. In support of its motion, the Defendant presents an affidavit of Michael Larsen, Defendant's Owner, stating that Defendant relies on contractors to receive inbound calls and that it does not authorize its contractors to place calls. As the Third Circuit has cautioned, to the extent that the merits of a case are intertwined with the jurisdictional allegations, the matter should unquestionably proceed to discovery.

This is especially so because Plaintiff's own experience shows a different story, having received calls directly from Pure Energy, and without any indication that the calls were placed by contractors. Indeed, to that end, the Larsen declaration is carefully, and deceptively, worded. Nowhere in that declaration does Pure Energy explicitly deny that it *itself* places outbound calls. Rather, it speaks in generalities as to what it does by itself and affirmatively speaks as to what third parties it hires do. It states that it markets its products "*primarily* through internet advertisements," where individuals call in to third party contractors. It does not say that it relies on internet advertising exclusively. In addition, Pure Energy states that it "does not authorize *third parties* to make outbound phone calls on its behalf," but says nothing about it itself making

6

outbound phone calls. Those statements can be true, and the Plaintiff still could have received calls directly from Pure Energy to sell Pure Energy's services, albeit initially under the fake name "Energy Source Services," presumably to avoid ill will for the Pure Energy brand. That is to say that Pure Energy does not explicitly deny making outbound calls itself as part of a marketing strategy, only that it prohibits third parties from doing so. Pure Energy does not deny that part of its marketing strategy relies on calling up telephone numbers and leaving voicemail messages directing them to call a certain number to save money on electricity, nor can it, because that is *precisely* what Alan stated Pure Energy does, in a recorded telephone call to Plaintiff's counsel, the day after this lawsuit was filed. (Perrong Dec.), (Exhibit B, Transcript of Call).

Even if this Court were to somehow credit Pure Energy's deceptively worded Declaration (and it should not), the Plaintiff has provided two truthful counter-Declarations that apply with equal, if not greater force. First, the Plaintiff, as he is permitted to do at the Rule 12(b)(1) stage, has pled additional facts regarding the subject telemarketing calls at issue, including more details as to the purportedly "ill-described 'third party verification process,'" including that this very process confirmed that the Defendant was the entity attempting to sell the Plaintiff electricity, as well as confirming that the Plaintiff spoke to and was described the subject services "by the Pure Energy USA representative." Indeed, as Mr. Shelton also explains, during the TPV process, he was told that the individual was a "Pure Energy USA representative," and not a contractor, and would receive a letter in the mail confirming the sign up, which he did, and which came from Pure Energy. (Shelton Dec. ¶ 16, 18-19, 21), (Exhibit A, Sign Up Letter).

Second, as Plaintiff's counsel explains, the day after this lawsuit was filed, Plaintiff's counsel received a call from an individual named "Alan" who was calling on behalf of the Defendant and wanted to settle the lawsuit that Plaintiff had just filed. During this call, Alan

made numerous declarations against Pure Energy's interest, including that (1) Pure Energy called the Plaintiff and attempted to leave voicemails which would have said that the purpose of the calls was to save money on the Plaintiff's electric bill, i.e. were telemarketing, (2) that the messages and calls came from Pure Energy and (3) that the Plaintiff could call back to sign up for services, which the Plaintiff did. As a result, the Plaintiff *has* adequately pled that he *received* three calls, which Alan admitted were placed by Pure Energy, and that a voicemail (or voicemails) were supposedly left telling the Plaintiff to call the number back to save money on electricity, and thus were made for telemarketing purposes. The case therefore passes muster for an injury and the case must be permitted to proceed. (Shelton Dec. ¶ 32).

Constitutional standing is not to be trifled with or an argument to be made without the greatest degree of respect, decorum, and attention. This Court's power to hear cases, its subject matter jurisdiction, derives from Article III of the Constitution, which limits this Court to adjudicating "cases" and "controversies." U.S. CONST. art. III, § 2, cl. 1. In *Lujan v. Defenders of Wildlife*, the Supreme Court distilled the constitutional limits of Article III standing into three distinct elements: injury, traceability, and redressability. 504 U.S. 555, 560 (1992). Defendant challenges only the second element on the frivolous basis that the Plaintiff did not receive an illegal call and therefore suffered no cognizable injury in fact traceable to Pure Energy. But that allegation is plainly contradicted by the allegations in the complaint, together with Plaintiff's and his Counsel's counter-affidavits. In sum, the Plaintiff was injured. (Shelton Dec. ¶ 32).

Defendant's jurisdictional challenge must fail for the simple reason that the evidence shows, and Defendant's own admission confirms, that the Plaintiff received three calls from the Defendant within a two-day period made for the *admitted purpose* of selling the Plaintiff allegedly cheaper electricity. When Plaintiff called the number back, he was eventually sold the

Defendant's electricity by an individual whom the *Commonwealth-mandated* TPV process *admits* was a "Pure Energy USA representative." Nothing more is required to plead traceability to the Defendant. Nobody else was named or mentioned on the calls, and the Defendant's illegal use of a fake name on the call of "Energy Source Services," and carefully-worded self-serving affidavit, is insufficient to show that there is a lack of traceability at the pleadings stage. It should be noted that variations of this very same 12(b)(1) dismissal strategy for companies who stand accused of illegal conduct has been uniformly rejected by federal courts. "While that argument has some superficial appeal, it is wrong. [Defendant's] argument is better understood as a well-disguised challenge to the legal merits of [Plaintiff's] case, not as a challenge to his standing to pursue it." *Davis v. Wells Fargo*, 824 F.3d 333, 347 (3d Cir. 2016).

