**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

JAMES E. SHELTON, individually and on
behalf of all others similarly situated,

        Plaintiff,

   v.

PURE ENERGY USA, PA, LLC d/b/a
PURE ENERGY USA,

        Defendant.

CASE NO. 2:25-cv-03590-MMB

**<u>DEFENDANT'S REPLY IN SUPPORT
OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT</u>**

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................................................................ 1

ARGUMENT ...................................................................................................... 3

I.  Plaintiff Fails to Rebut Pure Energy's Rule 12(b)(1) Factual Standing Challenge. ........... 3

    A.  The Intertwinement Rule Does Not Bar This Court from Ruling on Pure Energy's Factual Standing Challenge at the Pleadings Stage. ................................................ 3

    B.  Plaintiff's Opposition Fails to Rebut Pure Energy's Evidence Demonstrating that He Lacks an Injury In Fact that is Fairly Traceable to Pure Energy. ...................... 6

II.  Plaintiff Does Not Rebut Pure Energy's Rule 12(b)(6) Arguments on Direct TCPA Liability and Concedes Vicarious TCPA Liability. .......................................... 9

III.  Plaintiff Does Not Rebut Pure Energy's Rule 12(b)(6) Arguments on His Failure to Plead Facts Supporting Other Essential Elements of His TCPA Claims. .................. 13

CONCLUSION ................................................................................................ 15

# TABLE OF AUTHORITIES

## CASES

*Abramson v. Josco Energy USA*,
  2022 U.S. Dist. LEXIS 237792 (W.D. Pa. Aug. 1, 2022) ......................................12

*Atkinson v. Choice Home Warranty*,
  2023 WL 166168 (D.N.J. Jan. 11, 2023) ..............................................................12

*Baccari v. Carguard Admin., Inc.*,
  2022 WL 3213839 (E.D. Pa. Aug. 8, 2022) ......................................................4, 6, 7

*Bank v. GoHealth, LLC*,
  2021 WL 2323282 (E.D.N.Y. Mar. 8, 2021), *report and rec. adopted*, 2021 WL
  1884671 (May 11, 2021) ........................................................................................11

*Baraka v. McGreevey*,
  481 F.3d 187 (3d Cir. 2007)..............................................................................10, 15

*Bennett v. Celtic Ins. Co.*,
  2022 WL 865837 (N.D. Ill. Mar. 23, 2022)..........................................................5, 8

*Bordoni v. Chase Home Fin. LLC*,
  374 F. Supp. 3d 378 (E.D. Pa. 2019) ......................................................................2

*Bridges v. Astrue*,
  2014 WL 1281158 (E.D. Pa. Mar. 28, 2014)............................................................2

*Callier v. Unified Health, LLC*,
  2024 WL 3418778 (W.D. Tex. July 15, 2024) .....................................................4, 5

*Clough v. Highway Auto. Pros LLC*,
  2023 WL 4291826 (C.D. Cal. May 23, 2023) ......................................................4, 6

*Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*,
  836 F.2d 173 (3d Cir. 1988)......................................................................................3

*Consol. Grain & Barge, Inc. v. Anny*,
  2013 WL 486687 (E.D. La. Feb. 6, 2013) ..............................................................11

*Hamilton v. El-Moussa*,
  2020 WL 2614625 (C.D. Cal. Feb. 10, 2020)....................................................8, 10

*Harris v. Kellogg Brown & Root Servs., Inc.*,
  724 F.3d 458 (3d Cir. 2013)..............................................................................1, 5, 9

*In re Dish Network, LLC*,
  28 FCC Rcd. 6574 (2013) .......................................................................................10

*Jackson v. Direct Bldg. Supplies LLC*,
  2024 WL 1721144 (M.D. Pa. Apr. 22, 2024) ......................................................4, 5

*Jager v. Fleet Mgmt. Rd. Serv.*,
  2017 WL 4074281 (D.N.J. Sept. 14, 2017) .............................................................9

*Mortensen v. First Fed. Sav. & Loan Ass'n*,
   549 F.2d 884 (3d Cir. 1977)..............................................................................1, 7, 9, 14

*Murphy v. DCI Biologicals Orlando, LLC*,
   2013 WL 6865772 (M.D. Fla. Dec. 31, 2013), *aff'd*, 797 F.3d 1302 (11th Cir. 2015)............14

*Myslivecek v. FCA US LLC*,
   2022 WL 17904526 (E.D. Mich. Dec. 23, 2022) ..........................................................4

*Naiman v. Freedom Forever, LLC*,
   2019 WL 1790471 (N.D. Cal. Apr. 24, 2019) ..............................................................14

*Rogers v. Assurance IQ, LLC*,
   2023 WL 2646468 (W.D. Wash. Mar. 27, 2023) .........................................................10

*Scofield v. Alleviate Tax LLC*,
   No. 1:24-cv-03231-DDD-KAS, ECF No. 42 (D. Colo. Sep. 18, 2025) ......................................11

