**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

JAMES E. SHELTON, individually and on behalf of all others similarly situated,

*Plaintiff*,

v.

PURE ENERGY USA, PA, LLC d/b/a PURE ENERGY USA, ALONZO AMAR, ARASH AKHAVAN A/K/A "ALAN," AND DOE DEFENDANT PSG ZONE D/B/A PUREPSGPA AND/OR ENERGY SOURCE SERVICES,

*Defendants*.

CASE NO. 2:25-cv-03590-MMB

CLASS ACTION

**DEFENDANT PURE ENERGY'S BRIEF IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

# TABLE OF CONTENTS


INTRODUCTION .......... 1

RELEVANT ALLEGATIONS PLED IN PLAINTIFF'S FAC .......... 3

EXTRINSIC EVIDENCE IN SUPPORT OF FACTUAL STANDING CHALLENGE .......... 7

APPLICABLE LEGAL STANDARDS .......... 9

ARGUMENT .......... 12

I. THE ENTIRE FAC SHOULD BE DISMISSED UNDER RULE 12(b)(1) FOR LACK OF SUBJECT MATTER JURISDICTION BECAUSE EXTRINSIC EVIDENCE SHOWS THAT PLAINTIFF LACKS ARTICLE III STANDING. .......... 12

II. IN THE ALTERNATIVE, THE ENTIRE FAC SHOULD BE DISMISSED UNDER RULE 12(b)(6) FOR FAILURE TO STATE A CLAIM FOR RELIEF. .......... 15

A. Plaintiff Fails to Plausibly Plead a Theory of Liability Against Pure Energy. .......... 15

1. Plaintiff Does Not Assert a Direct TCPA Liability Theory for Pure Energy. .......... 16

2. Plaintiff Does Not Plausbly Allege a Vicarious Liability Theory Under the TCPA Against Pure Energy. .......... 18

a. The FAC Fails to Plausibly Allege Actual Agency/Authority. .......... 20

b. The FAC Fails to Plausibly Allege Apparent Authority. .......... 25

c. The FAC Fails to Plausibly Allege a Ratification Theory. .......... 26

B. The Entire FAC Must Be Dismissed Under Rule 12(b)(6) Because Plaintiff Fails to Plead Sufficient Facts Supporting Other Key Elements of His Claims. .......... 28

III. ANY DISMISSAL SHOULD BE WITH PREJUDICE. .......... 34

CONCLUSION .......... 34

## TABLE OF AUTHORITIES

### CASES

*Aaronson v. CHW Grp., Inc.*,
2019 WL 8953349 (E.D. Va. Apr. 15, 2019) ....................16

*Baccari v. Carguard Admin., Inc.*,
2022 WL 3213839 (E.D. Pa. Aug. 8, 2022) (Beetlestone, C.J.) .................... passim

*Ballentine v. U.S.*,
486 F.3d 806 (3d Cir. 2007)....................9

*CNA v. U.S.*,
535 F.3d 132 (3d Cir. 2008)....................9

*Constitution Party of Pennsylvania v. Aichele*,
757 F.3d 347 (3d Cir. 2014)....................10

*Dobronski v. Selectquote Ins. Servs*.,
773 F. Supp. 3d 373 (E.D. Mich. 2025)....................33

*Dobronski v. Selectquote Ins. Servs.*,
2025 WL 900439 (E.D. Mich. Mar. 25, 2025) ....................33

*Doyle v. GoHealth, LLC*,
2023 WL 3984951 (D.N.J. Mar. 30, 2023)....................16

*Doyle v. Matrix Warranty Sols., Inc.*,
2023 WL 4188313 (D.N.J. June 26, 2023) ....................16

*Eggleston v. Reward Zone USA LLC*,
2022 WL 886094 (C.D. Cal. Jan. 28, 2022) ....................30

*Gillam v. Reliance First Capital, LLC*,
2023 WL 2163775 (E.D.N.Y. Feb. 22, 2023)....................29, 31

*Greene v. Select Funding, LLC*,
2021 WL 4926495 (C.D. Cal. Feb. 5, 2021)....................29

*Hall v. Xanadu Mktg., Inc.*,
682 F. Supp. 3d 1278 (N.D. Ga. 2023) ....................13

*In re Dish Network, LLC*,
2013 WL 1934349, 28 FCC Rcd. 6574 (2013)....................16, 17

*In re Rules & Regs. Implementing the TCPA*,
30 FCC Rcd. 7961 (2015) ....................12

*Klein v. Just Energy Grp., Inc.*,
2016 WL 3539137 (W.D. Pa. June 29, 2016)....................16

*Landy v. Nat. Power Sources, LLC*,
2021 WL 3634162 (D.N.J. Aug. 17, 2021) ....................16

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
572 U.S. 118 (2014)....................9, 12

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992)....9, 15

*Mortensen v. First Fed. Sav. & Loan Ass'n*,
549 F.2d 884 (3d Cir. 1977)....10, 28

*Nelums v. Mandu Wellness, LLC*,
2023 WL 5607594 (D.N.M. Aug. 30, 2023) ....16

*Norman v. Northern Ill. Gas Co. Inc*.,
2014 WL 184774 (N.D. Ill. Jan. 16, 2014)....29

*Pascal v. Agentra, LLC*,
2019 WL 5212961 (N.D. Cal. Oct. 16, 2019)....16

*Public Int. Research of NJ v. Powell Duffryn*,
913 F. 2d 64 (3rd. Cir. 1990) ....9

*Scruggs v. CHW Grp., Inc.*,
2020 WL 9348208 (E.D. Va. Nov. 12, 2020)....17

*Sheski v. Shopify (USA) Inc.*,
2020 WL 2474421 (N.D. Cal. May 13, 2020) ....16

*Simon v. Eastern Ky. Welfare Rights Org*.,
426 U.S. 26 (1976)....15

*Smith v. Direct Building Supplies, LLC*,
2021 WL 4623275 (E.D. Pa. Oct. 7, 2021)....16, 17

*Smith v. Vision Solar LLC*,
2020 WL 5632653 (E.D. Pa. Sept. 21, 2020) ....16

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016)....9

*St. Louis Heart Ctr., Inc. v. Nomax, Inc.*,
899 F.3d 500 (8th Cir. 2018), *cert. denied,* 139 S. Ct. 1198 (2019)....13

*Stewart v. Network Cap. Funding Corp*.,
549 F. Supp. 3d 1058 (C.D. Cal. 2021) ....13

*Weingrad v. Top Healthcare Options Ins. Agency Co*.,
2024 WL 4228149 (E.D. Pa. Sept. 17, 2024) ....30

*Winner v. Kohl's Dept. Stores, Inc.*,
2017 WL 3535038 (E.D. Pa. Aug. 17, 2017) ....13

**STATUTES**

47 U.S.C. § 227(c)(5).... passim

**OTHER AUTHORITIES**

47 C.F.R. § 64.1200(c)....28

47 C.F.R. § 64.1200(c)(2) ....15

47 C.F.R. § 64.1200(f)(15) .....29
47 C.F.R. § 64.1601(e).....15, 33
U.S. Const., Art. III..... passim

**RULES**

Fed. R. Civ. P. 12(b)(1)..... passim
Fed. R. Civ. P. 12(b)(6)..... passim

# INTRODUCTION

Pure Energy moved to dismiss the original Complaint filed in this matter on various grounds—including under Fed. R. Civ. P. 12(b)(1) to the extent that, as a factual matter, Plaintiff James Shelton (a serial litigant who is no stranger to this Court) lacks standing under Article III of the U.S. Constitution to pursue a Telephone Consumer Protection Act ("TCPA") claim against Pure Energy. *See generally* Dkts. 7-1, 7-2, 15-1 & 15-2. As Pure Energy argued, Plaintiff lacks Article III standing to sue Pure Energy under the TCPA in this case, warranting dismissal of his claims under Rule 12(b)(1), because extrinsic evidence (which may be properly considered for a factual standing challenge) shows *inter alia* that Pure Energy does not place any outbound marketing calls at all, did not have any involvement in placing any calls to Plaintiff, and in fact contractually prohibits third parties from making outbound marketing calls on its behalf. Therefore, Plaintiff did not suffer any injury "fairly traceable" to Pure Energy's conduct, as Article III requires. *See* Dkt. 7-1 at 1, 6-7 (analyzing *Baccari v. Carguard Admin., Inc.,* 2022 WL 3213839, at *2–3 (E.D. Pa. Aug. 8, 2022)).

In its order granting that motion and dismissing his original Complaint, this Court held that Plaintiff was unable "to refute Defendant's sworn affidavits that Pure Energy did not call Plaintiff, did not know of or participate in any such calls, did not authorize any third parties to make any outbound marketing calls on its behalf, and did not authorize anyone named 'Alan' to contact Mr. Perrong [*i.e.*, Plaintiff's counsel] to discuss this lawsuit." Dkt. 21 at 3 (citing Dkts 7-2 & 15-2). The Court granted Plaintiff leave to amend his pleading as well as "leave to commence [pleadings stage] discovery regarding the identity of the caller and the source of the alleged calls." *Id.*

Yet, in the nearly eight months between the Court's dismissal order and when Plaintiff finally filed his First Amended Complaint (*see* Dkt. 23, "FAC"), ***nothing changed that would give Plaintiff Article III standing to bring a TCPA claim against Pure Energy here***. At bottom, Plaintiff is still

unable to refute Pure Energy's evidence showing that it had nothing do so with the subject calls. *See generally* Declaration of Eileen Routhier ("Routhier Decl."), attached. No amount of additional repleading, pleadings stage discovery, or self-serving declarations from Plaintiff or his counsel can confer standing where plainly none exists. Therefore, the Court should reach the same conclusions here and dismiss his claims against Pure Energy under Rule 12(b)(1) for lack of standing.[1]

Nor does Plaintiff's FAC cure its predecessor's multiple fatal pleading defects that Pure Energy identified in its previous motion, such that it would pass muster under the bedrock *Iqbal*/*Twombly* federal pleading standard. *See* Dkt. 7-1 at 2, 9-17. Instead, Plaintiff again fails to meaningfully connect the relevant calls to Pure Energy by pleading actual facts in his FAC, much less to plausibly establish Pure Energy bears any legal responsibility for the subject calls or that they even violated the TCPA in the first instance. And he continues to rely instead on bald conclusions and speculation, which are not entitled to any presumption of truth here. In all, such threadbare allegations do not meet federal pleadings standards and cannot survive dismissal in any federal case, let alone under the weight of applicable authority on the standards for pleading TCPA claims.

