**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

JAMES E. SHELTON, individually and on behalf of all others similarly situated,

*Plaintiff*,

v.

PURE ENERGY USA, PA, LLC d/b/a PURE ENERGY USA, ALONZO AMAR, ARASH AKHAVAN A/K/A "ALAN," AND DOE DEFENDANT PSG ZONE D/B/A PUREPSGPA AND/OR ENERGY SOURCE SERVICES,

*Defendants*.

CASE NO. 2:25-cv-03590-MMB

CLASS ACTION

**DECLARATION OF EILEEN ROUTHIER**

I, Eileen Routhier, hereby declare pursuant to 28 U.S.C. § 1746 as follows:

1. I am over 18 years of age. Unless otherwise stated, the information set forth herein and below is true and correct, is based on my own personal knowledge, and if asked to testify thereto, I could and would do so competently.

2. I am the Director of Operations for Pure Energy USA, PA, LLC d/b/a Pure Energy USA ("Pure Energy"), the Defendant in this matter. I have held this position for the past six years.

3. I submit this Declaration in my professional capacity in support of the "Motion to Dismiss Plaintiff's First Amended Complaint" (hereafter, the "Motion"), filed by Pure Energy contemporaneously herewith in the above-captioned matter (the "Action").

4. In my professional capacity, I am familiar with Pure Energy's business operations, policies, and practices, including but not limited to with respect to Pure Energy's product sales, marketing, and communications with current or potential customers. Further, in my professional

capacity, I am generally familiar with Pure Energy's business records and records-keeping procedures relating to sales and contact center procedures.

5. I have reviewed the First Amended Complaint (*see* Dkt. 23, the ""FAC") filed by Plaintiff James Shelton ("Plaintiff") in the Action, and I am familiar with the allegations made against Pure Energy therein.

6. Pure Energy is a licensed alternative retail electricity supplier in Pennsylvania. We supply electricity to residential, commercial, and industrial customers in the state.

7. Pure Energy's products are marketed primarily through internet advertisements, and consumers will place inbound calls to certain third parties, and request information about and/or purchase those services. As such, Pure Energy does not make outbound telemarketing calls, does not authorize third parties to make outbound telemarketing calls on its behalf, and in fact contractually prohibits any third parties from making outbound telemarketing calls on behalf of Pure Energy.

8. Pure Energy has implemented a strictly "inbound" marketing program, where the consumer initiates the sales process through an inbound call to a contractor. Pure Energy does so to avoid any legal issues that may arise with respect to telemarketing.

9. How Pure Energy's sales process works generally is that a consumer places an inbound call to a third party independent contractor working with Pure Energy in response to ads on websites hosted by third parties, and then a sale is completed during that inbound call. Any calls involved in the sale process are to be initiated by the consumer via inbound call to a third party contractor, per Pure Energy's contract with any third parties.

10. Commonly, the sale is completed during the initial inbound call to the contractor, and Pure Energy is notified electronically that the sale was completed. Outbound calls made in the

sale process by the third party contractors, if any, are generally infrequent and are to be limited to necessary and ordinary business calls after the consumer initiated call, such as where a customer expressly requests (and thus consents to) a callback or there is an ongoing business relationship with an existing customer and the customer needs to be called in relation to their account (such as if there is a billing issue or to complete a transaction that was initiated by the customer), or if an inbound call is inadvertently disconnected, but not for advertising or marketing purposes.

11. Any third parties that may work with Pure Energy as part of its marketing efforts are independent contractors and are not employees of Pure Energy. Pure Energy is not involved in the calls made to or by those third parties at any point (for example, calls are not transferred to Pure Energy). Pure Energy does not direct, control, or have any knowledge of or involvement in the calling activities of these independent contractors, other than contractually prohibiting unsolicited outbound telemarketing calls as noted above.

12. Pure Energy does not own or use the phone number identified in the FAC, which I understand is (833) 423-0533, that allegedly was used to call Plaintiff. If that number is called, the caller does not reach Pure Energy.

13. In sum, Pure Energy contractually prohibits third parties from making outbound marketing or advertising calls on its behalf, and any third party contractors are only authorized to receive inbound calls. Pure Energy does not authorize third parties to make outbound phone calls on its behalf for marketing or advertising purposes. At no time are unsolicited outbound telemarketing calls made by Pure Energy or with the authorization or knowledge of Pure Energy. If any such calls were made to Plaintiff or to the cell phone number alleged in the FAC (which is not conceded), they were not made or authorized by Pure Energy, and Pure Energy had no participation in such calls. Such calls would have been in violation of Pure Energy's contract.

14. Additionally, Pure Energy did not contact Plaintiff's counsel, Mr. Perrong, on July 15, 2025, or any other date, to discuss this lawsuit or anything else. Pure Energy also did not authorize anyone named "Alan" to contact Mr. Perrong to discuss this lawsuit. No such person is an employee of Pure Energy. The first Pure Energy learned of this purported call to Mr. Perrong was through Plaintiff's opposition to Pure Energy's initial motion to dismiss in the Action.

15. For the avoidance of doubt, the calls alleged in the FAC (to Plaintiff or to his counsel) were not placed by Pure Energy or by anyone acting on its behalf, nor were they authorized by Pure Energy. Pure Energy had no involvement in or has no knowledge of those calls. Pure Energy does not conduct business as or use the names "Energy Source Services," "PurePSGPA," "PSG Zone," "Pure PSG," or "PSGPA" and it has never done so. No such entity or entities was hired by Pure Energy, and Pure Energy does not do business with such entities. Pure Energy does not know who "Alonzo Amar" or "Arash Akhavan" (or "Alan") are. Such individuals are not Pure Energy employees or authorized to speak on its behalf.

16. Nothing in this Declaration should be understood as an admission of liability by Pure Energy (which is expressly denied), or an admission of any fact alleged by Plaintiff in the Action, including as alleged in the FAC.

17. Nothing in this Declaration should be understood as amending or withdrawing any previous declaration submitted on Pure Energy's behalf in this Action.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge and belief.

Executed on October 27, 2026, in Monroe, Connecticut,

Signed by:

By: Eileen Routhier

6E1ABF07C87A4AB...

Eileen Routhier