*Davis* is controlling. There, our very own Third Circuit reversed a jurisdictional dismissal because the district court had effectively decided the merits under the guise of standing, exactly as Defendant attempts to do here. The Third Circuit further explained that when jurisdiction is "intertwined" with the merits, the proper course is to deny the Rule 12(b)(1) motion. The question of whether the calls were made "by" or "on behalf of" Pure Energy as outbound calls to the Plaintiff is the central merits question here. The Third Circuit's holdings in *Kehr Packages* and *Mortensen*, *supra*, articulate the same principle. *Kehr* instructs that a district court should not dismiss for want of jurisdiction where "the jurisdictional facts are intertwined with the merits of the case." 926 F.2d at 1409. *Mortensen* likewise recognizes that district courts must avoid dismissing cases where resolution of the jurisdictional question is dependent on the resolution of facts which go to the merits but masquerade as jurisdictional disputes. 549 F.2d at 891.

Here, the parties present a textbook swearing contest. A court cannot, at Rule 12(b)(1), weigh one affidavit against another, or its associated evidence, and decide who is truthful. The

intertwined-merits doctrine prevents exactly that. What's more, this approach of attempting to bootstrap a "we didn't do it" defence into a jurisdictional motion is one that has been uniformly rejected by federal courts in the TCPA context. "[W]hen the issue of jurisdiction is intertwined with the merits, district courts should deal with the objection as a direct attack on the merits of the plaintiff's case under either Rule 12(b)(6) or Rule 56. . . This is one such case. If Callier received unwanted phone calls from Unified Health, then he suffered an injury sufficient for standing purposes." *Callier v. Unified Health, LLC*, No. EP-23-CV-375-KC, 2024 WL 3418778, at *5 (W.D. Tex. July 15, 2024) (cleaned up); *see also Jackson v. Direct Bldg. Supplies LLC*, No. 4:23-CV-01569, 2024 WL 1721144, at *3 (M.D. Pa. Apr. 22, 2024) (holding 12(b)(1) challenge was inappropriate when it is "intertwined with the underlying merits that the question of jurisdiction is dependent on the resolution of factual issues going to the merits of an action."); *Clough v. Highway Auto. Pros LLC*, No. SACV2300107CJCJDEX, 2023 WL 4291826, at *3 (C.D. Cal. May 23, 2023) (rejecting telemarketer's standing challenge on traceability grounds for calls allegedly placed by a third party). In such cases, the correct approach is to deny the Rule 12(b)(1) motion and proceed to discovery so the merits and jurisdictional allegations can be tested on a proper record.

Defendant's authorities are not to the contrary, nor do they dictate a different result. It is true that Pure Energy won a similar motion to dismiss several years ago. For what it's worth, the marketing strategy used by Defendant appears not to have changed. There, the plaintiff received a voicemail about customer choice on the plaintiff's electric bill. As he was told, he called the number back, was connected "to an agent who identified herself as a Pure Energy USA representative;" the agent "began enrolling Plaintiff" in Defendant's services and informed Plaintiff that "his new energy supplier will be Pure Energy USA." *Metzler v. Pure Energy USA*

*LLC*, No. 21-CV-9798 (VEC), 2023 WL 1779631, at *2 (S.D.N.Y. Feb. 6, 2023). Notably, the

Court denied the motion on 12(b)(1) grounds. *Id.* at *4. And, although the Court granted the

motion on 12(b)(6) grounds, the pled facts here were starkly different. Unlike here, the plaintiff

in *Metzler* (1) was *not* transferred to any TPV system, let alone one which confirmed the details

of the sales pitch with the "Pure Energy USA representative," (2) did *not* receive a letter from the

Defendant confirming the sign up and illegal call or, (3) receive a call from the Defendant who

admitted, against Defendant's interest, to the pertinent and very disputed facts here, including

that it placed the subject calls and the purpose for which it placed them.