*Smith v. Am.-Amicable Life Ins. Co. of Texas*,
   2022 WL 1003762 (E.D. Pa. Apr. 4, 2022) ...............................................................11

*Toney v. Quality Res., Inc.*,
   75 F. Supp. 3d 727 (N.D. Ill. 2014) ....................................................................12, 15

*Warth v. Seldin*,
   422 U.S. 490 (1975)...............................................................................................3

*Winner v. Kohl's Dep't Stores, Inc.*,
   2017 WL 3535038 (E.D. Pa. Aug. 17, 2017) .............................................................4, 6

*Worsham v. Travel Options, Inc.*,
   2016 WL 4592373 (D. Md. Sept. 2, 2016) ................................................................15

## STATUTES

47 U.S.C. § 227(c)(5)..............................................................................................14

## OTHER AUTHORITIES

47 C.F.R. § 64.1601(e)..............................................................................................15

## RULES

Fed. R. Civ. P. 12(b)(1)........................................................................ passim

Fed. R. Civ. P. 12(b)(6)........................................................................ passim

## INTRODUCTION

In his Opposition (Dkt. 12) to Pure Energy's Motion to Dismiss (*see* Dkt. 7-1, "Motion"), Plaintiff argues that he has adequately pled that Pure Energy itself made "telephone solicitation" calls "directly" to him, in violation of the TCPA's DNC provisions, and disavows any theory of vicarious liability. *See* Dkt. 12 at 6-7. While the word "directly" does not even appear in his Complaint (which itself is problematic), Plaintiff's argument in this regard is built on a faulty premise that this Court must always credit his ill-pled allegations as true and may not resolve any factual disputes at the pleadings stage under Rule 12. Not so.  The Third Circuit has made clear that, in resolving a factual standing challenges under Rule 12(b)(1), "no presumptive truthfulness attaches to plaintiff's allegations" and that "the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Harris v. Kellogg Brown & Root Servs., Inc.*, 724 F.3d 458, 464 (3d Cir. 2013). Pure Energy properly raises a factual standing challenge in its Motion and, as such, this Court "is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id.* (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)).

To support its factual standing challenge, Pure Energy presented competent admissible evidence showing that Plaintiff did not suffer an "injury-in-fact" that is fairly traceable to Pure Energy's conduct, as Pure Energy does not place outbound marketing calls at all, did not have any involvement in placing any calls to Plaintiff, and indeed contractually prohibits third parties from making outbound marketing calls on its behalf. *See* Dkt. 7-1 at 6-9; *see also* Dkt. 7-2. In response, Plaintiff's Opposition mischaracterizes the content of Pure Energy's evidence, and it provides no competent (and certainly no credible) evidence to rebut Pure Energy's. Instead, Plaintiff relies heavily on his counsel's vague and unsubstantiated declaration and a purported call transcript, indicating that he (counsel) received a call from someone named "Alan" who said that he was calling

1

"on behalf of" Pure Energy **after this lawsuit was filed**. While Plaintiff attempts to frame this after-the-fact call as an "admission" by Pure Energy that it placed the complained-of calls to him directly, he is wrong. That is because, among other reasons, Pure Energy has confirmed that none of its employees called Plaintiff or his counsel, Pure Energy did not authorize any third parties to make such an outreach (or any others), and indeed it did not even know about this purported "Alan" call until Plaintiff filed his Opposition. *See* Supplemental Declaration of Michael Larsen ("Supp. Larsen Decl."), attached hereto, at ¶¶ 7-9. Beyond this, Plaintiff invites the Court to ignore Pure Energy's factual standing challenge altogether based on a misapplication of the so-called "intertwinement" rule, which does not apply here. In short, Plaintiff failed to overcome Pure Energy's factual standing challenge and, thus, the entire Complaint should be dismissed under Rule 12(b)(1).

The Motion further argues that, even if Plaintiff had standing, his Complaint should still be dismissed in its entirety under Rule 12(b)(6) because he failed to plausibly allege facts, in accordance with federal pleadings standards, supporting an inference that (i) Pure Energy itself physically made the subject calls directly to him, as required for direct TCPA liability, or was in a common law agency relationship with a third party that did call him, as required for vicarious TCPA liability; or (ii) he received more than one "telephone solicitation" call "by or on behalf of" Pure Energy, as required to state a TCPA DNC claim. *See* Dkt. 7-1 at 9-19. As to the threshold liability points, Plaintiff's Opposition simply ignores (thereby tacitly conceding) Pure Energy's arguments on vicarious TCPA liability,[1] and attempts to side-step the issue of direct liability by repeatedly (and improperly) inviting the Court to consider **new unpled** "facts" in his brief that he argues show he received calls "directly from Pure Energy, and without any indication that the calls were placed by

---

[1] *Bordoni v. Chase Home Fin. LLC,* 374 F. Supp. 3d 378, 384 (E.D. Pa. 2019) ("'Failure to address even part of a motion in a responsive brief may result in that aspect of the motion being treated as unopposed.'") (quoting *Bridges v. Astrue,* 2014 WL 1281158, at *14 (E.D. Pa. Mar. 28, 2014).

contractors." Dkt. 12 at 6. The Court must reject this invitation, as "[i]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) (citation omitted).