As such, even if *arguendo* Plaintiff had standing (and he does not), his FAC is facially deficient and ripe for a dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6). Moreover,

[1] The Court treated Pure Energy's previous motion to dismiss "as a Rule 56 Motion for Summary Judgment under Fed. R. Civ. P. 12(d)" to the extent it included a supporting declaration. Dkt. 21 at 2. Pure Energy respectfully submits that doing so is not necessary here, as Pure Energy is submitting evidence to support its factual standing challenge under Rule 12(b)(1), which this Court may properly consider when ruling on the instant motion under well-settled federal law, and not in support of its alternative Rule 12(b)(6) arguments, where considering outside evidence might trigger a Rule 12(d) conversion to a Rule 56 motion. *See, e.g., Hum. Genome Scis., Inc. v. Genentech, Inc.*, 589 F. Supp. 2d 512, 518 (D. Del. 2008) (holding that, for a Rule 12(b)(1) factual standing challenge, the court may properly consider extrinsic evidence when ruling on the motion without converting it to a motion for summary judgment) (citing *Gould Electronics, Inc. v. U.S.,* 220 F.3d 169, 176–77 (3d Cir. 2000) and *Petruska v. Gannon Univ.,* 462 F.3d 294, 302 n. 3 (3d Cir. 2006)); *see also Baccari,* 2022 WL 3213839, at *2–3 (granting the defendant's factual standing challenge under Rule 12(b)(1) and holding that "as [plaintiff's] complaint is being dismissed for lack of subject matter jurisdiction, [defendant's] motion to dismiss it for failure to state a claim will be denied as moot.").

since the Court already afforded Plaintiff the opportunity to amend his original pleading to cure these deficiencies along with several months of pleadings stage discovery to find factual support for his claims, and yet he still cannot demonstrate his standing or plead a plausible claim after amendment, Pure Energy submits that dismissing his entire FAC with prejudice is warranted in this instance.

## RELEVANT ALLEGATIONS PLED IN PLAINTIFF'S FAC

Despite Plaintiff vehemently arguing in opposition to Pure Energy's previous motion to dismiss that he only "received calls directly from Pure Energy" and not from any third parties (Dkt. 12 at 6), ***it is now undisputed that Pure Energy did not call Plaintiff***. Rather, demonstrating that it is nothing more than a classic "sham pleading" that should simply be rejected on its face,[2] Plaintiff's FAC now contradictorily alleges, albeit in a wholly conclusory fashion, that a different party, Alonzo Amar, "subscribed to, owned, operated, controlled, and/or was responsible for the toll-free telephone number … that placed the subject telemarketing calls to Plaintiff." Dkt. 23, ¶ 6; *see also id.,* ¶ 54.

Beyond the addition of three defendants (two of which have since been dismissed)[3] and a "180º reversal" on his theory of liability against Pure Energy, however, Plaintiff largely just repeats or reframes the conclusory allegations from his original Complaint, and then adds more unsupported conclusions and speculation to his FAC. For example, Plaintiff's FAC concludes that Plaintiff "received at least three telemarketing calls promoting Pure Energy's services in June 2025" on his purported "residential" cell phone number, which he claims "has been listed on the National Do Not

---

[2] *See Scott v. Close,* 2021 WL 11699255, at *2 (W.D. Pa. Aug. 3, 2021) (discussing a court's authority to strike "sham" pleadings, and holding that "plaintiff's 180º reversal of the allegations of the injury plaintiff suffered at the hands of dismissed defendants … right after plaintiff was advised that those allegations negated the liability of the only remaining defendant is perhaps the textbook example of sham pleading."). This rings true here, as Plaintiff also made a "180º reversal" on his liability theory.

[3] Plaintiff's FAC adds three new defendants: Alonzo Amar, Arash Akhavan, and "Doe Defendant PSG Zone d/b/a PurePSGPA and/or Energy Source Services." Plaintiff purportedly served Akhavan (*see* Dkt. 28), who did not appear (*see* Dkt. 29) and whose only alleged connection to this case is that he *possibly* may be the "Alan" who purportedly called Plaintiff's counsel (*see* Dkt. 23, ¶ 7). Plaintiff dismissed the other two defendants three months after he filed his FAC. *See* Dkts. 31 & 32.

Call Registry for over a year prior to the calls at issue." Dkt. 23, ¶¶ 20-25, 27. Demonstrating the implausibility of his allegations, Plaintiff still seemingly claims that the first two subject calls occurred simultaneously on June 23, 2025 at 4:02 p.m. (which of course is impossible) and originated from someone using the phone number (833) 423-0533. *Id.* ¶ 28. However, he did not answer those calls. *Id.* The third call allegedly occurred on June 24, 2025 at 12:03 p.m. and originated from the same toll-free number. *Id.* ¶ 29. But Plaintiff also did not answer this call. *Id.* And while he claims that he received "at least" three violative calls, there are no others discussed in his FAC.

Later that same day, however, Plaintiff "called back (833) 423-0533 to see who had called him" and spoke with "Tessa." *Id.* ¶¶ 30-31. In other words, this was an ***inbound call made by Plaintiff***. In this regard, Plaintiff concludes that "Tessa" was working for an "illegally and fictitiously named" entity called "Energy Source Services" (*i.e.*, not Pure Energy); and, even though he called her, she purportedly "stated their company was calling and looking to assist all Pennsylvania electric customers to ensure they were getting their benefits applied onto the correct account by getting a competitive electric supplier." *Id.* Notably, Plaintiff does not allege "Tessa" mentioned Pure Energy.

The aforementioned call with "Tessa" apparently dropped, at which time Plaintiff called the same phone number back again. *Id.* ¶ 32. This time, Plaintiff apparently spoke with someone else named "Travis" who also said that he was with an entity called "Energy Source Services" (again, not Pure Energy). *Id.* ¶ 33. On this second inbound call, Plaintiff allegedly "told Travis he had another property in King of Prussia Pennsylvania and provided him with his [current] electric account number." *Id.* ¶ 35. Using this information, "Travis" supposedly "told Plaintiff he would be eligible for a reimbursement of up to $200 from Pure Energy USA every six months." *Id.* ¶ 36. In other words, it was only after Plaintiff ***admittedly lied*** and feigned interest in making a purchase and provided an address (presumably so Travis could look up what energy providers might service his

King of Prussia property) that Pure Energy's name was even mentioned on this second inbound call. Then, after inexplicably agreeing to make a purchase, Plaintiff completed an ill-described "third party verification process" during that second inbound call. *Id.* ¶ 37. On some unspecified later date, Plaintiff then received a contract in the mail that "identified" the "supplier" for the energy services he just purchased for his King of Prussia property as "Pure Energy USA PA, LLC." *Id.* ¶¶ 38, 39. But tellingly, Plaintiff still does not allege that "Tessa" or "Travis" were Pure Energy employees, or that either person confirmed Pure Energy had any involvement in the subject calls, in his FAC.

Further, though Plaintiff still does not allege what his phone's Caller ID displayed at the time of the subject calls, he vaguely avers that his counsel has the ability to query "the Caller ID database of the calling carrier" for the 833 number to show ID information would have been displayed, and that the carrier was "transmitting a placeholder indicating that the call was a toll free call, instead of the caller's name." *Id.* ¶¶ 40-41. Yet, Plaintiff does not connect this "carrier" to Pure Energy at all.

Plaintiff now alleges that, after his original complaint was dismissed, he "undertook an investigation into the source of the calls and the calling operation that generated them, and learned the additional facts" in his FAC. *Id.* ¶ 42. Yet, those "additional facts" are nothing new and on the whole are just as fatally flawed and ripe for dismissal as his prior allegations, if not more so. For example, Plaintiff reframes certain ill-pled allegations discussed above and baldly concludes that: (i) "the subject calls were placed from the telephone number 833-423-0533" and (ii) when he called that number, he "reached representatives using the fictitious name 'Energy Source Services'" who "marketed Pure Energy's alternative electric supply services." *Id.* ¶ 43. Plaintiff was then "transferred into a state-mandated third party verification ('TPV') process, which was administered through the TPV vendor VerbatimTPV" and then later "received a customer contract and confirmation from Pure Energy USA, PA, LLC" for the new services be bought for his King of Prussia property. *Id.* ¶ 44.

The pleading defects in Plaintiff's FAC only get worse from there. For example, Plaintiff alleges that "[a] subpoena to the ***ultimate telephone carrier*** of record for the 833-423-0533 number, Alliance Phones, Inc., revealed that the subscriber of record for that number was Defendant Alonzo Amar." *Id*. ¶ 45 (emphasis added). Yet, just a few paragraphs earlier in his "Caller ID database" query discussion, Plaintiff contradictorily alleges that "***ultimate telephone carrier***" for the 833-423-0533 number used to place the calls is a <u>different</u> entity, "Onvoy/Inteliquent," who he apparently did not subpoena *Id*. ¶ 41 (emphasis added). Both entities cannot possibly be the "ultimate" carrier.

Plaintiff's FAC muddies the proverbial waters even more by concluding that (i) based solely on his subpoena to Alliance, "Defendant Alonzo Amar subscribed to, controlled, and/or operated the telephone number 833-423-0533, which was used to place the subject telemarketing calls" to him, and (ii) that "***Amar and/or his agents and vendors***, ***including possibly Akhavan and PSG Zone***, used that number to market Pure Energy's electric supply services under the fictitious name 'Energy Source Services.'" *Id*. ¶ 46 (emphasis added). In other words, despite being adamant that only Pure Energy called him directly when defending his original complaint, Plaintiff's FAC confirms that Pure Energy did not call him, and now implausibly contends that ***<u>either</u> Amar himself <u>and/or</u> countless unidentified third party "agents and vendors" of Amar's*** (which may "possibly" include the other two new defendants) placed the subject calls. But all this just shows that Plaintiff still does not know who actually called him in this case, even after several months of pleadings stage discovery.

Plaintiff's FAC adds some conclusory (and, frankly, not credible) allegations that his counsel[4] included in a declaration submitted in opposition to Pure Energy's previous motion to dismiss (*see* Dkt. 12-2), about how Mr. Perrong supposedly received a call after this lawsuit was filed from someone named "Alan," who Plaintiff (or rather his counsel) now concludes is "most likely an alias

[4] His counsel is Andrew Perrong, who is a former TCPA litigant turned TCPA plaintiff's counsel.

for Akhavan." Dkt. 23, ¶ 48. Plaintiff colorfully characterizes this call as a "post-suit admission" that "ties Akhavan/'Alan' to the same Pure Energy telemarketing campaign that generated the subject calls" to the extent "Alan" supposedly said he was calling "on behalf of Pure Energy, referenced the presuit demand and this lawsuit," and used the collective term "we" when referring to the subject calls. *Id*. However, Plaintiff does not allege "Alan" is a Pure Energy employee or this call originated from a Pure Energy number. To the contrary, he vaguely concludes the number used for this call "was linked to Defendant Akhavan's ***personal*** cell phone number." *Id*., ¶ 47 (emphasis added).