Nor is this case like *Baccari*, which dismissed on facts, pled in the plaintiff's complaint,

which directly contradicted the plaintiff's claims of liability. There, the plaintiff received calls

"in late September 2021 about auto warranties. During one of the calls, Baccari asked the person

on the other end of the line to identify who he worked for—and was told it was A-List Marketing

Solutions, Inc." *Baccari v. Carguard Admin., Inc*., No. 22-CV-1952, 2022 WL 3213839, at *1

(E.D. Pa. Aug. 8, 2022). And the Court there conducted only a cursory standing analysis, unlike

here, because the plaintiff provided no affidavits or other evidence to directly rebut Carguard's

directly contradictory jurisdictional allegations and so dismissed the case without prejudice. *Id.*

at *3. Despite this admission, the plaintiff sued CarGuard because he was sold a CarGuard policy

on the calls and later "received a proposed service contract from Carguard." *Id.* at *1. *Baccari*

certainly does not stand for the proposition that Rule 12(b)(1) empowers a defendant to defeat

jurisdiction by offering a self-serving affidavit that contradicts detailed allegations and a

plaintiff's sworn testimony on the core merits issue. Unlike *Baccari*, Plaintiff has pled a recorded

admission the very day after this lawsuit was filed, a TPV that expressly labelled the

representative as one from "Pure Energy USA," and a Pure Energy sign-up letter, making this a textbook "intertwined with the merits" dispute barred from resolution on a jurisdictional motion.

That is unlike here, where not only was the caller identified as Pure Energy USA *itself* during the required TPV process, but where a representative of Pure Energy called Plaintiff's counsel *the day after this lawsuit was filed* and *admitted* to the very facts it now challenges here. Unlike *Baccari*, where the complaint on its face belied the plaintiff's allegations of direct liability, here, there are *no other* third parties mentioned or involved in the calling conduct at issue: indeed, the Plaintiff further alleges that the "Energy Source Services" name is simply an illegal fictitious name used by Defendant Pure Energy at the outset of the calls to avoid ill will for the Pure Energy brand. Defendant admits as much, describing *Baccari* as a case in which the plaintiff "filed a TCPA complaint claiming a third-party made certain phone calls on behalf of the defendant." Plaintiff makes no such allegations, and in fact contrary allegations, here.

Defendant's other authorities are positively peculiar, nor do they stand for their stated propositions. Rather, each of these cases deal with circumstances dismissing on standing grounds where the Plaintiff consented. *Winner v. Kohl's Dept. Stores, Inc.*, 2017 WL 3535038, at *7-8 (E.D. Pa. Aug. 17, 2017), said nothing about traceability; there, the dispute was over whether the plaintiff was injured when the plaintiff consented to the subject messages. In *Stewart v. Network Cap. Funding Corp.*, 549 F. Supp. 3d 1058, 1059 (C.D. Cal. 2021), the court dismissed an internal do not call claim when the plaintiff's evidence pled did not constitute a legally sufficient request not to be called. In *Hall v. Xanadu Mktg., Inc.*, 682 F. Supp. 3d 1278, 1285 (N.D. Ga. 2023), the court dismissed a case when defendant produced "uncontroverted evidence" that the plaintiff submitted her information to website. And in *St. Louis Heart Ctr., Inc. v. Nomax, Inc.*, 899 F.3d 500, 504 (8th Cir. 2018), the Eighth Circuit upheld the dismissal of a case when the

plaintiff *conceded* that the faxes were transmitted with consent. Here, Defendant pleads no facts showing that it had consent, so its reliance on these authorities, dismissing on standing grounds where there was no injury because the plaintiff consented, is peculiar and unwarranted.

The Defendant asks this Court to frustrate judicial economy by asking it to make factual determinations without a full record, without procedural safeguards, and on the basis of shoddy and internally contradictory "evidence." In sum, nothing in the Constitution requires a plaintiff to plead more than the basic allegations of injury here; plaintiffs are not required to prove such allegations in their complaints, nor can defendants use Rule 12(b)(1) as a way of improperly forcing the plaintiff to do so. The Plaintiff nevertheless does so. (Shelton Dec.) (Perrong Dec.). The constitutional requirement for an injury-in-fact sounding in federal question jurisdiction is pleading federally proscribed conduct that is fairly traceable to a defendant. *Lujan* at 452–53. Pleading exact evidence at the pleadings stage cannot be a constitutional requirement for jurisdiction. The Plaintiff has done so, and the Defendant's own illegal use of a fictitious name, as clearly pled in the Complaint, is insufficient to strip this Court of jurisdiction. In any event, the Plaintiff's own declaration demonstrates at best that there is a dispute as to who placed the calls at issue and raises more questions as to why the Defendant subsequently called Plaintiff's counsel and said things completely opposite to the position it advances here.

And though the Plaintiff has submitted evidence supporting his version of events, he is compelled to point out that he is not required to do so from a constitutional angle because it presents a dangerous and slippery slope opening the door to all manner of standing-based challenges founded on disputed evidence. Even in the absence of the Plaintiff's declarations, this case must not be dismissed because no part of Article III requires the Plaintiff to allege what Defendant claims is required, submitting merits-based evidence supporting his injury at the

pleadings stage. That would transform federal notice pleading to well beyond fact pleading to effectively require evidence pleading. The Constitution requires no such result.

As a result, at this stage it is plausible, if not necessary, to infer that Defendant itself called Plaintiff at least three times to sell Plaintiff its electric services, and that as a result, Plaintiff was injured. And similarly, because, to put it charitably, factual disputes exist, this matter should unquestionably proceed to discovery. The Plaintiff has pled and his declaration confirms that he suffered a legally cognizable injury in receiving a pre-recorded call to his phone on the Do Not Call Registry without consent.