At bottom, Plaintiff's allegations boil down to this: he received **calls which he did not answer**, and, after calling the number used back and falsely expressing interest in receiving a rebate for energy services, he ultimately purchased Pure Energy's services from someone named "Travis" **with a third party** called "Energy Source Services." These allegations, without more, do not support an inference of Pure Energy's direct liability. *See* Dkt. 7-1 at 12-13 (citing, *inter alia, Metzler* (dismissing substantially similar TCPA complaint on this basis)). Nor do these allegations show the calls Plaintiff purportedly received and did not answer fit the statutory definition of a "telephone solicitation" under the TCPA, or that they even violated the TCPA at all. Thus, for the reasons above and in the Motion, the Complaint should be dismissed under Rule 12(b)(1) and/or 12(b)(6).

## **ARGUMENT**

### I. **Plaintiff Fails to Rebut Pure Energy's Rule 12(b)(1) Factual Standing Challenge.**

#### A. **The Intertwinement Rule Does Not Bar This Court from Ruling on Pure Energy's Factual Standing Challenge at the Pleadings Stage.**

Plaintiff begins by arguing that the Court may not consider Pure Energy's factual standing challenge at the pleadings stage because "the jurisdictional facts are intertwined with the merits." Dkt. 12 at 6. In other words, he asks the Court to apply the so-called "intertwinement" rule and ignore his obvious lack of an injury traceable to Pure Energy. However, the question before the Court is not whether Plaintiff could prevail on the merits of his TCPA claim but whether he was injured and whether that purported injury is fairly traceable to Pure Energy, such that he has standing to bring his TCPA claim in the first instance. *See also Warth v. Seldin*, 422 U.S. 490, 500 (1975) ("[S]tanding in no way depends on the merits of the plaintiff's contention that particular

conduct is illegal[.]"). This issue is properly decided at the pleadings stage in TCPA cases, as courts in this District have held. *See Baccari v. Carguard Admin., Inc.,* 2022 WL 3213839, at *2–3 (E.D. Pa. Aug. 8, 2022) (dismissing TCPA case under Rule 12(b)(1), where defendant submitted evidence showing it did not make or authorize the alleged calls to the plaintiff and, therefore, that the injury alleged was not traceable to defendant, as is required for Article III standing); *Winner v. Kohl's Dep't Stores, Inc.,* 2017 WL 3535038, at *5-7 (E.D. Pa. Aug. 17, 2017) (dismissing TCPA claim based on defendant's factual standing challenge where extrinsic showed plaintiff did not suffer an injury). [2]

None of Plaintiff's scant cited authorities on the "intertwinement" rule preclude this Court from considering Pure Energy's extrinsic evidence or ruling on its factual standing challenge under Rule 12(b)(1) now. *See* Dkt. 12 at 10 (citing *Callier v. Unified Health, LLC,* 2024 WL 3418778, at *5 (W.D. Tex. July 15, 2024); *Jackson v. Direct Bldg. Supplies LLC,* 2024 WL 1721144, at *3 (M.D. Pa. Apr. 22, 2024); and *Clough v. Highway Auto. Pros LLC,* 2023 WL 4291826, at *3 (C.D. Cal. May 23, 2023)). In fact, only *Jackson* applies Third Circuit law, and even then it was the ***plaintiff*** who made the factual standing challenge as to the defendant's counterclaim for fraud in that case (essentially arguing that he did not commit fraud, which plainly goes directly to the merits of the counterclaim), not the defendant challenging the plaintiff's standing to bring his TCPA claim because he lacked an injury in fact traceable to the defendant. *See* 2024 WL 1721144, at *3.

Furthermore, *Jackson* and *Callier* involved factual standing challenges as to whether the plaintiffs solicited the calls at issue from the defendants, not whether the defendants made or

---

[2] Courts have held that the so-called "intertwinement" rule does not apply where a defendant's factual standing attack "does not go to an element of a federal statute providing the [c]ourt with [subject matter] jurisdiction." *Myslivecek v. FCA US LLC,* 2022 WL 17904526, at *6-7 (E.D. Mich. Dec. 23, 2022). Put differently, where "determining standing does not require interpreting an ***element*** of Plaintiff['s] claims," this Court may "consider [Pure Energy's] factual attack" under 12(b)(1) now, notwithstanding the general application of the intertwinement rule. *Id.* (emphasis added).

authorized the calls to the plaintiff, as is the issue here. *Jackson*, 2024 WL 1721144, at \*3; *Callier*, 2024 WL 3418778, at \*5. And in both cases, the parties submitted conflicting sworn statements on the same issues of fact, which the courts found were sufficiently intertwined with the merits.