Lastly, attempting to conjure a TCPA liability theory out of thin air and further contradicting the allegations his original complaint, Plaintiff's FAC confirms that he is no longer asserting a direct TCPA liability claim against Pure Energy. Instead, Plaintiff now concludes that "Pure Energy is vicariously liable [under the TCPA] for the conduct" of the other three named defendants (which he dubs and collectively refers to as the "Energy Source Defendants") "and for the telemarketing calls placed and handled by them, transferred through the TPV process, and routed to generate customers for Pure Energy." *Id.* ¶¶ 54, 59. *See also id.* ¶ 76. In this regard, Plaintiff concludes that "Pure Energy's relationship with the Energy Source Services Defendants contains numerous hallmarks of agency." *Id*. ¶ 61. However, the supposed "hallmarks of agency" that Plaintiff's FAC discusses are entirely conclusory and speculative, and they merely repeat the statutory text, case law, and/or FCC opinions. *See id*. ¶¶ 62-75. In all, Plaintiff is blindly throwing darts at a dartboard, in a desperate attempt to save his woefully deficient complaint from another dismissal. Plaintiff again fails.

**<u>EXTRINSIC EVIDENCE IN SUPPORT OF FACTUAL STANDING CHALLENGE</u>**

Regardless, extrinsic evidence submitted with this Motion tells a much different story than the FAC. In reality, Plaintiff did <u>not</u> receive any calls from or on behalf of Pure Energy. *See* Routhier Decl., ¶¶ 7-15. In fact, the evidence shows, *inter alia*, that Pure Energy purposefully goes to great

lengths to avoid telemarketing issues and has no knowledge of the alleged calls or callers whatsoever. *See id.* Consequently, as a matter of fact, Plaintiff's alleged harm in this case could not possibly be "fair traceable" to Pure Energy's alleged conduct even at the most basic level. And none of the "additional facts" that Plaintiff supposedly obtained during early discovery can or do refute this.

For example, among other things, Pure Energy: (i) does not make any outbound calls to market its services at all and could not have called Plaintiff, (ii) does not permit any third parties who work with Pure Energy to make outbound marketing calls on its behalf to sell its services, and indeed ***contractually prohibits*** any such calls, (iii) does not own, use, or have any connection with the toll-free 833 number allegedly used to call Plaintiff, and (iv) did not authorize or have any involvement in the alleged calls to Plaintiff. *Id*. Instead, as noted above, Pure Energy has adopted a strictly consumer-initiated marketing program, whereby: (i) it works with third-party independent contractors (who are not employees of Pure Energy and are contractually prohibited from making outbound marketing calls on its behalf) to place internet ads on third party websites; and (ii) consumers must make an ***inbound*** call to the contractor (using a number in the internet ad) to inquire about and purchase its services. *Id.* ¶¶ 7-10. Beyond the aforementioned contractual prohibition on outbound marketing calls, however, Pure Energy does not direct or have control over, knowledge of, or involvement in any of the calling activities of any these independent contractors. *Id.* ¶¶ 11, 13.

And lest there be any lingering doubt as to its total lack of involvement in the subject calls, the evidence shows Pure Energy has zero connection to or knowledge of the other named defendants in this litigation, or to any of the other third parties discussed in the FAC. Indeed, Pure Energy is not "Energy Source Services," "PurePSGPA," "PSG Zone," "Pure PSG," or "PSGPA" and does not do business with such entities or under those names *Id*. ¶ 15. Pure Energy is not familiar with Alonzo Amar or Arash Akhavan (or "Alan"); and they are certainly not Pure Energy employees or authorized

to speak on its behalf. *Id*. In fact, none of Pure Energy's employees called Plaintiff or his counsel at any point, nor did Pure Energy or its employees authorize any third parties to make such an outreach, by "Alan" or any other person, and Pure Energy was not even aware of this purported "Alan" call until Plaintiff filed his opposition to its original motion to dismiss. *Id*. ¶ 14..

## APPLICABLE LEGAL STANDARDS

**Fed. R. Civ. P. 12(b)(1):** Rule 12(b)(1) mandates dismissal of a complaint for lack of federal subject matter jurisdiction where, as here, a federal plaintiff fails to establish his or her standing under Article III of the U.S. Constitution. *See, e.g., Ballentine v. U.S.*, 486 F.3d 806, 810 (3d Cir. 2007). To show Article III standing and avoid dismissal under Rule 12(b)(1), Plaintiff bears the sole burden of demonstrating that: (1) he suffered a concrete and particularized "injury in fact," (2) there is a causal connection between the injury and the alleged unlawful conduct complained of (*a.k.a*. "causation" or "traceability"), and (3) the injury is capable of being redressed via a favorable decision (*a.k.a*. "redressability"). *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). The second element requires that the alleged "injury in fact" be "fairly traceable" only to the defendant's conduct, not to anyone else's. *Lexmark Int'l, Inc. v. Static Control Components, Inc*., 572 U.S. 118, 125 (2014). To meet the "traceability" requirement, a plaintiff must show there was a "substantial likelihood" that the defendant's conduct caused the alleged harm. *Public Int. Research of NJ v. Powell Duffryn*, 913 F. 2d 64, 72 (3rd. Cir. 1990).

Further, a defendant can raise either a "facial" or a "factual" challenge to a plaintiff's standing under Rule 12(b)(1). *Baccari*, 2022 WL 3213839, at *2 (citations omitted). A factual standing challenge, as Pure Energy makes here, "concerns the actual failure of a plaintiff's claims to comport factually with the jurisdictional prerequisites." *CNA v. U.S.,* 535 F.3d 132, 139 (3d Cir. 2008) (cleaned up). Put differently, a factual standing challenge like Pure Energy's argues "that there is no

subject matter jurisdiction because the facts of the case . . . do not support the asserted jurisdiction." *Constitution Party of Pennsylvania v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014). In evaluating a factual challenge under Rule 12(b)(1), therefore, "evidence outside of the pleadings may [properly] be weighed and considered" without converting the motion to dismiss into a Rule 56 motion for summary judgment, and "'no presumptive truthfulness attaches' to the facts pled in the complaint." *Baccari*, 2022 WL 3213839, at *2 (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). *See also Harris v. Kellogg Brown & Root Servs., Inc.*, 724 F.3d 458, 464 (3d Cir. 2013) (on a factual standing challenge, the court "is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case"); *Hum. Genome Scis.,* 589 F. Supp. 2d at 518 (same).

**Fed. R. Civ. P. 12(b)(6):** A complaint may be dismissed under Rule 12(b)(6) where a plaintiff fails to plead a cognizable legal theory or to sufficiently plead facts supporting one. *See, e.g., Bonner v. Justia Inc.*, 2019 WL 3892858, at *3 (D.N.J. Aug. 19, 2019) (citation omitted). As to the latter, a "bare assertion" or "conclusory allegation[s]" cannot avoid a dismissal. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007). A "formulaic recitation of the elements" of a claim also fails to meet the requisite pleading standard. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). And while this Court must generally accept well-pled facts as true under Rule 12(b)(6), it need not do so for conclusory allegations, unwarranted or unreasonable inferences, and legal conclusions; nor must the Court strain to find inferences in Plaintiff's favor. *See, e.g., Curay-Cramer v. Ursuline Acad. of Wilmington, Delaware, Inc.*, 450 F.3d 130, 133 (3d Cir. 2006); *Bridges v. Torres*, 809 F.App'x 69, 71 (3d Cir. 2020); *Santiago v. Warminster Township,* 629 F.3d 121, 128 (3d. Cir. 2010); *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir. 1997); *Cornell Univ. v. Illumina, Inc.*, 2012 WL 1885129, at *5 (D. Del. May 23, 2012), *report and rec. adopted,* 2012 WL 2564888 (June 29, 2012) (citing *Redden v. Smith & Nephew, Inc.*, 2010 WL 2944598, at *3 (N.D. Tex. July 26, 2010)).

Additionally, "[t]he principle that a court may look to prior pleadings in determining the plausibility of an amended complaint [under Rule 12(b)(6)] is well established." *Royal Primo Corp. v. Whitewater W. Indus., Ltd,* 2016 WL 1718196, at *3 (N.D. Cal. Apr. 29, 2016). Along those lines, courts in this Circuit and elsewhere have recognized that "a trial judge has the authority to strike pleadings that are 'false and sham'"—*i.e.,* where the allegations of an amended pleading directly contradict the plaintiff's original allegations, solely in an effort to avoid a dismissal. *Scott,* 2021 WL 11699255, at *2 (citing *Bradley v. Chiron Corp.,* 136 F.3d 1317, 1324–25 (Fed. Cir. 1998)).

Put differently, where, as here, "a 'plaintiff blatantly changes his statement of the facts in order to respond to the defendant['s] motion to dismiss"—or, in this instance, after a dismissal order—and "directly contradicts the facts set forth in his original complaint,' a court is authorized 'to accept the facts described in the original complaint as true" and disregard the new allegations, and even "has discretion to strike new or changed allegations as 'false and sham.'" *Pelfrey v. Mahaffy*, 2018 WL 3110794, at *5 (S.D. Fla. Feb. 2, 2018) (quoting *Wallace v. New York City Dep't of Corr.,* 1996 WL 586797, at *2 (E.D.N.Y. Oct. 9, 1996)). *See also Mickel Drilling Partners ex rel. Mickel v. Cabot Oil & Gas Corp*., 2012 WL 4953081, at *5-8 (M.D. Pa. Oct. 16, 2012) (discussing and applying the "sham pleading" rule and refusing to accept as true contradictory allegations in an amended complaint) (citing various cases); *Forney v. Hair Club for Men Ltd., Inc*., 2017 WL 4685549, at *2 (C.D. Cal. June 26, 2017) (applying the "sham pleading" rule in a TCPA case, dismissing with prejudice where the new allegations contradicted the original allegations); *Bocker v. Hartzell Engine Techs., LLC,* 2023 WL 415792, at *4 & n.11 (D. Del. Jan. 26, 2023) ("Where a plaintiff's own pleading is internally inconsistent and contradictory, the court is not obligated to reconcile or accept such contradictory allegations" as true under Rule 12(b)(6).) (collecting cases).