B.    *Plaintiff adequately pleads direct TCPA liability.*

In essence, the Defendant simply recasts its 12(b)(1) standing defence as a challenge to the Plaintiff's pleading of direct TPCA liability, adopting the same classic "we didn't do it" defense by disguising it as a challenge to the Plaintiff's allegations of direct liability at the pleadings stage. Like Defendant's Rule 12(b)(1) standing motion, Rule 12(b)(6) is not an appropriate device for testing the truth of what is asserted in the complaint or for determining whether the plaintiff has any evidence to back up what is in the complaint. *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 511 (2002). However, that's precisely what the Defendant attempts to do here, making a red-herring argument that the Plaintiff has failed to state a claim because he has allegedly failed to set forth facts giving rise to direct liability that the Defendants placed the calls at issue. But that's a "red herring" that begs the question "who did, then?" *See Consol. Grain & Barge, Inc. v. Anny*, No. CIV.A. 11-2204, 2013 WL 486687, at *6 (E.D. La. Feb. 6, 2013). Nevertheless, the Plaintiff has met his burden of pleading facts sufficient to give rise to the inference that the Defendant placed the illegal calls at issue here.

14

The Plaintiff's complaint gives more than adequate notice of the Plaintiff's claims and the grounds upon which they rest. Defendant knew as much when it called the Plaintiff's counsel, a day after this lawsuit was filed, and admitted that it made the subject calls to the Plaintiff and that it had attempted to leave messages regarding lowering the Plaintiff's electric bill. In this way, the Defendant shot itself in the foot by admitting, during the pendency of this litigation, to facts which are directly contradictory to those that Defendant now advances. For that matter, Defendant's position is contradicted by the letter it sent Plaintiff, as well as the TPV verification and sign up. Given that level of detail, Defendant's assertion now that it did not send any of the calls or texts at issue is especially perplexing.

The Defendant's "we didn't do it" argument is more properly the subject of a jury trial or at the very least a motion for summary judgment. These details surrounding the calls are more than sufficient to put Defendant on notice of the claim being asserted and the fact, based on the Defendant's own admission, that the calls were telemarketing. Unlike in *Weingrad*, the Defendant ignores the fact that it called Plaintiff's counsel and admitted to the purpose of the calls was to sell electricity, which is clearly a telemarketing purpose under the TCPA. For all intents and purposes, Defendant now attempts a smoke-and-mirrors game of purported deficiencies in the complaint in an ill-contrived effort to escape liability under the TCPA.

A litany of other courts has agreed and applied nearly identical reasoning in applying direct liability to such circumstances even more far removed than those here, such as where goods are sold through brokerages or multiple parties are involved in the sales process. *See, e.g.*, *Cunningham v. Wallace & Graham*, No. 1:24-CV-00221, 2024 WL 4826798, at *3 (M.D.N.C. Nov. 19, 2024) ("The complaint alleges that Sokolove partnered with Wallace & Graham to solicit Camp Lejeune claimants through telemarketing efforts and that Wallace & Graham and

Rhine Law Firm were both signatories of the proposed retainer agreement sent to Cunningham after the calls. These allegations, which must be accepted as true, provide a sufficient basis for 'draw[ing] the reasonable inference that the defendant[s] [are] liable for the misconduct alleged.'"); *Bumpus v. Realogy Brokerage Grp. LLC*, No. 3:19-CV-03309-JD, 2022 WL 867256, at *7 (N.D. Cal. Mar. 23, 2022) (certifying TCPA class against brokerage for actions of purportedly independent agents); *Chinitz v. Intero Real Est. Servs.*, No. 18-CV-05623-BLF, 2021 WL 1375837, at *5 (N.D. Cal. Apr. 12, 2021) ("The Court finds that Defendant is vicariously liable for calls made by its corporate sales associates and agents based on apparent authority."); *McMorrow v. Core Properties, LLC*, No. 4:23-CV-00126-JAR, 2023 WL 8697795, at *13 (E.D. Mo. Dec. 15, 2023) ("[T]he Court finds that Plaintiff has established that Core Properties provided apparent authority to 1000 CAD to send the text messages to Plaintiff."); *Hayhurst v. Keller Williams Realty, Inc.*, No. 1:19CV657, 2020 WL 4208046, at *6 (M.D.N.C. July 22, 2020) ("At this stage of the proceedings, Hayhurst has sufficiently alleged an agency relationship between Keller Williams and the individuals who called him.").

Again, Defendant's contrary authorities are off base, because the Plaintiff's complaint and further pleadings, including the post-sale conduct and TPV process, provide the further factual enhancement that was deemed to be lacking in those cases. This Court in *Smith v. Vision Solar LLC*, No. CV 20-2185, 2020 WL 5632653, at *3 (E.D. Pa. Sept. 21, 2020), dismissed a single plaintiff's claims, without prejudice, when they simply made the conclusory allegation that the telephone number was "confirmed to belong to Defendant." Plaintiff pleads far more than what the *Vision Solar* court held was lacking, and granted leave to amend on. The other authorities cited by Defendant are similarly distinguishable. In *Aaronson v. CHW Grp., Inc.*, the complaint was "devoid of facts such as how the caller identified itself, the substance of the calls,

or any other details from the telephone calls." No. 1:18-CV-1533, 2019 WL 8953349, at *2

(E.D. Va. Apr. 15, 2019). And similarly to *Baccari*, in *Doyle v. GoHealth, LLC*, Court held

insufficient allegations of direct liability when an agent stated that she worked for GoHealth but

in the same breath "stated a bunch of insurance companies that her company works with." No.