Here, the parties' declarations are not actually conflicting. Rather, contrary to what the Opposition suggests (*see* Dkt. 12 at 7), Pure Energy's declarant unequivocally testified that "Pure Energy does not make outbound telemarketing calls, does not authorize third parties to make outbound telemarketing calls on its behalf, and in fact contractually prohibits any third parties from making outbound telemarketing calls on behalf of Pure Energy." Dkt. 7-2, ¶ 7. *See also* Supp. Larsen Decl., ¶¶ 7-9 (declaring similar facts). Plaintiff does not present anything rebutting this.

Instead, Plaintiff's counsel merely provides a conclusory declaration and an unreliable call transcript, which together suggest at best that someone named "Alan" called counsel "on behalf of" Pure Energy and "admitted" to making calls to Plaintiff. *See* Dkt. 12-2. However, <u>nothing</u> that "Alan" supposedly said suggests that Pure Energy itself "directly" called Plaintiff as he now argues (but does not plead), as opposed to "Alan" making calls "on behalf" of Pure Energy—which is a critically important distinction in the direct liability context, with the latter being insufficient to plead such a liability theory. *See* Dkt. 7-1 at 15 (citing *Bennett* and *Wick*). Indeed, it is unclear from the transcript who "Alan" actually is, who he works for, and whether he is even authorized to speak "on behalf of" Pure Energy. That does not conflict with Pure Energy's evidence. Rather, Plaintiff's "evidence" does not show Pure Energy itself made any calls here, and neither does Pure Energy's evidence. *See* Supp. Larsen Decl., ¶¶ 7-9.  And again, the Court is free to weigh this evidence in deciding Plaintiff's standing to bring his TCPA claim. *See Harris*, 724 F.3d at 464.

Further, the intertwinement rule plainly was not a bar to deciding standing at the pleadings stage in the *Baccari* or *Winner* cases, cited above and in the Motion, where judges ***in this District***

granted the defendant's Rule 12(b)(1) motions to dismiss in TCPA cases presenting factual standing challenges similar to Pure Energy's. Plaintiff's Opposition presents no compelling reason why this Court should depart from its sister courts on this issue and rule differently in this case.

Contrary to Plaintiff's contention, *Baccari* is directly on point and involved precisely the same factual standing challenge that Pure Energy raises here. *See* Dkt. 7-1 at 6-7. There, Judge Beetlestone dismissed the complaint for lack of standing because the plaintiff failed to adequately rebut the defendant's evidence demonstrating that it did not make or authorize the calls at issue. *See Baccari,* 2022 WL 3213839, at *2–3. The same result is warranted here, as Plaintiff's Opposition does not rebut Pure Energy's evidence showing that Plaintiff did not receive any calls from Pure Energy or anyone authorized to call on its behalf; thus, he did not suffer an injury-in-fact that is fairly traceable to Pure Energy, as discussed in the Motion and in greater detail in the next section.

Finally, in *Clough,* there was no dispute that the plaintiff received an outbound call from an authorized agent (a "seller") of the defendant. 2023 WL 4291826, at *2. The only dispute in that case was whether the agent was authorized to engage in *telemarketing*. *Id*. By contrast, here, Plaintiff was purportedly sold Pure Energy's services during an inbound call Plaintiff made to someone from "Energy Source Services." Plaintiff has not provided any evidence to substantiate his bald allegation that "Energy Source Services" is a "fictitious" name used by Pure Energy to make outbound calls, nor are there any facts or evidence suggesting "Energy Source Services" was authorized to make outbound calls to solicit sales on behalf of Pure Energy.

## B.    Plaintiff's Opposition Fails to Rebut Pure Energy's Evidence Demonstrating that He Lacks an Injury In Fact that is Fairly Traceable to Pure Energy.

The totality of the evidence submitted with the Motion and here competently demonstrates that Plaintiff did not suffer an injury that is fairly traceable to Pure Energy. Plaintiff's Opposition does not show otherwise. Pure Energy provided a declaration supported by factual evidence

6

demonstrating that it did not call Plaintiff, did not know of or participate in any such calls, did not authorize (and indeed forbade) any third parties to make any outbound marketing calls, and has zero connection with the caller's phone number (which, if called, does not reach Pure Energy in any event). *See* Dkt. 7-1 at 6-9 & Dkt. 7-2 ¶¶ 7-13. That is why Judge Beetlestone dismissed the *Baccari* case. In response, Plaintiff disingenuously suggests that Pure Energy's declaration "is carefully, and deceptively, worded" and "[n]owhere in that declaration does Pure Energy explicitly deny that it *itself* places outbound calls." *See* Dkt. 12 at 6. Plaintiff apparently did not read paragraphs 7 and 13 of the Larson Declaration, which <u>unequivocally</u> state that Pure Energy does not make outbound telemarketing calls. *See* Dkt. 7-2. *See also* Supp. Larsen Decl., ¶¶ 7-9. In short, the denials Plaintiff claims are lacking are there in black and white. He cannot spin them.