**ARGUMENT**

As the FCC noted, the TCPA "has strayed far from its original purpose" as a beneficial remedial statute and has "become the poster child for lawsuit abuse" ever since its enactment. *In re Rules & Regs. Implementing the TCPA*, 30 FCC Rcd. 7961, 8073 (2015). Given this high potential for abuse by profit-seeking plaintiffs and their counsel, therefore, federal district courts across the country (particularly in this Circuit) have strictly held TCPA plaintiffs to applicable federal pleadings standards. Here, Plaintiff again fails to satisfy those standards and, more fundamentally, still simply lacks Article III standing as a factual matter to assert his TCPA claims against Pure Energy.

## I. THE ENTIRE FAC SHOULD BE DISMISSED UNDER RULE 12(b)(1) FOR LACK OF SUBJECT MATTER JURISDICTION BECAUSE EXTRINSIC EVIDENCE SHOWS THAT PLAINTIFF LACKS ARTICLE III STANDING.

As a threshold factual issue, the entire FAC must be dismissed under Rule 12(b)(1) because Plaintiff lacks Article III standing (and therefore this Court lacks federal subject matter jurisdiction to hear his claims), as extrinsic evidence submitted herewith shows that Plaintiff did not suffer any "injury in fact" that is "fairly traceable" to Pure Energy, as required. *See Lexmark*, 572 U.S. at 125.

The *Baccari* case cited above is highly instructive on this point. There, the plaintiff filed a TCPA complaint claiming a third-party made certain phone calls on behalf of the defendant. Like in the present case, those claims were supported by a variety of purely conclusory allegations. *See* 2022 WL 3213839, at *3. The defendant asserted an Article III factual standing challenge under Rule 12(b)(1) and submitted extrinsic evidence, including a sworn declaration from a corporate officer, "directly contradicting the bases for [plaintiff's] standing." *Id*. This evidence showed that the defendant had no connection to the alleged calls. In fact, similar to Pure Energy here, the defendant in *Baccari* "contractually prohibited" the alleged third-party caller "from engaging in any form of telemarketing to market [the defendant's] products," thereby "break[ing] the factual link" between the defendant and the plaintiff's alleged harm, as Chief Judge Beetlestone held. *Id*. Thus, given the

unrebutted evidence of the plaintiff's lack of standing, Chief Judge Beetlestone dismissed the *Baccari* complaint under Rule 12(b)(1) for lack of federal subject matter jurisdiction. *Id*.

*Baccari* does not stand alone on this point, and many other courts in this Circuit and nationally have dismissed TCPA cases in response to factual standing challenges under Rule 12(b)(1) where, as here, evidence showed that the plaintiff lacked an injury fairly traceable to the defendant. *See, e.g., Winner v. Kohl's Dept. Stores, Inc.,* 2017 WL 3535038, at *7-8 (E.D. Pa. Aug. 17, 2017); *Goodell v. BH Auto., LLC*, 2023 WL 2691452, at *6 (D. Ariz. Mar. 29, 2023); *Stewart v. Network Cap. Funding Corp*., 549 F. Supp. 3d 1058, 1059 (C.D. Cal. 2021); *Hall v. Xanadu Mktg., Inc.,* 682 F. Supp. 3d 1278, 1285-1286 (N.D. Ga. 2023); *St. Louis Heart Ctr., Inc. v. Nomax, Inc.,* 899 F.3d 500, 504 (8th Cir. 2018), *cert. denied,* 139 S. Ct. 1198 (2019). This Court should join them.

In this case, extrinsic evidence similarly shows that Pure Energy had no connection with the subject calls—and it likewise contractually prohibits third parties from engaging telemarketing on its behalf—and, therefore, that Plaintiff did not suffer an injury-in-fact that is fairly traceable to Pure Energy. *See* Routhier Decl., ¶¶ 7-15. To the contrary, Pure Energy did <u>not</u> call Plaintiff, did <u>not</u> know of or participate in any such calls, did <u>not</u> authorize (and indeed contractually forbade) any third parties to make any outbound marketing calls to Plaintiff or anyone else, and has <u>zero</u> connection with the caller's phone number (which, if called, does not reach Pure Energy in any event). *Id*.

Additionally, Pure Energy's marketing program is strictly (and quite purposefully) consumer initiated, where the consumer must initiate the sale process by making an inbound call to the contractor before there is any sale of its services, and Pure Energy has no involvement in this process or control over the calling activities of its contractors. *Id*. ¶¶ 7-10. Moreover, Pure Energy also has no known connection with the other defendants or entities referenced in the FAC. *Id*. ¶¶ 14-15. In sum, this evidence shows Plaintiff did not suffer any injury here, as he simply did not receive <u>any</u>

call from or made on behalf of Pure Energy, let alone receive a call fairly traceable to Pure Energy sufficient for Article III standing to bring a TCPA claim. Put differently, and quite aptly, by Judge Beetlestone in *Baccari*, this evidence firmly "break[s] the factual link" between Pure Energy and Plaintiff's alleged harm in this case, and thus confirms he lacks standing. 2022 WL 3213839, at *3.

Plaintiff's own pled allegations, as conclusory and facially-deficient as they may be, help destroy this link even further. For example, though he dubiously claims to have received three inbound calls from the same 833 number—two of which somehow occurred at the exact same time—Plaintiff readily admits that he did not answer any of these calls, and he does not connect the number used to Pure Energy at all in his FAC. *See* Dkt. 23, ¶¶ 18-41. Plaintiff also admits that he initiated two ***inbound*** calls to that 833 number, which he now claims is owned and/or used by one of the new but since-dismissed defendants (Amar), reached a ***third party*** ("Energy Source Services"), and that he voluntarily (albeit inexplicably) made a purchase and completed a verification process on the second inbound call, where Pure Energy's services were mentioned in connection with a second property raised by Plaintiff. *Id*. ¶¶ 6, 37-37, 54.[5] Yet, Plaintiff does <u>not</u> allege that (i) he ever spoke to someone from Pure Energy (such as a Pure Energy employees) at any point for any call inbound or outbound, (ii) anyone to whom he allegedly spoke identified Pure Energy as having placed the three subject calls to him or confirmed they were placed on behalf of Pure Energy, or (iii) he was solicited to purchase only Pure Energy's services specifically during these inbound calls.

In fact, it was not until the second inbound call he made to the third party caller (*i.e.*, Energy Source Services)—where Plaintiff ***lied*** and falsely expressed interest in receiving a rebate about a ***different*** property—that Pure Energy's name was even mentioned. *Id.* ¶¶ 35-36. Assuming *arguendo*

[5] Of course, inbound calls by Plaintiff do not violate the TCPA. Only the three alleged outbound calls to his cell phone (if they even occurred, which is not conceded) could result in a violation. But, again, Pure Energy contractually prohibits third parties from engaging in any form of outbound telemarketing to market its services and only permits them to receive inbound calls from consumers.

that the same third party made all three calls at issue to Plaintiff's cell phone, the bottom line (per the irrefutable evidence submitted here) is that ***Pure Energy did not cause, have anything to do with, authorize, or even know about the three calls he allegedly received***. *See* Routhier Decl., ¶¶ 7-15. None of the nearly eight months of pleadings stage discovery conducted by Plaintiff can rebut this. In all, therefore, Plaintiff's alleged harm (if any) from the subject calls is not traceable to any conduct by Pure Energy. *See Lujan*, 504 U.S. at 560-61 (an injury not fairly traceable to the defendant for Article III standing if it is "'th[e] result [of] the ***independent action of some third party*** not before the court'") (emphasis added) (quoting *Simon v. Eastern Ky. Welfare Rights Org*., 426 U.S. 26, 41–42 (1976)). Consequently, Plaintiff lacks Article III standing as a factual matter, which deprives this Court of federal subject matter jurisdiction and mandates a dismissal under Rule 12(b)(1).

## II. IN THE ALTERNATIVE, THE ENTIRE FAC SHOULD BE DISMISSED UNDER RULE 12(b)(6) FOR FAILURE TO STATE A CLAIM FOR RELIEF.

Beyond his obvious lack of standing, which alone is fatal to his claims against Pure Energy, Plaintiff's entire FAC is also subject to dismissal on its face under Rule 12(b)(6) for failure to state a plausible claim. In Count I (*see* ¶¶ 90-94), Plaintiff invokes the TCPA's "Do Not Call" ("DNC") rules which, in pertinent part, prohibit "initiat[ing]" more than one "telephone solicitation" call "by or on behalf of the same entity" in a 12-month period to a "residential telephone subscriber who has registered his or her telephone number" on the National DNC Registry. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2). In Count II (*see* ¶¶ 96-100), Plaintiff invokes 47 C.F.R. § 64.1601(e), which contains technical regulations relating to Caller ID requirements. As demonstrated below, however, Plaintiff fails to plausibly allege such claims with sufficient supporting facts in several key ways.

### A. Plaintiff Fails to Plausibly Plead a Theory of Liability Against Pure Energy.

It is well accepted that there are two potential theories of TCPA liability that must be adequately plead in all cases to avoid dismissal under Rule 12(b)(6): direct liability and vicarious

liability. *See, e.g., Smith v. Vision Solar LLC*, 2020 WL 5632653, at *3 (E.D. Pa. Sept. 21, 2020) (**Baylson, J**.) (citing *Aaronson v. CHW Grp., Inc.,* 2019 WL 8953349, at *2 (E.D. Va. Apr. 15, 2019)); *Smith v. Direct Building Supplies, LLC*, 2021 WL 4623275, at *3 (E.D. Pa. Oct. 7, 2021); *Doyle v. GoHealth, LLC*, 2023 WL 3984951, at *4–6 (D.N.J. Mar. 30, 2023); *Doyle v. Matrix Warranty Sols., Inc.,* 2023 WL 4188313, at *4 (D.N.J. June 26, 2023); *Landy v. Nat. Power Sources, LLC,* 2021 WL 3634162, at *3 (D.N.J. Aug. 17, 2021). As one court summarized this rule, "for a person to 'make' [or 'initiate'] a call under the TCPA [and thus be subject to any TCPA liability], the person must either (1) directly make the call, or (2) have [a common law] agency relationship with the person who made the call." *Pascal v. Agentra, LLC*, 2019 WL 5212961, at *2 (N.D. Cal. Oct. 16, 2019) (citation omitted). Failure to adequately plead these theories warrants dismissal of <u>any</u> TCPA claim under Rule 12(b)(6), regardless of whether facts supporting other essential elements of the claim were pled. *See, e.g., Nelums v. Mandu Wellness, LLC*, 2023 WL 5607594, at *9 (D.N.M. Aug. 30, 2023) ("Because Plaintiff fails to satisfy the first elements of the TCPA and [an equivalent state statute]—that Defendants were directly or vicariously liable for the [subject] text messages—the Court does not reach Defendants' arguments regarding whether Plaintiff adequately plead the other elements" of the asserted claims.). In this case, Plaintiff's FAC fails to plausibly allege either theory.