CV 22-04291, 2023 WL 3984951, at *1 (D.N.J. Mar. 30, 2023). The multiple other string

citations offered by Defendant suffered from similar plain deficiencies not present here. *E.g.*,

*Frank v. Cannabis & Glass, LLC*, No. 2:19-CV-00250-SAB, 2019 WL 4855378, at *2 (E.D.

Wash. Oct. 1, 2019) (dismissing case against a company called Springbig when the messages

named Cannabis & Glass); *Woodard v. Health Ins. All.*, No. 23 C 2630, 2024 WL 942629, at *2

(N.D. Ill. Mar. 5, 2024) (dismissing case where Plaintiff alleged "in the same breath" that "a

third party," not HIA, called her); *Rogers v. Assurance IQ, LLC*, No. 2:21-CV-00823-TL, 2023

WL 2646468, at *5 (W.D. Wash. Mar. 27, 2023) (dismissing case against Boomsourcing where

Boomsourcing was not mentioned on the call); *Belleville v. Florida Ins. Serv's., Inc.*, No. 23-

CV-14369-AMC/SMM, 2024 WL 2342337, at *4 (S.D. Fla. May 23, 2024), report and

recommendation adopted in part, rejected in part, No. 23-14369-CIV, 2024 WL 2794108 (S.D.

Fla. May 31, 2024) (failure to allege contents of sales pitch).

     Although it is true that the Plaintiff must allege either a direct or vicarious liability theory

of TCPA liability, the bar for the Plaintiff is not as high as the Defendant makes out. As the

District of Colorado recently held in a case in which Defendant made a similar motion to

dismiss, based on, as here, calling back a number listed on a voicemail:

> Alleviate is right about the legal requirement, but wrong that the complaint is insufficient
> to satisfy it at the motion-to-dismiss stage. The complaint alleges that Mr. Scofield
> received a call and a resulting voicemail that urged him to call a number, and that the
> person who answered that number identified "his company" as Alleviate. Doc. 1 ¶¶ 22-
> 27. Taking these allegations as true, as I must at this stage, and making all reasonable
> inferences in favor of Mr. Scofield, as I also must at this stage, this is sufficient to allow a

reasonable juror to infer that Alleviate was responsible for—that is, made or initiated—the call.

It may be true, as Alleviate argues, that it was not actually behind the call. Perhaps the person who answered the call was mistaken or lied about who he was working for; perhaps Mr. Scofield's account of the call is inaccurate; perhaps some other company paid for a call that was attributed to Alleviate. Those are all possibilities. If Alleviate can show that one of them is true, and that it did not actually cause the call to be made, it can win the case. And if, as Alleviate contends, the plaintiff cannot find any evidence to support his assertion that Alleviate is associated with the phone numbers or phone calls, then it can also win the case. But those are material factual disputes that cannot be resolved at this stage, at least without converting the motion to one for summary judgment. *See* Fed. R. Civ. P 12(d).

Even if it were proper to consider Alleviate's argument that it is not connected to the number that appeared on Mr. Scofield's caller ID, that would not change the outcome. Phone numbers are easily spoofed, and making a call appear to come from a number other than the one belonging to the actual caller is hardly unheard-of, especially in the robocalling world. Likewise, the argument that there is nothing to support the claim that the call was made by an agent of Alleviate is unpersuasive. The allegation is that the person who answered the number left in the robocall's voicemail said that he was doing so on Alleviate's behalf. Mr. Scofield may be unable to prove that down the road, but for now that is not his burden. He has plausibly alleged it, and that is sufficient to defeat a motion to dismiss. *See Iqbal*, 556 U.S. at 678 (plaintiff clears "the line between possibility and plausibility" if he "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged").

*Scofield v. Alleviate Tax LLC*, No. 1:24-cv-03231-DDD-KAS, ECF No. 42 (D. Colo. Sep. 18,

2025) (citing *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1214 (10th Cir. 2007)).

In essence, the Defendant prefers to spin a narrative of its own by ignoring the facts

Plaintiff has pled and then attempting to shoehorn that faulty narrative into other plainly

distinguishable cases that it mischaracterizes, as its counsel has done in the past. *See, e.g.*,

*Abramson v. AP Gas & Elec. (PA), LLC*, No. CV 22-1299, 2023 WL 2714340, at *3 (W.D. Pa.