Also as discussed above, Plaintiff attempts to counter these unequivocal denials from Pure Energy by providing little more than a declaration from his counsel suggesting that, after this case was filed, he received a call from someone named "Alan" who said he was calling "on behalf of" Pure Energy and purportedly admitted that Pure Energy made calls to Plaintiff. *See* Dkt. 12 at 7-8. This contention is insufficient to rebut Pure Energy's factual challenge for several reasons:

**<u>First</u>**, Plaintiff's counsel apparently did nothing to confirm that "Alan" is associated with Pure Energy in any way, much less that he was authorized to call on its behalf. Plaintiff's counsel's declaration does not provide the phone number from which "Alan" called or any other details that would suggest Pure Energy was involved or even aware that "Alan" was purportedly making calls "on behalf of" Pure Energy. *See* Dkt. 12-2 (Declaration of Andrew Perrong), 12-4 (Transcript of purported call from "Alan"). This is important because "Alan" purportedly called Plaintiff's counsel after this lawsuit was filed on a publicly accessible docket. *See* Dkt. 12-2, ¶ 7.

**<u>Second</u>**, Pure Energy has confirmed that it did not authorize, instruct or otherwise have

any knowledge that someone named "Alan" contacted Plaintiff's counsel prior to Plaintiff's Opposition being filed. *See* Supp. Larsen Decl., ¶¶ 7-9. In other words, whoever "Alan" is, he was not associated with or authorized to contact Plaintiff's counsel "on behalf of" Pure Energy.

**Third**, contrary to Plaintiff's contention, nothing that "Alan" said suggests that Pure Energy physically made the subject calls, authorized any third party to make the calls, or had any knowledge of them whatsoever. Indeed, nothing in Plaintiff's counsel's declaration changes the fact that Plaintiff made multiple ***inbound*** calls to a phone number that is not associated with Pure Energy and spoke to someone who identified themselves as from "Energy Source Services," not Pure Energy. *See* Dkt. 7-1 at 6-9. And while Plaintiff contends that "Energy Source Services" is a fictitious name, he provides no facts to substantiate this conclusion. Thus, this evidence does not refute Pure Energy's evidence that it does not make or authorize others to make marketing calls.

**Finally**, that Pure Energy's services were purportedly mentioned during the second inbound call Plaintiff made to the caller (which only happened after Plaintiff solicited the sale), and that Plaintiff purportedly received a "letter" from Pure Energy confirming his purchase, says nothing as to whether Pure Energy itself made any outbound calls to Plaintiff or authorized any third party to make such outreach. *See Bennett v. Celtic Ins. Co.,* 2022 WL 865837, at *3 (N.D. Ill. Mar. 23, 2022) ("[A] defendant 'generally does not [physically] initiate calls [under the TCPA] placed by third-party telemarketers,' even if the third party had acted on its behalf.") (citation omitted); *see also Hamilton v. El-Moussa*, 2020 WL 2614625, at *2 (C.D. Cal. Feb. 10, 2020) (email from defendant received after call insufficient to plausibly allege direct or vicarious TCPA liability). In other words, that Plaintiff apparently purchased Pure Energy's services on an inbound call he made to a third party doing business as "Energy Source Services," and only after expressing interest in an energy rebate, is not relevant to, much less dispositive of, TCPA liability.

In sum, irrespective of Plaintiff's unsupported allegations, the evidence that Pure Energy submitted with the Motion indisputably demonstrates that Plaintiff did not suffer an injury in fact that is fairly traceable to Pure Energy sufficient to confer standing. Therefore, the Court should properly dismiss Plaintiff's Complaint under Rule 12(b)(1). *See Harris*, 724 F.3d at 464.

## II.    Plaintiff Does Not Rebut Pure Energy's Rule 12(b)(6) Arguments on Direct TCPA Liability and Concedes Vicarious TCPA Liability.

Although the threshold defect of Plaintiff's lack of standing alone warrants dismissal, Plaintiff spends the balance of his Opposition primarily seeking to improperly amend his Complaint by suggesting for the first time that Pure Energy "admitted that it made the subject calls" after this lawsuit was filed." *See* Dkt. 12 at 15. In doing so, Plaintiff misapprehends the key legal distinctions between (i) an Article III factual standing challenge under Rule 12(b)(1), which as the Court knows is not based on the pled allegations but on extrinsic evidence, and (ii) arguments regarding the legal sufficiency of the pled allegations under Rule 12(b)(6), where the Court's scope review is restricted only to the four corners of the Complaint and matters properly subject to judicial notice. The Court may not consider this extrinsic evidence in deciding a Rule 12(b)(6) motion to dismiss. *See Jager v. Fleet Mgmt. Rd. Serv.*, 2017 WL 4074281, at *4 (D.N.J. Sept. 14, 2017) (declining to consider extrinsic evidence not subject to judicial notice in deciding Rule 12(b)(6) motion to dismiss). To the extent the Court reaches these arguments, they lack merit for several reasons.