**1. Plaintiff Does Not Assert a Direct TCPA Liability Theory for Pure Energy.**

As to the former theory, direct TCPA liability applies <u>only</u> to persons or entities that "initiate" or "make" telemarketing calls directly to the plaintiff, which means to actually "***physically place***" the calls at issue directly to the plaintiff. *Sheski v. Shopify (USA) Inc.*, 2020 WL 2474421, at *2 (N.D. Cal. May 13, 2020) (citing *In re Dish Network, LLC*, 2013 WL 1934349, 28 FCC Rcd. 6574, 6583 ¶ 26 (2013). *Accord Direct Building Supplies*, 2021 WL 4623275, at *3 (citing, *inter alia*, *Aaronson*); *Vision Solar*, 2020 WL 5632653, at *3 (same); *Klein v. Just Energy Grp., Inc.*, 2016 WL 3539137,

at *8 (W.D. Pa. June 29, 2016) (citation omitted). Consistent with *Iqbal*/*Twombly*, however, bald conclusions that the defendant "made" or "initiated" the subject call are insufficient to plead this. *See Rogers v. Assurance IQ, LLC,* 2023 WL 2646468, at *5 (W.D. Wash. Mar. 27, 2023) (dismissing DNC claim against one defendant on this basis where the "[p]laintiffs ha[d] not pleaded any ***facts*** supporting their inference that [said defendant] physically dialed the calls to four of the individual plaintiffs" (emphasis in original)). Rather, as Judge Schiller aptly summarized, "'[a]t the pleadings stage, plaintiff must allege facts to support his conclusion or belief that defendant is the party that [physically] made the calls to plaintiff's cellular phone.'" *Direct Building Supplies,* 2021 WL 4623275, at *3 (quoting *Scruggs v. CHW Grp., Inc.,* 2020 WL 9348208, at *10 (E.D. Va. Nov. 12, 2020)). And of course, there must be a "direct connection between a person or entity and the making of a call" for <u>direct</u> TCPA liability to attach. *In re Dish Network, LLC*, 28 FCC Rcd. at 6583 ¶ 26. An alleged <u>indirect</u> connection to a call made by a third party, therefore, will not suffice for this purpose. *See Rogers v. Interstate Nat'l Dealer Servs. Inc.*, 2020 WL 4582689, at *3 (N.D. Ohio Aug. 10, 2020) (calls "on behalf" of defendant do not support direct TCPA liability); *Metzler v. Pure Energy USA LLC*, 2023 WL 1779631, at *5-6 (S.D.N.Y. Feb. 6, 2023) (dismissing similar TCPA complaint against Pure Energy in another case brought by a different plaintiff on this basis, holding that all TCPA plaintiffs must "allege facts from which the Court can plausibly infer that [d]efendant has direct liability, even if it is also plausible that a third party made the call" to avoid dismissal).

Here, despite adamantly arguing to the contrary in connection with his original Complaint, which merely underscores how his FAC is nothing more than a "sham" pleading that should simply be rejected on its face, Plaintiff now concedes that Pure Energy did <u>not</u> physically call him and confirms that he is <u>not</u> asserting a direct TCPA liability theory against Pure Energy. *See* Dkt. 23, ¶¶ 6, 54. *But see id.,* ¶ 70 (asserting "Pure Energy ***directly*** and/or vicariously liable") (emphasis added).

If Plaintiff is attempting to asset a direct TCPA liability theory against Pure Energy, he failed. Nothing in the FAC suggests Pure Energy itself physically placed any of the subject calls to him, which is the established standard for direct TCPA liability as shown above. To the contrary, Plaintiff expressly alleges (albeit in a wholly conclusory fashion) another defendant and/or countless unidentified "agents" physically placed them. *See id.* ¶ 46. As a matter of law, therefore, he has not pled a direct TCPA liability theory against Pure Energy. *See Direct Building Supplies, supra*.

**2. Plaintiff Does Not Plausbly Allege a Vicarious Liability Theory Under the TCPA Against Pure Energy.**

As shown below, Plaintiff's new vicarious TCPA liability theories as to Pure Energy (*see id.* ¶¶ 61-75) fare no better and cannot survive dismissal under Rule 12(b)(6) for several reasons.

In the TCPA or in any context, vicarious liability cannot be casually pled; rather, courts uniformly require plaintiffs to meet a certain pleading threshold before dragging an innocent party like Pure Energy into litigation over the conduct of another. *See, e.g., Zarichny v. Complete Payment Recovery Servs., Inc.*, 80 F. Supp. 3d 610, 619 (E.D. Pa. 2015) (dismissing where plaintiff did not plead any allegations that could plausibly support her vicarious TCPA liability theories). To meet this threshold here, Plaintiff's FAC must plead "sufficient facts to allow the Court to 'draw the reasonable inference' that [Pure Energy] is vicariously liable for the telemarketing call[s] Plaintiff [allegedly] received." *Doyle v. GoHealth,* 2023 WL 3984951, at *5 (citing *Iqbal*, 556 U.S. at 678).

Along those lines, courts in this Circuit and elsewhere have widely held that "[v]icarious liability under the TCPA may be established under a broad range of [common law] agency theories, including formal [*i.e.,* actual] agency, apparent authority and ratification" and that "[t]he relationship between the parties is paramount in determining whether there is vicarious liability." *Klein*, 2016 WL 3539137, at *9 (internal citations omitted); *see also Doyle v. GoHealth,* 2023 WL 3984951, at

*4 (ruling similarly); *Doyle v. Matrix Warranty Sols., Inc.*, 2023 WL 4188313, at *4 (same).[6] Under any theory of vicarious TCPA liability, therefore, "a plaintiff must plead enough facts to establish that the asserted agency relationship existed." *Kline v. Elite Med. Labs., Inc.*, 2019 WL 6828590, at *6 (M.D. Pa. Dec. 13, 2019) (dismissing on this basis). And "[t]hough 'the precise details of the agency relationship need not be pleaded to survive a motion to dismiss," plausible facts meeting the *Iqbal*/*Twombly* standard "must be offered to support a reasonable inference that an agency relationship existed.'" *Meeks v. Buffalo Wild Wings, Inc.*, 2018 WL 1524067, at *5 (N.D. Cal. Mar. 28, 2018) (dismissing TCPA claim on this basis); *see also Bank v. Vivint Solar, Inc.,* 2019 WL 2280731, at *4 (E.D.N.Y. Feb. 25, 2019), *report and rec. adopted,* 2019 WL 1306064 (Mar. 22, 2019) (dismissing and holding: "The existence of ***some*** connections between the defendant and the maker of the call will not suffice" for vicarious TCPA liability purposes.) (emphasis original).

As such, a dismissal is warranted under Rule 12(b)(6) in TCPA cases, like this one, where such agency allegations are lacking. *See*, *e.g.*, *Zarichny*, 80 F. Supp. 3d at 619 (dismissing where plaintiff did not plead facts that could plausibly support her vicarious TCPA liability theories); *Doyle v. Matrix*, 2023 WL 4188313, at *4 (ruling similarly); *Kline*, 2019 WL 6828590, at *6 (dismissing TCPA claim where "there [was] no allegation that [defendant] directed the callers to call Plaintiff on his behalf, or that [defendant] caused the callers to reasonably believe that they had the authority to call Plaintiff on [defendant's] behalf"); *Bank*, 2019 WL 1306064, at *4 (dismissing for failure to allege "any non-conclusory allegations with respect to Defendant's alleged agency relationship or Defendant's alleged control over its purported agent"); *Fabricant v. Elavon, Inc.*, 2020 WL 11884505, at *4 (C.D. Cal. Aug. 25, 2020) (dismissing TCPA claim on this basis where agency "allegations [we]re not supported by facts that show[ed] 'how [the defendant] did those things or

---

[6] Courts will sometimes refer to "formal" agency as "actual agency" and/or "actual authority."

how it knew those things'") (quoting *Naiman v. TranzVia LLC*, 2017 WL 5992123, at *6 (N.D. Cal. Dec. 4, 2017)). Such is true here, as Plaintiff does not plausibly allege any vicarious liability theory.

a. *The FAC Fails to Plausibly Allege Actual Agency/Authority.*

"An [actual] agency relationship is created when one party consents to have another act on its behalf, with the principal controlling and directing the acts of the agent." *Kline*, 2019 WL 6828590, at *5 (citing *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 120 (3d Cir. 2013)).[7] Generally, actual agency requires "allegations [which] establish that the defendant consented to or directed the agent to act on its behalf." *Landy*, 2021 WL 3634162, at *3. In the context of the TCPA, however, the party alleging actual authority/agency must do "more than establish an agency relationship. They must also establish actual authority ***to place the unlawful calls***" at issue. *Jones v. Royal Admin. Servs., Inc.*, 887 F.3d 443, 449 (9th Cir. 2018) (emphasis added). *See also Linlor v. Five9, Inc.*, 2017 WL 5885671, at *3 (S.D. Cal. Nov. 29, 2017) (dismissing TCPA case on this basis, holding actual agency requires "more than mere passive permission; it involves request, instruction, or command"). And while the touchstone of common law agency is "control," general control over an agent is not enough to allege vicarious liability in a TCPA case.

Instead, to plausibly allege a vicarious TCPA liability theory here and avoid a dismissal under Rule 12(b)(6), Plaintiff must plead sufficient non-conclusory facts satisfying the *Iqbal*/*Twombly* standard and supporting a plausible inference that Pure Energy had control over the "manner and means" of the telephone solicitation campaign that was conducted by the caller—*i.e.,* the specific steps of how and when the calls were made, the content and recipients, the equipment used, etc. *See, e.g., Jones,* 887 F.3d at 450; *Doyle v. Matrix*, 2023 WL 4188313, at *4; *Cunningham v. Daybreak Solar Power, LLC,* 2023 WL 3985245, at *3 (N.D. Tex. June 13, 2023); *In re: Monitronics Int'l,*

[7] Courts will sometimes refer to "formal" agency as "actual agency" and/or "actual authority."

*Inc., Tel. Consumer Prot. Act Litig.*, 223 F. Supp. 3d 514, 520 (N.D.W. Va. 2016), *aff'd sub nom. Hodgin v. UTC Fire & Sec. Americas Corp.*, 885 F.3d 243 (4th Cir. 2018); *Rogers v. Assurance IQ, LLC,* 2023 WL 2646468, at *6 (citing *Fabricant*, 2020 WL 11884505, at *4) (each dismissing TCPA claims on this basis where complaint lacked such requisite factual details).