Mar. 30, 2023) (chiding Defendant's counsel for citing to "nonbinding cases that are readily

distinguishable from the facts alleged in Abramson's Complaint"); *Davis v. Reliance First Cap.,

LLC*, No. 7:22-CV-00018, 2023 WL 1982354, at *4 n.2 (E.D.N.C. Feb. 13, 2023) (noting that

Defendant's counsel's "legal authority is from cases in a vastly different procedural posture then

18

the one here"); *Atkinson v. Choice Home Warranty*, No. 2:22-cv04464, 2023 WL 166168, at *3

(D.N.J. Jan. 11, 2023) ("Defendant cites to various non-binding decisions in search of a contrary

result."). Such citations impose considerable and unwarranted costs on the Court, its staff, and

Plaintiff. In this regard, Plaintiff will decline Defendant's invitation to needlessly multiply the

proceedings by attempting to distinguish each of the Defendant's selective quotations.

Defendant here advances the same faulty legal standard as the defendant in *Scofield*,

reasoning that the Plaintiff's well-pled allegations connecting the caller, calls, and their stated

and admitted purpose are insufficient to demonstrate a theory of liability, in this case direct

liability, at the pleadings stage. If the Defendant has some contrary evidence showing it did not

place the calls at issue (which it does not because it admitted as much in a call to Plaintiff's

counsel), it should present that evidence at trial. The solution is not to resolve what is at best a

merits dispute at the pleadings stage. Defendant has instead elected to throw all its efforts into

moving to dismiss the complaint based on allegedly inadequate allegations which were

concocted entirely by the Defendant for exactly such a scenario, including its illegal use of a fake

name. If what Plaintiff has pled is not sufficient to establish direct liability, then nothing is.

To this end, this case is nothing like *Vision Solar* or *Direct Building*. As explained above,

the Plaintiff in *Vision Solar* simply made the conclusory allegation that he "confirmed" that the

number at issue belonged to the Defendant without pleading any facts why this is the case, such

as what was said on the call. That is patently unlike the facts pled here, where the Plaintiff not

only pleads the contents of the call, but also pleads that he went through a verification, a

verification which the Plaintiff clarifies confirmed the caller was Pure Energy, as well as

receiving correspondence in the mail confirming the illegal call.

This case is also unlike the similar allegations in *Direct Building*. There, like in *Vision*

*Solar*, the Plaintiff received a call on his cell phone, called the number back, and provided "no details specifying how Smith knew that Direct Building Supplies in fact placed these calls." *Smith v. Direct Building Supplies*, No. CV 20-3583, 2021 WL 4623275, at *3 (E.D. Pa. Oct. 7, 2021). In *Direct Building*, this Court explicitly held that the same facts Plaintiff pleads here, such as "that Direct Building Supplies' name appeared in the caller ID on Smith's cellular phone, the persons with whom Smith spoke identified themselves as representatives of Direct Building Supplies, or the services these persons attempted to sell were construction or home contracting services," *would* be sufficient to state a claim. *Id.* And, as alluded to in *Scofield*, number ownership is not dispositive, particularly when the caller is identified through the call's content. *See Fridline v. Int. Media, Inc.*, No. 24-CV-01770, 2025 WL 1162492, at *2 (M.D. Pa. Apr. 21, 2025) ("Plaintiff has adequately connected the numbers to Defendant through the content of the messages. . . . While the area codes are not associated with Missouri, the content of the messages sufficiently connects them to Interest Media.").

Given that the Plaintiff here has pled precisely what this Court in *Direct Building* has held would have been sufficient, and which was not pled in that case, the Plaintiff has stated a claim. And the Defendant's claim that "Energy Source Services" is not Defendant Pure Energy is disingenuous. As Plaintiff clearly pleads, this name is fictitious and illegal and simply used to detract from the fact that Defendant placed the calls. Defendant cannot benefit from its own malfeasance in using a fake name to conceal its identity in attempting to dismiss this case at the pleadings stage on the basis that it is not "Energy Source Services."

And, to be clear, the Plaintiff does not merely allege that Pure Energy was simply "mentioned" on the call, as in *Metzler* or any of the other cases Defendant cites, including *Cunningham* and *Barnes*. As an initial matter, in none of those cases were the respective

defendant's goods or services *actually sold*, let alone with an explicit admission, during a government-mandated independent TPV process, asking the Plaintiff here to agree to the terms and conditions as explained by the "Pure Energy USA representative," let alone the call from Pure Energy's Alan during the pendency of this litigation confirming the very disputed facts here. In *Cunningham v. Daybreak Solar Power, LLC*, the plaintiff received calls which were identified as "The-Solar-Project.com," which were then admittedly *transferred* to the defendant, unlike here, where no transfer occurred. No. 4:22-CV-00599-O, 2023 WL 3985245, at *1 (N.D. Tex. June 13, 2023).

For that matter, even if the Court held that the Plaintiff's allegations in the Complaint were insufficient, the Plaintiff could, and would on amendment, plead additional details on the calls as in the Declaration, including that "Travis" confirmed that the missed calls were from Pure Energy USA, that "Travis" had the information of the individual they were trying to contact during the missed calls, stated that the alternative electric supply services would be provided by Pure Energy, and confirmed that he would send in the mail the very paperwork that the Plaintiff received in the mail. Unlike in *Metzler*, *Cunningham*, or *Barnes*, the agent did *not* name another company or state that he was merely "associated with" Pure Energy. To the contrary, every indication was that the agent was a Pure Energy employee, full stop. Defendant simply tries to read in contrary facts and inject artificial doubt into the Plaintiff's complaint that the Plaintiff does not make or plead. None of those cases apply to the circumstances here, where no transfers were made and the Defendant's–and only the Defendant's–electric services were sold.