**First**, despite expressly alleging that he did not answer any of the outbound calls he purportedly received and, when calling the number back (which is not associated with Pure Energy), reached someone who identified themselves as "Energy Source Services," (*see* Dkt. 7-2 at 11-12), Plaintiff's Opposition focuses only on direct TCPA liability. In this regard, he concludes, without factual support that "every indication was that the agent was a Pure Energy employee." *See* Dkt. 12 at 21. But Plaintiff does not allege any facts from which to infer that "Energy Source Services,"

which is the only company the caller identified as his company, is a "fictitious" name used by Pure Energy (*see* Dkt 12 at 14-23). Plaintiff's unsupported conclusion to the contrary need not be accepted as true. *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007).

**Second**, Plaintiff suggests that he need only plead "sufficient facts to demonstrate the Defendant's involvement at the pleadings stage" to avoid dismissal on direct TCPA liability grounds. Dkt. 12 at 22. Not so. Merely having some alleged "involvement" in a call or text is insufficient to state a plausible direct TCPA liability claim under Rule 12(b)(6)—which, as a matter of well-settled law, requires that Plaintiff allege with specific, non-conclusory facts that the defendant literally ***physically*** placed ***each*** of the communications at issue directly to him. *See* Dkt. 7-1 at 9-16 (collecting cases). *See also In re Dish Network, LLC*, 28 FCC Rcd. 6574, 6583 ¶ 26 (2013) ("merely having some role, however minor, in the causal chain that results in the making of a telephone call" is insufficient for direct liability). Parroting case law and concluding Pure Energy "directly" or "physically" called him—which Plaintiff only does in his *brief* in any event—does not suffice. *See, e.g., Rogers v. Assurance IQ, LLC*, 2023 WL 2646468, at *5 (W.D. Wash. Mar. 27, 2023).[3]

**Third**, the purported content of the inbound calls Plaintiff made to the caller, and the fact that he apparently received a "letter" from Pure Energy after this inbound call to "Energy Source Services," are insufficient to plausibly infer that the subject outbound calls to him came directly from Pure Energy itself. *See, e.g., Hamilton*, 2020 WL 2614625, at *2 (email from defendant received after call insufficient to plausibly allege direct or vicarious TCPA liability). Rather, the more reasonable (and indeed only) inference is that a third party called him. That is not direct liability.

---

[3] As myriad authorities cited in the Motion and above show, conclusory allegations as to the content of the at-issue communications alone is not dispositive on this front or enough to avoid dismissal on this basis, especially where those allegations are directly contradicted by many other conclusory allegations in the Complaint suggesting that third parties are responsible for physically placing them.

Plaintiff does not cite any authority that compels a different result. *Consol. Grain & Barge, Inc. v. Anny*, for example, is not a TCPA case, nor does it address the pleading standards for direct and vicarious liability under Rule 12(b)(6). 2013 WL 486687, at *6 (E.D. La. Feb. 6, 2013). Plaintiff's argument and reliance on *Smith v. Am.-Amicable Life Ins. Co. of Texas*, 2022 WL 1003762 (E.D. Pa. Apr. 4, 2022) is also misplaced. Indeed, the *Smith* court misapplied and seemingly conflated the standards for pleading "traceability" for **Article III standing** purposes under Rule 12(b)(1) with the more precise standards for pleading direct and vicarious TCPA liability under Rule 12(b)(6), which are distinct legal concepts with different pleading requirements; thus it was wrongly decided. *See* 2022 WL 1003762, at *1–2 (ruling on the "Traceability of Calls to Defendant" and holding alleging the at-issue calls were made "by or on behalf" of defendant was sufficient, but not applying "direct" or "vicarious" TCPA liability standards). *Cf. Bank v. GoHealth, LLC,* 2021 WL 2323282, at *6–12 (E.D.N.Y. Mar. 8, 2021), *report and rec. adopted,* 2021 WL 1884671 (May 11, 2021) (call deemed "traceable" to defendant for Article III standing but dismissing for failure to allege direct or vicarious liability, holding: "while the allegations against GoHealth may not be enough to eventually establish [direct or vicarious TCPA] liability on the part of GoHealth ..., they suffice[d] to allege that plaintiff's injury is traceable to the defendant") (internal citations omitted). In short, *Smith* likewise is of no moment here.

*Scofield v. Alleviate Tax LLC*, which Plaintiff incorrectly suggests involved Pure Energy, is also inapposite. *See* Dkt. 12 at 17-18 (citing No. 1:24-cv-03231-DDD-KAS, ECF No. 42 (D. Colo. Sep. 18, 2025)). There, the plaintiff called the phone number back and reached someone who identified "his company" as Alleviate (the defendant). *Id.* Here, the individual who answered Plaintiff's inbound call identified his company as "Energy Source Services," not Pure Energy.

In *Atkinson v. Choice Home Warranty*, the court declined to dismiss after improperly

crediting that plaintiff's bald conclusions that she received calls "from Defendant" and that the calls were "for telemarketing purposes" to sell her a "home warranty." As the authorities cited in the Motion and herein show, however, that is inconsistent with how the majority of courts have evaluated the facial sufficiency of direct TCPA liability claims at the pleading stage, showing that *Atkinson* is an outlier decision at best. Moreover, the factual tipping point for the *Atkinson* court on the direct liability front seemingly was that the plaintiff alleged he expressly "asked if the company *making the calls* had a website" on one call and was provided with the *defendant's* website. 2023 WL 166168, at \*5 (D.N.J. Jan. 11, 2023) (emphasis added). Plaintiff alleges no such facts here.