Consistent with federal pleading standards, however, a "plaintiff 'cannot simply allege general control in a vacuum'" and sufficiently plead actual agency. *Aaronson v. CHW Grp., Inc.,* 2019 WL 8953349, at *3 (E.D. Va. Apr. 15, 2019) (quoting *Melito v. Am. Eagle Outfitters, Inc.*, 2015 WL 7736547, at *6 (S.D.N.Y. Nov. 30, 2015)). Thus, failure to adequately allege facts suggestive of such specific control warrants dismissal of a TCPA case on vicarious liability grounds, as myriad federal courts have found. *See, e.g., Cunningham, Doyle v. Matrix,* and *Rogers*, *supra*. *See also Meeks*, 2018 WL 1524067, at *6 (dismissing where complaint lacked facts suggesting defendant controlled "whether, when, and to whom to send the text messages, along with their content"); *Rogers v. Postmates Inc.*, 2020 WL 3869191, at *8 (N.D. Cal. July 9, 2020) (dismissing where plaintiff failed "to allege that [defendant] had some degree of control over who sent the text and the manner and means by which it was sent"); *Landy*, 2021 WL 3634162, at *4 (dismissing on this basis where plaintiff's allegations were insufficient to support an inference the defendant "authorized the initial caller, directed them, or was aware of their conduct"); *Bank*, 2019 WL 1306064, at *4 (dismissing where plaintiff did not allege defendant "had the power to give 'interim instructions' to [the agent], or any non-conclusory suggestion of 'direction' or 'control' by [the defendant] of [the agent]") (quoting *Jackson v. Caribbean Cruise Line, Inc.,* 88 F. Supp. 3d 129, 139 (E.D.N.Y. 2015)).

As applied here, Plaintiff's FAC does not plausibly allege an actual agency theory. In fact, the FAC does not even plausibly allege who plaintiff contends actually made the subject calls, let alone identify the party that he contends had any agency relationship with Pure Energy with respect

to the subject calls. To the contrary, as noted above, Plaintiff's new theory of liability against Pure Energy in his FAC is that "Pure Energy is vicariously liable for the conduct" of the other three named defendants (two of which have been dismissed) "and for the telemarketing calls placed and handled by them, transferred through the TPV process, and routed to generate customers for Pure Energy, including Plaintiff." Dkt. 23, ¶ 59. At the same time, Plaintiff conclusorily alleges elsewhere in his FAC that the since-dismissed "Defendant Alonzo Amar ***subscribed to, controlled, and/or operated the*** telephone number 833-423-0533, which was used to place the subject telemarketing calls" to him, and (ii) that "***Amar and/or his agents and vendors, including possibly*** [the other two defendants] Akhavan and PSG Zone, used that number to market Pure Energy's electric supply services under the fictitious name 'Energy Source Services.'" *Id*. ¶ 46 (emphasis added).[8]

In other words, according to Plaintiff, the party or parties that actually made the subject calls and conducted the subject call campaign—and thus could theoretically be the relevant "agent" for purposes of Pure Energy's potential vicarious TCPA liability—***could be any number of unidentified third parties***, and not just the three named defendants. This Court cannot reasonably infer any agency relationship between Pure Energy and the callers based on this morass of pure speculation. *See, e.g., Wilson v. MEDVIDI Inc.,* 2025 WL 2856295, at *4 (N.D. Cal. Oct. 7, 2025) ("[W]hile alleging that 'Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf violated the TCPA,' [] the complaint fails to allege any agency relationship or identify any third parties that could have sent the text messages. Such 'unadorned labels' are insufficient as a matter of law to allege any agency relationship.") (citing *Armstrong v. Investor's Bus. Daily, Inc*., 2018 WL 6787049, at *1 (C.D. Cal. Dec. 21, 2018)) (internal citation omitted); *Cosenza v. Nice North*

[8] Plaintiff's FAC further baldly contends that Akhavan supposedly has "previously been identified in federal litigation as an agent or representative involved in energy service telemarketing operations, making it plausible that [he] was involved in the telemarketing operation at issue here." *Id.,* ¶ 49. This is rank unsupported speculation, and should be rejected as out of hand.

*America, LLC*, 2026 WL 2248829, at *3, 5 (C.D. Ill. Aug. 4, 2026) (dismissing similar complaint brought by some of the same counsel representing Plaintiff on direct and vicarious liability grounds under Rule 12(b)(6), holding that the "Plaintiff's either/or theory of liability"—*i.e.*, that "Defendant and/or its agents transmitted unwanted telephone calls to Plaintiff"— "asks the Court to blur the line between" the accepted standards for pleading direct and vicarious TCPA liability theories by "erasing the very distinction between seller and telemarketer" provided in the statute).

Beyond that, the only relevant allegations of "control" in the FAC are entirely conclusory and speculative, and do not meet the bedrock *Iqbal*/*Twombly* pleading standard. *See, e.g.,* Dkt. 23, ¶ 65 ("Pure Energy supplied (though its own account) and controlled (by setting up the necessary login credentials for the Energy Source Services Defendants) the mandatory TPV and verification function through which every sale, including Plaintiff's, had to pass. Without Pure Energy's TPV process and acceptance, by operation of Pennsylvania law, the sale could not be completed, giving Pure Energy control over the sequence and compliance framework of the enrollment for each customer, up to and including Plaintiff."); ¶ 66 ("The 'CSD 02' designation reflected in Plaintiff's completed TPV record ties Plaintiff's sale to the Energy Source Services Defendants that were authorized to submit enrollments into Pure Energy's TPV system, further evidencing that Energy Source Services Defendants operated within, and under the control of, a scheme administered for the benefit of Pure Energy."). However, such plainly deficient allegations are not entitled to any presumption of truth under *Iqbal*/*Twombly*, and they provide no basis for this Court to infer actual agency between Pure Energy and the callers, either. *See also Childress v. Liberty Mut. Ins. Co.*, 2018 WL 4684209, at *3 (D.N.M. Sept. 28, 2018) (dismissing TCPA claim on this basis where only alleged "link" between caller and defendant was the call was transferred to "[d]efendant's in-house telemarketer," holding

plaintiff did "not establish that [d]efendant exerted control over the initiator of the call, supervised or controlled the initial call, or maintained any sort of relationship with the initiator of the call").

And even then, these allegations do not remotely suggest that Pure Energy had any modicum of "control" over the specific "manner and means" of the call campaign that was conducted by any of countless number of third party Plaintiff apparently contends called him—which, again, is the well-accepted touchstone of actual agency in the TCPA context and must be adequately pled here to avoid dismissal on this basis. *See, e.g., Doyle v. Matrix*, 2023 WL 4188313, at *4 (finding vicarious liability inadequately pled where complaint did not "describe any communications between [the identified third party caller] and the Defendant, or any contract between them. And, more generally, the Amended Complaint does not describe any control of [the identified third party] by the Defendant. Such control is the key touchstone of actual authority."). Indeed, there is <u>nothing</u> in the FAC supporting an inference Pure Energy had control over the subject calls or the manner and means by which they were made, such as who to call, when to call, how to make them, or the call content. There is also <u>nothing</u> supporting an inference Pure Energy authorized the callers to make the calls, directed them, had the power to give them interim instructions, or was even aware of their conduct. In short, there are <u>zero</u> relevant "hallmarks of agency" pled, despite what Plaintiff concludes.

That one person with whom Plaintiff allegedly spoke (albeit on an inbound call he made about a different property) mentioned Pure Energy or its services, or that Plaintiff allegedly received a Pure Energy contract by mail at some point after that call, is of no moment here. *See, e.g., Landy*, 2021 WL 3634162, at *4 ("[a]n entity cannot be held [vicariously] liable under the TCPA 'merely because they stand to benefit from the call'") (quoting *Just Energy*, 2016 WL 3539137, at *8); *Hamilton v. El-Moussa*, 2020 WL 2614625, at *2 (C.D. Cal. Feb. 10, 2020) (email from defendant received after call alone deemed insufficient to plausibly allege direct <u>or</u> vicarious TCPA liability);

*Cunningham v. Health Plan Intermediaries Holdings, LLC,* 2018 WL 835222, at *6 (N.D. Ill. Feb. 13, 2018) (rejecting an argument that third party telemarketers had apparent authority for vicarious TCPA liability purposes "simply because they mentioned Defendants' products on their calls…"); *Hale v. Teledoc Health, Inc.*, 2021 WL 1163925, at *4 (S.D.N.Y. Mar. 25, 2021) ("[T]he inclusion of Teledoc's services in HII's insurance bundle, alone, is insufficient to permit even a circumstantial inference that HII called plaintiffs at Teledoc's direction or subject to Teledoc's control. Plaintiffs' conclusory allegations to the contrary are insufficient to 'nudge' plaintiffs' claims from conceivable to plausible."). As such, Plaintiff's FAC fails to plead "actual authority."

b. *The FAC Fails to Plausibly Allege Apparent Authority.*

"Apparent authority arises in those situations where the ***principal*** causes persons with whom the agent deals to reasonably believe that the agent has authority despite the absence of an actual agency relationship." *Kline*, 2019 WL 6828590, at *5 (emphasis added); *Landy*, 2021 WL 3634162, at *4 (apparent authority must be "traced to the principal's own manifestations"). This requires Plaintiff to plausibly allege "(1) the appearance of authority has been created by the conduct of the alleged principal and not solely by the conduct of the putative agent; (2) a third party has relied on the agent's apparent authority to act for a principal; and (3) the reliance was reasonable under the circumstances." *Capriglione v. Radisson Hotels Int'l, Inc.*, 2011 WL 4736310, at *4 (D.N.J. Oct. 5, 2011). Critically, though, "the essential element of reliance must be present before apparent authority can be found." *Michalak v. ServPro Indus., Inc.*, 2018 WL 3122327, at *6 (D.N.J. June 26, 2018).

Moreover, courts in this Circuit have held that the essential "reliance" element for apparent authority requires demonstrating that the plaintiff, "relying on such appearance of authority, ***has changed his position and will be injured or suffer loss if the act done or transaction executed by the agent does not bind the principal***." *Indagro v. Nilva*, 2016 WL 3574330, at *8 (D.N.J. June 30, 2016), *aff'd sub nom.*, *Indagro SA v. Nilva*, 733 F. App'x 50 (3d Cir. 2018) (emphasis added).