Direct identification by name is the strongest indicia of direct liability that there is. To that end, some of the Defendant's citations actually support the Plaintiff and a finding of direct liability under circumstances similar to those here. *Frank*, 2019 WL 4855378, at *2, actually

supports the Plaintiff because there, as here, the seller was *named in the text messages*. Similarly, this Court later rejected *a nearly identical motion filed by Defendant's counsel here* on the basis of that case. *Smith v. Am.-Amicable Life Ins. Co. of Texas*, No. CV 22-333, 2022 WL 1003762, at *2 (E.D. Pa. Apr. 4, 2022). This Court should reach the same conclusions again with respect to the same attorney's specious motion in holding sufficient allegations that during the calls the plaintiff was told that he was "speaking with American-Amicable" and allegations that the calls "concerned insurance benefits–American-Amicable's area of business." *Id.* So too here, where Defendant admitted the purpose of the call was to sell electric supply services and where the Plaintiff was eventually sold, and received a letter confirming the sale of the same.

Here, the Plaintiff pleads facts which permit the court to plausibly determine that the Defendant was directly responsible for the alleged conduct and that the Defendant acted unlawfully, as explained above. And despite the Defendant taking issue with the fact that the Plaintiff caught it red-handed and then made the mistake of calling Plaintiff's counsel and admitting to the allegations it now challenges, it provides no plausible counter-explanation for their apparent theory. Defendant's motion is simply a vain attempt to pull the wool over the Court's eyes and convince this Court that the Plaintiff has not pled sufficient facts to demonstrate the Defendant's involvement at the pleadings stage. Put a different way, "[defendant's] argument, if tenable, would reward robocallers for attempting to obfuscate their identity in order to prevent TCPA liability." *Cunningham v. Watts Guerra*, LLP. No. SA-22-CV-363-OLG (HJB), 2024 U.S. Dist. LEXIS 93370, at *4 (W.D. Tex. May 23, 2024). Such a standard would "effectively immunize savvier TCPA violators from liability—i.e., those with the wherewithal and means to use middlemen—or a series of increasingly removed middlemen—to solicit business through prohibited robocalling operations." *Id.*

Especially in light of this Court's recent wholesale rejection of the Defendant's very arguments in *American Amicable*, the Plaintiff has unquestionably pled a direct liability claim for relief under the TCPA because he has pled sufficient facts to allege that Defendant directly placed the calls at issue. Defendant cannot defeat that plausible inference using speculation, for there is no inquiry without a starting point, and the starting points must be accepted as known in some sense, even if they are not known in the strictest sense. To attempt to doubt these starting points at the outset would prevent any inquiry from proceeding. Should this Court at all find the Plaintiff's pleading at all deficient, the Court only need give the order granting the Plaintiff leave to amend and he will do so to rectify any perceived deficiency.

C.     *Defendant's remaining arguments at the pleadings stage fail.*

**The Plaintiff Received Multiple Calls That Were Telephone Solicitations**

Defendant relatedly argues that the Plaintiff fails to allege that he received more than one telephone solicitation within a twelve-month period. But as the Plaintiff explains, he received three calls. The Court's analysis can end there. The Plaintiff has unquestionably pled that he received three calls by the same entity-the Defendant-within a twelve-month period, to his number on the National Do Not Call Registry, precisely as the statute requires. 47 U.S.C. § 227(c)(5). The purpose of these calls was clearly to advertise Defendant's electric services. As this Court explained with respect to Mr. Shelton and another electric service provider, "The fact that he "play[s] along" with telemarketing scripts to "find out who [they] really are" is not as devious as Defendant suggests. A plaintiff must know the name of the telemarketer that violated the TCPA in order to bring suit against it, and the content of the message can help prove that it was a solicitation." *Shelton v. Nat'l Gas & Elec., LLC*, No. CV 17-4063, 2019 WL 1506378, at *4 (E.D. Pa. Apr. 5, 2019). This Court's decision in that case counsels that the Plaintiff may identify that the calls were solicitations by playing along with a caller to ascertain

the nature of its sales pitch, exactly as alleged here. And the calls were clearly solicitations because, far from relying on conclusory labels, such as "advertisements," the Plaintiff was ultimately *sold the Defendant's alternative electric supply services.*

For that matter, this case is also distinguishable from *Weingrad*, as explained above, because of the Defendant's very own post-call conduct. As an initial matter, the Plaintiff was actually ultimately sold the Defendant's electric services, and as such, the content of the calls were plainly telephone solicitations because they actually resulted in a sale. To suggest that there is some doubt because the Plaintiff missed the calls and called back is too clever by half. The TCPA does not require a plaintiff to answer each call, as is evidenced by its very definition requiring only the receipt of more than one call, and the Plaintiff received three. *See Moore v. Healthcare Sols. Inc.*, No. 21-CV-4919, 2022 WL 17487823, at *3 (N.D. Ill. Dec. 7, 2022) ("Moore acknowledges that he never spoke with anyone — including anyone from Healthcare Solutions — during the first call. That said, he points out that both calls came from the same number, on the same day. So, it is reasonable to assume that the same caller made both calls for the same reason. . . . The issue of who made the first call isn't much of a whodunit. Moore received two calls from the same number, and the second caller was Healthcare Solutions. It is reasonable to conclude that Healthcare Solutions called the first time, too. Does Healthcare Solutions share a phone number with someone else? Unlikely.")