In *Abramson v. Josco Energy USA,* 2022 U.S. Dist. LEXIS 237792, at \*6 (W.D. Pa. Aug. 1, 2022), the court ruled on an amended pleading with much more detail than Plaintiff's Complaint here.[4] *Toney v. Quality Res., Inc.*, 75 F. Supp. 3d 727 (N.D. Ill. 2014) does not help Plaintiff on this point either, since the court found the complaint <u>failed</u> to assert a direct liability theory. *Id*. at 742.

Plaintiff also cites various cases with no analysis (many of which have a different procedural posture and do not even involve a ruling on a Rule 12(b)(6) motion), and boldly proclaims that "[a] litany of other courts has [*sic*] agreed and applied nearly identical reasoning in applying direct and vicarious liability to circumstances similar to those here, where goods are sold through brokerages or multiple parties are involved in the sales process." Dkt. 12 at 15-16 (citing, *inter alia, Wallace* and *Hayhurst*). Those decisions are inapposite too, primarily because the only issue at bar was whether the plaintiffs had sufficiently plead **vicarious** TCPA liability to the extent that the subject calls were physically initiated by a third party, not the defendants. Per his Response, Plaintiff purports to be asserting **only** a "direct" liability theory here. *See* Dkt. 12 at 14-23. Moreover, in the

---

[4] Notably, the *Josco* court also dismissed the same plaintiff's earlier complaint on direct and vicarious liability grounds. *See* Case No. 2:21-cv-01322-MRH (W.D. Pa. Apr. 22, 2022), Dkt. 24.

same string of citations, Plaintiff also cites one post-trial standing decision (*Golan*), one class certification decision (*Bumpus*), and <u>four</u> summary judgment decisions (*Worsham, Hossfeld, Chinitz*, and *McMorrow*), all of which are plainly inapplicable to a Rule 12(b)(6) motion.

**Finally**, Plaintiff concludes his counterarguments on direct liability by misconstruing the holdings in some of Pure Energy's many on-point authorities, while ignoring others. *See* Dkt. 12 at 19-23. As the Court can plainly see, each case Plaintiff cherry-picks applies here and demonstrates that his allegations are insufficient to plead a direct TCPA liability theory. In each case, the plaintiffs failed to plausibly allege that the defendant(s), and not a third party, physically initiated each of the subject communications to them directly. That is the federal standard for pleading a direct TCPA liability theory at the pleadings stage, as the Motion shows. See Dkt. 7-1 at 10-12. And despite Plaintiff's attempts to distinguish *Metzler*, Plaintiff admits that case involves the same "marketing strategy" alleged against Pure Energy in this case. The allegations in *Metzler* were insufficient to plausibly allege direct or vicarious liability against Pure Energy. As such, Plaintiff's same allegations are equally insufficient in this case and warrant dismissal of the Complaint in its entirety.

### III. Plaintiff Does Not Rebut Pure Energy's Rule 12(b)(6) Arguments on His Failure to Plead Facts Supporting Other Essential Elements of His TCPA Claims.

The Motion also shows how Plaintiff fails to plead facts supporting other essential elements of his TCPA claims, further warranting dismissal under Rule 12(b)(6). *See* Dkt. 7-1 at 17-19. Attempting to rebut Pure Energy's positions on these issues, the Opposition follows the same pattern of attack noted above, making hyperbolic or irrelevant arguments and/or ignoring or misconstruing Pure Energy's arguments, the facts, and the law. These arguments fail on multiple levels:

**First**, Plaintiff asserts that he has "unquestionably pled that he received three calls by the same entity–the Defendant–within a twelve-month period, to his number on the National Do Not Call Registry." Dkt. 12 at 23. However, because the Motion demonstrates Plaintiff fails to plead facts

supporting a direct or vicarious TCPA liability theory (and his Opposition does not refute this, as outlined above), Plaintiff has not adequately alleged that he received more than one call initiated "***by or on behalf of the same entity***" in a 12-month period, which is an essential element of his DNC claim. 47 U.S.C. § 227(c)(5) (emphasis added). Put differently, Plaintiff's failure to plead a TCPA liability theory for all of the reasons discussed at length in the Motion and Section II above means that his DNC claim naturally fails to state this key element, as well. *See, e.g., Naiman v. Freedom Forever, LLC*, 2019 WL 1790471, at *4 (N.D. Cal. Apr. 24, 2019) (dismissing on this basis).