In this case, Plaintiff does not allege that ***Pure Energy*** did or said anything to him on which he relied, let alone to his detriment, that would support an inference of apparent authority. *See generally* Dkt. 23. In fact, ***Plaintiff never once claims that he spoke to Pure Energy***; and the only reason he purportedly made a purchase in the first place was because *he* placed a call to a third party, lied to "Travis," feigned interest, and solicited the purchase. This is not Plaintiff changing his position because of anything Pure Energy said or did to him, nor was it "detrimental" to him. Rather, this was all by his own design. *See also Perrong v. Aspen Dental Mgmt., Inc.,* 2022 WL 23026978, at *5 (E.D. Pa. Nov. 1, 2022) (dismissing TCPA defendant on this basis where the plaintiff, who is Plaintiff's counsel here, had "not alleged any statements or actions by [the moving defendant] that would lead him to believe that [the alleged caller] was [the defendant's] agent for the purpose of the calls the plaintiff."). And Plaintiff's vague and conclusory allegations to the contrary about the supposed "seamless transaction" (*see id.* ¶ 62) that he voluntarily engaged in about a different property are not facts entitled to any presumption of truth under settled federal pleading standards, and at bottom do not suggest Pure Energy authorized, was involved in, or even knew of the subject calls to him. Thus, Plaintiff's FAC does not plausibly allege an apparent authority theory of agency.

c. *The FAC Fails to Plausibly Allege a Ratification Theory.*

Lastly, adequately pleading ratification requires evidence (*i.e*., plausible facts) "in the form of an act manifesting affirmance of the calls, manifesting assent for the calls, or justifying a reasonable assumption that [the defendant] consented." *Klein*, 2016 WL 3539137, at *12. More than that, ratification requires "actual authority" (*i.e*., "control" over the caller and the manner and means of the calls) to arise in the first place. *See Pascal,* 2019 WL 5212961, at *4 ("Although a principal is liable when it ratifies an originally unauthorized tort, the principal-agent relationship is still requisite, and ratification can have no meaning without it.") (citing *Thomas v. Taco Bell Corp.*, 582 F.App'x 678, 680 (9th Cir. 2014)). Here, Plaintiff does not allege any facts to show Pure Energy's

actual authority (*i.e.*, "control") over any caller and the manner and means of any call campaign they conducted, as discussed at length above. Thus, Plaintiff necessarily cannot allege ratification here.

Moreover, Plaintiff does not plausibly allege any other facts that courts have found are required to show ratification—including that Pure Energy had any knowledge of the alleged wrongful conduct of the caller that actually made the subject calls. *See Klein*, 2016 WL 3539137, at *12; *see also Johansen v. HomeAdvisor, Inc.*, 218 F. Supp. 3d 577, 587 (S.D. Ohio 2016) (to be liable for "TCPA violations under a ratification theory, 'the principal must either (1) have actual knowledge of all material facts about the agent's act or (2) should have known of the actual facts because a reasonable person under the circumstances would have 'investigate[d] further.'"). The FAC's speculative and conclusory allegations that Pure Energy ratified any conduct by the actual alleged callers (*see, e.g.,* Dkt. 23, ¶¶ 70, 74), who Plaintiff has not properly identified, also do not suffice to plead a ratification theory of agency without more, *see Johansen,* 218 F. Supp. 3d at 588 ("The Restatement makes clear, however, 'that a principal must be alerted to some sort of red flag or suspicious fact before it will be charged with constructive knowledge of an agent's acts.'"), and in any event should be given no weight by this Court, *see Curay-Cramer*, 450 F.3d at 133 (the Court "need not credit the non-movant's conclusions of law or unreasonable factual inferences.").

That Pure Energy stood to possibly benefit from the subject calls alone also does not amount to ratification. *See, e.g., Landy*, 2021 WL 3634162, at *4-5 (rejecting argument that because plaintiff was eventually transferred to defendant from initial call and solicited to buy defendant's products, defendant necessarily assented to and received a benefit from the prior caller's actions, holding "[a]n entity cannot be held [vicariously] liable under the TCPA 'merely because they stand to benefit from the call'"); *Johansen,* 218 F. Supp. 3d at 588 ("The Restatement [of Agency] makes clear … 'that a principal must be alerted to some sort of red flag or suspicious fact before it will be charged with

constructive knowledge of an agent's acts.'"). For these reasons, Plaintiff's FAC does not plausibly allege a ratification theory of agency; and since he does not adequately plead actual authority or apparent authority, he has not stated any viable vicarious TCPA liability theory against Pure Energy.

* * *

All told, Plaintiff's continued failure to properly allege a plausible direct or vicarious TCPA liability theory against Pure Energy is not a minor pleading defect to be sorted out in discovery.[9] As shown above, this is a critical legal distinction that myriad courts have found must first be properly pled in every case before subjecting defendants to discovery, liability, and potential statutory damages—all of which can be costly and potentially ruinous, especially in class actions like this one. As Plaintiff failed to do so here, all of his claims against Pure Energy alleged in his FAC should be dismissed under Rule 12(b)(6) on these grounds alone. *See, e.g., Smith*, *Doyle*, and *Landy*, *supra*.

### B. The Entire FAC Must Be Dismissed Under Rule 12(b)(6) Because Plaintiff Fails to Plead Sufficient Facts Supporting Other Key Elements of His Claims.

Beyond the threshold fatal defect above, the FAC should also be dismissed under Rule 12(b)(6) because Plaintiff fails to plead sufficient facts supporting other key elements of his claims.

**First**, to allege a violation of the DNC rules he invoked for Count I, Plaintiff must allege that he received two "telephone solicitations" to his registered phone within a 12-month period. 47 C.F.R. § 64.1200(c). A telephone solicitation "means the initiation of a telephone call or message for the

[9] Nor is Plaintiff entitled to any discovery at the pleading stage to help him plead his deficient TCPA liability theories, even though he was already afforded limited discovery in this case. Indeed, it is axiomatic that the Federal Rules of Civil Procedure do "not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678–79. Instead, the entire purpose of Rule 12(b)(6) is to "streamline [ ] litigation by dispensing with needless discovery and factfinding," *see Neitzke v. Williams,* 490 U.S. 319, 326–27 (1989), and thus Plaintiff must file a complaint that states a plausible claim before he is entitled to discovery, *see Mann v. Brenner*, 375 F. App'x 232, 239 (3d Cir. 2010). *See also Hurley v. Messer*, 2018 WL 4854082, at *4 (S.D.W.Va. Oct. 4, 2018) (dismissing TCPA claim where plaintiff did not sufficiently identify who physically placed the subject calls, noting "allowing discovery where [p]laintiff has failed to allege a plausible claim would be directly contrary to the mandates of *Iqbal* and *Twombly*"). Therefore, Plaintiff should not be afforded any more discovery, and his FAC should be dismissed on this basis.

purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." 47 C.F.R. § 64.1200(f)(15). However, Plaintiff did not answer any of the outbound calls he allegedly received; thus, he cannot plausibly allege facts regarding the content of those calls from which the Court could infer that their purpose was to "encourag[e] the purchase or rental of, or investment in, property, goods, or services." 47 C.F.R. § 64.1200 (f)(15) (defining "telephone solicitation").

At bottom, Plaintiff does not plausibly allege in his FAC with actual supporting facts that ***he*** was encouraged to purchase anything from Pure Energy during any outbound call he received. This deficiency alone warrants dismissal of Count I, as myriad courts have found. *See, e.g., Greene v. Select Funding, LLC*, 2021 WL 4926495, at *5 (C.D. Cal. Feb. 5, 2021) (dismissing where plaintiff failed to allege the content of the other calls he did not answer that would allow the Court to reasonably infer that these other calls were solicitations); *Gillam v. Reliance First Capital, LLC*, 2023 WL 2163775, at *3 (E.D.N.Y. Feb. 22, 2023) (dismissing where plaintiff "failed to allege sufficient facts regarding the content of the calls from which the [c]ourt could infer that the purpose of the calls was to encourage 'the purchase or rental of, or investment in, property, goods, or services'" and "merely conclude[d], without any factual support, [defendant's] agent 'solicit[ed] refinancing products'"); *Norman v. Northern Ill. Gas Co. Inc.*, 2014 WL 184774, at *2 (N.D. Ill. Jan. 16, 2014) (dismissing where plaintiff failed to allege defendant "encouraged the purchase or rental or investment in any goods or services" despite multiple calls from the defendant with knowledge plaintiff was not the correct party); *Smith v. Getmehealthcare, LLC*, 2025 WL 3771271, at *2 (M.D. Fla. Dec. 31, 2025) (dismissing on this basis where plaintiff failed "to allege facts regarding the caller(s)' identities, the content of the calls, offers presented, or any other facts beyond speculation").

**<u>Second</u>**, while Plaintiff seemingly relies on the content of the two ***inbound*** calls he made to infer that the outbound calls that he allegedly failed to answer (and upon which he is basing his

claims) were "telephone solicitations," there are no plausible allegations suggesting that Plaintiff was actually encouraged to purchase anything during these inbound calls. Instead, and at best, Plaintiff alleges that after expressing interest about making a purchase for a different property and providing his current energy supplier's account information during an inbound call, the individual from Energy Source Services informed him that he "would be eligible for a reimbursement of up to $200 from Pure Energy USA." Dkt. 23, ¶ 36; *see also id.* ¶ 31 (alleging "Energy Source Services" "was calling and looking to assist all Pennsylvania electric customers to ensure they were getting their benefits applied to onto the correct account by getting a competitive electric supplier").

Federal courts have regularly dismissed DNC claims where the plaintiff fails to plead actual facts demonstrating that calls they received fit the statutory definition of a "telephone solicitation." *See*, *e.g.*, *Weingrad v. Top Healthcare Options Ins. Agency Co*., 2024 WL 4228149, at *3–4 (E.D. Pa. Sept. 17, 2024) (dismissing DNC claim where plaintiff similarly "only plead[ed] [that] 'the purpose of the [subject] call was to sell the Plaintiff health insurance" and thus did "not plead a statutory violation without 'further factual enhancement'" as required by federal pleading standards); *Eggleston v. Reward Zone USA LLC,* 2022 WL 886094, at *7 (C.D. Cal. Jan. 28, 2022) ("Plaintiff simply relies on conclusory labels such as 'advertisement' and 'promotion' without any supporting factual detail. This falls short of Plaintiff's burden to plead sufficient factual matter to state a plausible claim" under Section 227(c)); *Horton v. Molina Healthcare of Texas, Inc.,* 2026 WL 490216, at *9 (N.D. Tex. Feb. 6, 2026), *report and rec. adopted* 2026 WL 488753 (Feb. 20, 2026) (dismissing on this basis because "[t]here [was] no allegation that these calls requested [plaintiff] to purchase anything at all"); *Murphy v. DCI Biologicals Orlando, LLC,* 2013 WL 6865772, at *10 (M.D. Fla. Dec. 31, 2013), *aff'd* 797 F.3d 1302 (11th Cir. 2015) ("Because neither of the [subject communications] encouraged [the named plaintiff] to purchase, rent, or invest in anything, they do

not constitute 'telephone solicitations' under the TCPA."); *Gilliam*, 2023 WL 2163775, at *3 (dismissing on this basis where the plaintiff "merely conclude[d], without any factual support, that [defendant's] agent 'solicit[ed] refinancing products'" on the subject calls). So should this Court.