And the subsequent conduct supports a reasonable inference that all three calls were telephone solicitations from Defendant. *See Toney v. Quality Res., Inc.*, 75 F. Supp. 3d 727, 746 (N.D. Ill. 2014) ("[The plaintiff] has alleged that she received and answered a call from [the telemarketer] in which the caller tried to sell her a Budget Savers membership the day after she received three unanswered calls from [the telemarketer]. The content and timing of the fourth

call allows the court to draw a reasonable inference that [the telemarketer] made the first three calls to market [the defendant]'s services."); *Atkinson*, 2023 WL 166168, at *5 ("[W]hile Plaintiff only alleges the specific content of one call, she answered the phone on at least three occasions, claims that Defendant began calling [the plaintiff] on her cellular telephone to sell Plaintiff a home warranty plan, that the calls were for telemarketing purposes, and that Defendant placed calls to [the plaintiff] on numerous occasions attempting to solicit Plaintiff a home warranty plan[.] These allegations create a reasonable inference that more than one of the seven calls explicitly listed were 'telephone solicitations' in violation of the statute."); *Bird v. Pro Star Builders, Inc.*, No. 2:22-cv-03610, 2022 WL 18216007, at *3 (C.D. Cal. Nov. 28, 2022) ("The Court agrees that it is reasonable to infer that the same caller is responsible for calls from the same number, whether those calls are answered or not."). In light of the Court's obligation to draw all reasonable inferences in Shelton's favor at the pleading stage, it should find it reasonable to infer from the content and timing of the calls and subsequent calls back, as well as the Defendant's own admission during the pendency of this litigation, that the calls were all for the same purpose, solicitation of electric service.

**There is a Private Right of Action for the Caller ID Regulations**

This Court has likewise "thoroughly analyzed" the statute and the TCPA's caller ID requirements and ruled against the Defendant here. As an initial matter, this Court has explicitly held that there *does* exist a private right of action for such claims and *refused* to dismiss the very claims at issue here. *Newell v. JR Cap., LLC*, No. CV 25-1419, --- F.Supp.3d ---, 2025 WL 2004706, at *2 (E.D. Pa. July 16, 2025). The Court sitting here should adopt Judge McHugh's reasoning in full, including his thoughtful distinguishment of the very authorities string cited by the Defendant here. Moreover, the Court need not even embark on a direct or vicarious liability

analysis as to these claims. The text of the provision itself is written in such a way that it expressly imputes liability on entities whose goods and services are promoted on the call, even when (and if) they use third party telemarketers. It provides such entities two alternative options: either transmit the telemarketer's caller ID name, or transmit the seller's name (i.e. transmit Pure Energy's name). § 64.1601(e). There is no third option.

That structure is by design: the caller ID rule targets the telemarketer's (or ultimate company's) duty to reveal itself on all telemarketing calls, ensuring transparency across the board. Section 64.1601(e)(1) prohibits telemarketers from appearing on telephone subscribers' Caller IDs as unknown by requiring them to transmit the enumerated caller ID information. The operative language *directly* regulates the conduct of telemarketers *and the companies that hire them* by requiring transmission of either name, rendering vicarious liability inapplicable. It also does not carve out (or condition liability upon) the called party's classification, as contrasted to the Do Not Call rules, either. As such, the Caller ID claims unquestionably remain.

## V.    CONCLUSION

This Court must deny Defendant's motion to dismiss in its entirety. Alternatively, to the extent that the Court finds that additional questions remain, it should permit the Plaintiff to amend to correct the deficiencies as necessary.

Dated: September 22, 2025

/s/ Andrew Roman Perrong
Andrew Roman Perrong, Esq.
Perrong Law LLC
2657 Mount Carmel Avenue
Glenside, Pennsylvania 19038
Phone: 215-225-5529 (CALL-LAW)
Facsimile: 888-329-0305
a@perronglaw.com

## **CERTIFICATE OF SERVICE**

I certify that I filed the foregoing via ECF on the below date, which will automatically send a copy to all attorneys of record on the case.

September 22, 2025

*/s/ Andrew Roman Perrong*
Andrew Roman Perrong, Esq.
Perrong Law LLC
2657 Mount Carmel Avenue
Glenside, Pennsylvania 19038
Phone: 215-225-5529 (CALL-LAW)
Facsimile: 888-329-0305
a@perronglaw.com