**Second**, Plaintiff proclaims that the "[t]he purpose of these calls was clearly to advertise Defendant's electric services." Dkt. 12 at 23. As the Motion demonstrates, and is plainly evident upon review of his threadbare pleading, however, what little (if any) detail Plaintiff alleges in his Complaint in this regard merely regurgitates the statutory text and case law and amounts to bare conclusions, rather than actual facts on which this Court could reasonably infer whether the subject calls constituted a "telephone solicitation" as defined by the TCPA. And critically, these facts relate only to inbound calls that Plaintiff initiated himself. *See* Dkt. 7-1 at 17-19. He admits he ***did not answer*** any of the outbound calls he purportedly received, nor was he solicited to purchase anything from Pure Energy on the inbound calls until he feigned interest in an energy rebate. Myriad courts have found such allegations insufficient to avoid dismissal on this basis. *See* Dkt. 7-1 at 17-19 (citing *Greene*, *Weingrad*, *Eggleston*, *Gillam*). The bottom line is Plaintiff does not plausibly allege in his Complaint with actual supporting facts that he was encouraged to purchase anything from Pure Energy during an outbound call. This deficiency further warrants dismissal. *See Murphy v. DCI Biologicals Orlando, LLC*, 2013 WL 6865772, at *10 (M.D. Fla. Dec. 31, 2013), *aff'd*, 797 F.3d 1302 (11th Cir. 2015*)* (determining calls not "telephone solicitations" for a Rule 12(b)(6) motion where, as here, the plaintiff was not encouraged "to purchase, rent, or invest in anything" as pled).

**Third**, Plaintiff represents that the "TCPA does not require a plaintiff to answer each call" to plausibly allege a telephone solicitation. However, none of the authorities on which Plaintiff relies involved a scenario where, as here, the plaintiff did not answer ***any*** outbound calls and was only "encouraged" to purchase something after making an ***inbound*** call and expressing interest. *See* Dkt. 12 at 24-25 (citing *Moore*, *Toney*, *Atkinson*, *Bird*). If Plaintiff had answered one of them, he might have a point.  But he did not.  And it was not until the second inbound call he made, when he feigned interest, that Pure Energy was even mentioned in the first place.  Plaintiff also notably fails to distinguish *Greene* and *Gillam*, which are directly on-point and highly persuasive.

**Finally**, Plaintiff relies solely on *Newell* to support his argument that 47 C.F.R. § 64.1601(e) of the TCPA's implementing regulations provide a private right of action. *See* Dkt. 12 at 25-26. However, Plaintiff does not address or distinguish the many authorities that have held otherwise. *See, e.g.,* Dkt. 7-1 at 19 (citing *Dobronski v. Selectquote Ins. Servs.*; *Dobronski v. Total Ins. Brokers, LLC*; *Meyer v. Cap. All. Grp.; Worsham v. Travel Options, Inc.).* As the *Worsham* court concluded, "[a]ny violation of § 64.1601(e) is a violation of technical and procedural standards under subsection *d*, and as earlier noted, no private right of action exists under the latter subsection of the TCPA." 2016 WL 4592373, at *3-4 (D. Md. Sept. 2, 2016). Plaintiff also argues, without support, that "text of the provision itself is written in such a way that it expressly imputes liability on entities whose goods and services are promoted on the call, even when (and if) they use third party telemarketers." *See* Dkt. 12 at 26. This perfunctory and unsupported conclusion does not save Plaintiff's claim, either. *Baraka*, 481 F.3d at 195. Thus, Plaintiff's TCPA claims should be dismissed under Rule 12(b)(6) for these additional reasons.

## CONCLUSION

For all the reasons provided above, the Court should dismiss the entire Complaint.

Dated: October 6, 2025                          Respectfully submitted,

                                                /s/ Frederick P. Santarelli
                                                FREDERICK P. SANTARELLI (PA 53901)
                                                STEVEN C. TOLLIVER, JR. (PA 327165)
                                                **ELLIOTT GREENLEAF, P.C.**
                                                925 Harvest Drive, Suite 300
                                                Blue Bell, PA 19422
                                                (215) 977-1000 (phone)
                                                (215) 977-1099 (fax)
                                                FPSantarelli@elliottgreenleaf.com
                                                sct@elliottgreenleaf.com

                                                JOHN W. MCGUINNESS
                                                (*Pro Hac Vice* to be requested)
                                                PAUL HEERINGA
                                                (*Pro Hac Vice* to be requested)
                                                **MANATT, PHELPS & PHILLIP, LLP**
                                                1050 Connecticut Avenue, NW, Suite 600
                                                Washington, D.C. 20036
                                                Telephone: 202-585-6500
                                                Facsimile: 202-585-6600
                                                jmcguinness@manatt.com
                                                pheeringa@manatt.com

                                                *Counsel for Defendant Pure Energy USA, PA, LLC*
                                                *d/b/a Pure Energy*

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that I am causing the foregoing to be filed electronically with the Court, where it is available for viewing and downloading from the Court's ECF system, and that such electronic filing automatically generates a Notice of Electronic Filing constituting service of the filed document upon all counsel of record.

Dated: October 6, 2025

*/s/ Frederick P. Santarelli*
FREDERICK P. SANTARELLI

*Counsel for Defendant Pure Energy USA, PA, LLC d/b/a Pure Energy*