In sum, the TCPA indisputably "is aimed [only] at calls that ***directly*** advertise" (or, in the context of a DNC claim, directly solicit the plaintiff to make a purchase ) "and ***not*** [at] 'calls that are related in some attenuated way to advertising or telemarketing the caller intends to conduct in the future'"—and especially not inbound calls made by Plaintiff where ***he*** is the one doing the soliciting. *Jance v. Homerun Offer LLC*, 2021 WL 3270318, at *4 (D. Ariz. July 30, 2021) (quoting *Knutson v. Blue Light Sec., Inc*., 2018 WL 1172611, at *4 (S.D. Cal. Mar. 6, 2018)) (emphasis added). Because Plaintiff does not plausibly allege receiving any "telephone solicitation" call from or on behalf of Pure Energy fitting the statutory definition, Count I should be dismissed on this basis.

**<u>Third</u>**, the TCPA's implementing National DNC regulations also expressly prohibit initiating telephone solicitations <u>only</u> to a "residential telephone subscriber ***who has registered his or her telephone number***" on the National DNC Registry, as opposed to just number. 47 C.F.R. § 64.1200(c)(2) (emphasis added). As certain courts have found, a plain reading of the unambiguous language of this regulation, which is dispositive and this Court <u>must</u> apply as written under binding federal precedent when ruling on this Motion,[10] requires that Plaintiff plausibly plead that he ***himself*** registered the number on which he allegedly received the subject calls on the National DNC Registry. *See, e.g., Rogers v. Assurance IQ, LLC,* 2023 WL 2646468, at *4 (dismissing, in part, on this basis); *Rombough v. Robert D. Smith Ins. Agency, Inc.,* 2022 WL 2713278, at *2-4 (N.D. Iowa June 9, 2022)

[10] It axiomatic that if a statute's language is plain and unambiguous—like the TCPA's language certainly is—federal courts need not analyze the statute further when performing a construction analysis and "must enforce it according to its terms." *King v. Burwell,* 135 S.Ct. 2480, 2489 (2015). *See also Kirtz v. Trans Union LLC,* 46 F.4th 159, 162 (3d Cir. 2022), *aff'd sub nom. Dep't of Agric. Rural Dev. Rural Hous. Serv. v. Kirtz,* 601 U.S. 42 (2024) ("[W]here Congress has clearly expressed its intent, we may neither second-guess its choices nor decline to apply the law as written.").

(thoroughly analyzing this issue, dismissing *with prejudice* on this basis, and holding the "plain [statutory] language provides no distinction for a telephone number that had previously been registered on the national do-not-call registry by someone else"). That plain reading is logical and harmonizes with the statutory language itself, in which Congress authorized the creation of a registry of "residential subscribers ***who object*** to receiving telephone solicitations." 47 U.S.C. § 227(c)(3) (emphasis added). A contrary reading would mean that anyone could add every number in America to the Registry, even if the subscriber or user does not object and consents to receiving marketing calls, which would cause an avalanche of new TCPA lawsuits. But such is not the law or logical.

Here, Plaintiff's FAC does not indicate ***who*** registered the phone number upon which he received the subject calls, and only that it "has been listed on the National Do Not Call Registry for over a year prior to the calls at issue." *See* Dkt. 23, ¶ 25. This inartful pleading suggests the number "could have been registered by previous owners of th[e] numbers rather than by Plaintiff[.]" *Rogers*, 2023 WL 2646468, at *4. Moreover, a dismissal is particularly appropriate in this instance given that "[t]hese are facts that are easily within the knowledge of Plaintiff[] and can be pleaded to remove any doubt about whether [Plaintiff] actually registered [his] own number[] on the DNC list[.]" *Id.*

While Pure Energy acknowledges that there are cases to the contrary on this point, it respectfully submits that the holdings in such cases are contrary to the fundamental principles of statutory construction, which mandate that courts apply the plain and unambiguous language of any statute <u>as it is written</u>. *See* fn. 10, *supra*. Here, again, the statute expressly states that a National DNC Registry claim can only be brought by a "residential telephone subscriber ***who has registered his or her telephone number***" on the National DNC Registry. 47 C.F.R. § 64.1200(c)(2) (emphasis added). There is no other way to read this plain and unambiguous statutory language. It does not say a subscriber whose number is simply ***on*** the Registry. It says a subscriber who has registered ***his or***

***her*** number. And again, the whole point of the Registry is to protect subscribers "who object" to receiving unsolicited marketing calls. How they object is placing their own number on the Registry. As Plaintiff does not allege this, Count I of Plaintiff's FAC therefore fails for this additional reason.

**Finally**, for Count II, Plaintiff invokes 47 C.F.R. § 64.1601(e) of the TCPA's implementing regulations, which relate to Caller ID display requirements. But since he does not plead facts connecting Pure Energy to the subject calls or the phone number from which they originated, as discussed above, he has not plausibly alleged Pure Energy is responsible for such a violation.

Further, "[t]he ***majority of courts*** have held that § 64.1601(e)" of the TCPA's implementing regulations "was promulgated under 47 U.S.C. § 227***(d), which does not include a private right of action"*** for consumers. *Dobronski v. Juliasangel Mktg., LLC*, 2025 WL 2659265, at *9-11 (E.D. Mich. Sept. 17, 2025) (emphasis added, dismissing on this basis). *See also Tom v. Delancey Street Group, LLC*, 2026 WL 2255107, at *6 (E.D.N.Y. Aug. 5, 2026) (dismissing DNC claim on this basis, and holding that: "[T]his Court is persuaded by the majority approach, which finds there is no private right of action given § 64.1601(e)(1)'s silence on the matter.") (citing, *inter alia*, *Meyer v. Capital Alliance Group,* 2017 WL 5138316, at *17 (S.D. Cal. Nov. 6, 2017)); *Dobronski v. Selectquote Ins. Servs.*, 462 F. Supp. 3d 784, 790 (E.D. Mich. 2020) (dismissing similar claim on this basis); *Dobronski v. Total Ins. Brokers, LLC*, 2021 WL 4452218, at *3 (E.D. Mich. Sept. 29, 2021) (same); *Worsham v. Travel Options, Inc.,* 2016 WL 4592373, at *3-4 (D. Md. Sept. 2, 2016) (same).[11]

While Pure Energy acknowledges that certain other courts have ruled differently on this issue, it respectfully submits that the well-reasoned "majority approach" decisions discussed above

[11] Anticipating this argument, the Complaint cites to "*Dobronski v. Selectquote Ins. Servs.,* No. 2:23-CV-12597, 2025 WL 900439, at *3 (E.D. Mich. Mar. 25, 2025)" (Dkt. 23, ¶ 17), which is a summary judgment decision where the court expressly noted that it was ***ruling against the majority of courts on this issue***. *See Dobronski v. Selectquote Ins. Servs.*, 773 F. Supp. 3d 373, 380 (E.D. Mich. 2025). There is no good reason for this Court to depart from the majority approach on this same issue here.

(and others) not only follow proper statutory construction principles but also are in full alignment with the fundamental legal principle that courts should be reluctant to find a statutory private right of action in the absence of clear Congressionally-expressed intent to create one. *See, e.g., Alexander v. Sandoval,* 121 S.Ct. 1511, 1520 (2001) ("Without [evidence of Congress's intent to create a private right of action], a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute."). Therefore, Count II fails as a matter of law and should be dismissed under Rule 12(b)(6) on this basis, as well.

## III. ANY DISMISSAL SHOULD BE WITH PREJUDICE.

Finally, federal district courts in this Circuit (including in this District) and elsewhere routinely dismiss complaints with prejudice pursuant to Rule 12(b)(6) where a plaintiff already had a chance to amend and amendment failed to cure the complaint's pleading deficiencies. *See, e.g., Warden v. Woods Servs.,* 2020 WL 1289194, at *3 (E.D. Pa. Mar. 17, 2020); *Frame v. Cal-W. Reconveyance Corp.,* 2011 WL 3876012, at *3 (D. Ariz. Sept. 2, 2011). So should this Court.

Here, Plaintiff already amended. But despite being represented by counsel and having had the benefit of Pure Energy's prior dispositive motion, the Court's prior dismissal order granting that motion, and nearly eight months of pleadings stage discovery when doing so, he did not cure the fatal defects Pure Energy previously identified when amending. And in some ways he made those defects worse by adding more speculative, inconsistent, and contradictory allegations to his FAC that undermine his bald conclusions. In short, Plaintiff has already had two bites at the proverbial apple to try to plead a plausible claim against Pure Energy, but he failed. A third bite would be inappropriate and should not be permitted; and thus the FAC should be dismissed with prejudice.

## CONCLUSION

For all the reasons provided above, the Court should dismiss the entire FAC with prejudice.

Dated: October 27, 2026

Respectfully submitted,

*/s/ Steven C. Tolliver, Jr.*

FREDERICK P. SANTARELLI (PA 53901)
STEVEN C. TOLLIVER, JR. (PA 327165)
ELLIOTT GREENLEAF, P.C.
925 Harvest Drive, Suite 300
Blue Bell, PA 19422
(215) 977-1000 (phone)
(215) 977-1099 (fax)
FPSantarelli@elliottgreenleaf.com
sct@elliottgreenleaf.com

JOHN W. MCGUINNESS
(*Pro Hac Vice* to be requested)
A. PAUL HEERINGA
(*Pro Hac Vice* to be requested)
MADELAINE A. NEWCOMB
(Admitted *Pro Hac Vice*)
MANATT, PHELPS & PHILLIP, LLP
1700 M Street, NW 4th Floor
Washington, D. C., 20036
Telephone: 202-585-6500
Facsimile: 202-585-6600
jmcguinness@manatt.com
pheeringa@manatt.com
mnewcomb@manatt.com

*Counsel for Defendant Pure Energy USA PA, LLC*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that I am causing the foregoing to be filed electronically with the Court, where it is available for viewing and downloading from the Court's ECF system, and that such electronic filing automatically generates a Notice of Electronic Filing constituting service of the filed document upon all counsel of record.

Dated: October 27, 2026

*/s/ Steven C. Tolliver, Jr.*
STEVEN C. TOLLIVER, JR.

*Counsel for Defendant Pure Energy USA PA, LLC d/b/a Pure Energy*