**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

JAMES E. SHELTON, individually and on behalf of all others similarly situated,

*Plaintiff*,

v.

PURE ENERGY USA, PA, LLC d/b/a PURE ENERGY USA, ALONZO AMAR, ARASH AKHAVAN A/K/A "ALAN," AND DOE DEFENDANT PSG ZONE D/B/A PUREPSGPA AND/OR ENERGY SOURCE SERVICES,

*Defendants*.

CASE NO. 2:25-cv-03590-MMB

CLASS ACTION

**DEFENDANT PURE ENERGY'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

# TABLE OF CONTENTS


**Page**

INTRODUCTION ....................................................................................................................1

ARGUMENT ..........................................................................................................................3

I. PLAINTIFF STILL CANNOT ESTABLISH AN INJURY FAIRLY TRACEABLE TO PURE ENERGY, SO THE FAC MUST BE DISMISSED UNDER RULE 12(b)(1). ...................................................................3

II. THE FAC FAILS TO STATE A CLAIM UNDER RULE 12(b)(6). .......................8

A. Plaintiff Does Not Allege a Plausible TCPA Liability Theory Against Pure Energy. ......................................................................................8

B. Plaintiff Does Not Plausibly Allege a "Telephone Solicitation" (Count I)..........................................................................................................14

C. Count II Fails as a Matter of Law and on the Facts Pled. ..........................15

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Abboud v. Circle K Stores Inc.*,
731 F. Supp. 3d 1094 (D. Ariz. 2024) ....................4

*Alexander v. Sandoval*,
532 U.S. 275 (2001)....................15

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................9

*Baccari v. Carguard Admin., Inc.*,
2022 WL 3213839 (E.D. Pa. Aug. 8, 2022) ....................5, 6, 7, 8

*Bordoni v. Chase Home Fin. LLC*,
374 F. Supp. 3d 378 (E.D. Pa. 2019) ....................8

*Bridges v. Astrue*,
2014 WL 1281158 (E.D. Pa. Mar. 28, 2014)....................8

*Capriglione v. Radisson Hotels Int'l, Inc.*,
2011 WL 4736310 (D.N.J. Oct. 5, 2011)....................12

*Cocciolillo v. SmartMatch Ins. Agency, LLC*,
821 F. Supp. 3d 998, 1002 (W.D. Mo. 2026) ....................4

*Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*,
836 F.2d 173 (3d Cir. 1988)....................15

*Cunningham v. Health Plan Intermediaries Holdings, LLC*,
2018 WL 835222 (N.D. Ill. Feb. 13, 2018) ....................10

*Dobronski v. Tobias & Assocs., Inc.*,
769 F. Supp. 3d 681 (E.D. Mich. 2025)....................10

*Hale v. Teledoc Health, Inc.*,
2021 WL 1163925 (S.D.N.Y. Mar. 25, 2021) ....................10

*Hamilton v. El-Moussa*,
2020 WL 2614625 (C.D. Cal. Feb. 10, 2020)....................12

*Harris v. Kellogg Brown & Root Servs., Inc.*,
724 F.3d 458 (3d Cir. 2013)....................2, 3

*Hudson v. HomeAdvisor, Inc.*,
348 F.R.D. 690, 692 (D. Colo. 2025) ....................4

*Int'l Ass'n of Machinists & Aerospace Workers v. Nw. Airlines, Inc.*,
673 F.2d 700 (3d Cir. 1982)....................8

*Klein v. Just Energy Grp., Inc.*,
2016 WL 3539137 (W.D. Pa. June 29, 2016)....................11

*Krakauer v. Dish Network, L.L.C.*,
925 F.3d 643 (4th Cir. 2019) ....................14

*Landy v. Nat. Power Sources, LLC,*
2021 WL 3634162 (D.N.J. Aug. 17, 2021) ....................11, 13

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) ....................3

*Mestas v. CHW Grp., Inc.*,
508 F. Supp. 3d 1011, 1033 (D.N.M. 2020) ....................3

*Michalak v. ServPro Indus., Inc.*,
2018 WL 3122327 (D.N.J. June 26, 2018) ....................12

*Mortensen v. First Fed. Sav. & Loan Ass'n*,
549 F.2d 884 (3d Cir. 1977) ....................3, 4, 5

*Perrong v. Aspen Dental Mgmt., Inc.*,
2022 WL 23026978 (E.D. Pa. Nov. 1, 2022) ....................12

*Shelton v. Nat'l Gas & Elec., LLC,*
2019 WL 1506378 (E.D. Pa. Apr. 5, 2019) ....................12

*Simon v. E. Ky. Welfare Rights Org.*,
426 U.S. 26 (1976) ....................3

*Warden v. Woods Servs.*,
2020 WL 1289194 (E.D. Pa. Mar. 17, 2020) ....................1

*Warth v. Seldin*,
422 U.S. 490 (1975) ....................3

**OTHER AUTHORITIES**

47 C.F.R. § 64.1200(f)(15) ....................14

47 C.F.R. § 64.1601(e) ....................15

**RULES**

Fed. R. Civ. P. 12 .................... passim

## INTRODUCTION

Plaintiff's Opposition (Dkt. 36) to Pure Energy's Motion to Dismiss ("Motion") confirms nothing material has changed since this Court dismissed his original Complaint and that his First Amended Complaint (Dkt. 23, "FAC") is therefore ripe for a dismissal with prejudice.[1]

In dismissing his original Complaint, this Court previously held that Plaintiff could not refute Pure Energy's sworn evidence that it "did not call Plaintiff, did not know of or participate in any such calls, did not authorize any third parties to make any outbound marketing calls on its behalf, and did not authorize anyone named 'Alan' to contact Mr. Perrong to discuss this lawsuit." Dkt. 21 at 2. Even after serving numerous subpoenas and having been afforded months of pleadings stage discovery, Plaintiff still cannot refute this evidence. In fact, Plaintiff's Opposition is not supported by any evidence whatsoever—not even a self-serving declaration from Plaintiff, and certainly none of the documents referenced in his FAC are attached to his Opposition. In stark contrast, Pure Energy's position, supported by sworn evidence submitted with its Motion, has not changed: Pure Energy does not make outbound telemarketing calls, contractually prohibits any third party from making them on its behalf, does not own or use the (833) 423-0533 number, has no relationship with "Energy Source Services," "PSG Zone," "PurePSGPA," Alonzo Amar, or Arash Akhavan, and had no knowledge of or involvement in the subject calls. Dkt. 35-2, ¶¶ 7–15.

At bottom, Plaintiff's Opposition tries to manufacture a factual dispute from conclusory and speculative allegations that say nothing about whether Pure Energy placed, authorized, or

---

[1] Plaintiff asks for leave to amend again, but identifies only "additional detail concerning the VerbatimTPV account records, the 'CSD 02' designation, the 'Alan' call, and the registration of his number." Dkt 36 at 31. Those are the same facts already pled in the FAC (Dkt. 23, ¶¶ 25, 47–53, 66–67), and repackaging them would not cure the defects in the FAC. Leave to amend should thus be denied. *See Warden v. Woods Servs.*, 2020 WL 1289194, at *3 (E.D. Pa. Mar. 17, 2020).

controlled the calls at issue, let alone afford him standing under the TCPA or demonstrate he has met federal pleading standards. In the end, Plaintiff's counterarguments fail for several reasons:

**First**, Plaintiff recasts Pure Energy's factual standing challenge as a "merits defense" that cannot be resolved on a Rule 12(b)(1) motion. Dkt. 36 at 8–13. That is simply wrong.[2] Courts have, and routinely do, rule on factual standing challenges at the pleadings stage. Indeed, Chief Judge Beetlestone did so in the *Baccari* case cited repeatedly in the Motion, which Plaintiff's Opposition misconstrues. Plaintiff gives this Court to reason to rule any differently in this case. Nor does his argument forgive his failure to submit any evidence refuting Pure Energy's challenge.

**Second**, as to Pure Energy's Rule 12(b)(6) arguments, Plaintiff tries to manufacture an agency relationship (for vicarious TCPA liability) between Pure Energy and the still unidentified third party caller out of (i) a log-in to a state-mandated third-party *verification* system, (ii) an anonymous post-suit call from a person named Alan that Plaintiff attempts to tie to Mr. Akhavan's personal cell number, and (iii) the fact that Pure Energy's name was mentioned only after Plaintiff called the number used back and offered up an account number for a different property. *See* Dkt. 36 at 15–19. However, none of that says anything about who placed the three unanswered calls at issue, much less that Pure Energy controlled the specific "manner and means" of those calls, which is the touchstone of vicarious liability in a TCPA case. *See* Dkt. 35-1 at 20 (citing various cases).

**Third**, Plaintiff asks the Court to excuse the many pleading deficiencies in his FAC because the information Plaintiff needs is supposedly in Pure Energy's hands. *See* Dkt. 36 at 20–23. But even though federal plaintiffs are not generally entitled to discovery for a Rule 12(b)(6) (see Dkt. 35-1 at 28, n.9 (citing, *inter alia*, *Iqbal* and *Mann*)), this Court already permitted Plaintiff to

[2] As the Third Circuit has held, "the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims" under Rule 12(b)(1) for a factual standing challenge. *Harris v. Kellogg Brown & Root Servs., Inc.*, 724 F.3d 458, 464 (3d Cir. 2013).

conduct nearly eight months of discovery into the parties that placed or authorized the alleged calls. *See generally* Dkt. 21. Plaintiff subsequently identified those parties through third party discovery but chose to voluntarily dismiss the very parties he alleges placed the calls and controlled the number solely so that he could "keep the case moving." Dkt. 36 at 2. Plaintiff cannot seek to hold Pure Energy liable solely because the parties who are actually responsible did not appear.

## ARGUMENT

### I. PLAINTIFF STILL CANNOT ESTABLISH AN INJURY FAIRLY TRACEABLE TO PURE ENERGY, SO THE FAC MUST BE DISMISSED UNDER RULE 12(B)(1).

Plaintiff's lead counterargument on standing is that traceability "rises or falls with vicarious liability," so the Court may not weigh the Routhier Declaration without converting the Motion to a motion for summary judgment. Dkt. 36 at 8–13. Not so. On a factual attack, "no presumptive truthfulness attaches" to the complaint's allegations, and the Court "is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977); *see also Harris*, 724 F.3d at 464 (same).

Further, Article III standing "in no way depends on the merits of the plaintiff's contention that particular conduct is illegal." *Warth v. Seldin*, 422 U.S. 490, 500 (1975). The question this Court is asked to resolve on this Motion is not whether a TCPA violation occurred, but whether Plaintiff's alleged harm is the "result [of] the independent action of some third party not before the court." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41–42 (1976)). Judges in this District and elsewhere have answered that question on Rule 12(b)(1) factual challenges in TCPA cases indistinguishable from this one. *See* Dkt. 35-1 at 13 (citing *Baccari*, *Winner*, *Stewart*, *Hall*, and *St. Louis Heart Cntr.*).

Plaintiff's authorities do not hold otherwise. *Mestas v. CHW Grp., Inc.*, did not involve a Rule 12(b)(1) factual standing challenge, as Pure Energy raises here. 508 F. Supp. 3d 1011, 1033

(D.N.M. 2020). Rather, the court in *Mestas* rejected a ***facial*** standing challenge that "hinge[d] on" the defendant's contention that the plaintiff "did not sufficiently allege facts" connecting it to the calls. In other words, it was not based on any evidence but on the allegations in the complaint, which were entitled to the same presumption of truth as if under Rule 12(b)(6). By contrast, Pure Energy has raised a ***factual*** standing challenge by submitting evidence in the form of a sworn declaration, which Plaintiff has not rebutted. Dkt. 36 at 8-9. Thus, *Mestas* is inapposite.

Plaintiff's reliance on *Abboud v. Circle K Stores Inc.*, is equally unavailing. 731 F. Supp. 3d 1094 (D. Ariz. 2024). In *Abboud*, the defendant raised a Rule 12(b)(6) ***statutory*** standing challenge arguing that the plaintiff consented to receive the subject messages. *Id.* at 1106. The court rejected the defendant's argument, correctly noting that under Rule 12(b)(6), the plaintiff's allegations must be assumed as true. *Id.* Here, by contrast, Pure Energy has raised a factual jurisdictional standing argument (*i.e.*, a ***constitutional*** challenge) supported by evidence. Thus, "no presumptive truthfulness attaches" to the complaint's allegations. *Mortensen*, 549 F.2d at 891.

*Cocciolillo v. SmartMatch Ins. Agency, LLC* and *Hudson v. HomeAdvisor, Inc.* do not help Plaintiff avoid dismissal, either. 821 F. Supp. 3d 998, 1002 (W.D. Mo. 2026); 348 F.R.D. 690, 692 (D. Colo. 2025). In the former, the court noted that agency is ordinarily a question of fact when ruling on a Rule 12(b)(6) motion to dismiss; and Plaintiff's Opposition conveniently omitted the very next sentence in the court's decision, which noted an exception to that rule: "where the facts are not in dispute and there is no real issue for the jury to resolve." *Id.* Such is true here, as Plaintiff has not presented any evidence to rebut Pure Energy's factual standing challenge. *Hudson* similarly involved a Rule 12(b)(6) motion to dismiss in which the defendant argued that "[o]n its face, the content of this text message does not encourage the purchase of any good or service." 348 F.R.D. 690, 692 (D. Colo. 2025). That court noted that such arguments are inappropriate for resolution on

a Rule 12(b)(6) motion. That is not true here under Rule 12(b)(1). Again, Pure Energy brings a factual standing challenge that Plaintiff has failed to (and indeed cannot) rebut.

Nor does the Court's October 2025 order help Plaintiff. Plaintiff reads the Court's caution that a second round of affidavits could trigger Rule 12(d) as a bar to deciding this motion. Dkt. 36 at 9–10, 12–13. But the Court did not decline to rule; it treated Pure Energy's prior motion as one for summary judgment to the extent it relied on a declaration, and granted it. Dkt. 21 at 2–3. The same result follows here under either framework. Pure Energy submitted the Routhier Declaration in support of its Rule 12(b)(1) factual standing challenge, which requires no conversion. *See* Dkt. 35-1 at 2 n.1. Further, even if the Court were to proceed under Rule 12(d), Plaintiff had a "reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). Indeed, granting summary judgement on his original Complaint, the Court authorized discovery "regarding the identity of the caller and the source of the alleged calls" (Dkt. 21 at 3) and he spent months conducting such discovery. Plaintiff has not submitted a declaration, under Rule 56(d) or otherwise, identifying specific facts he could obtain that would create a genuine dispute, nor has he submitted any evidence of his own with his brief. It is unclear what further discovery, if any, Plaintiff needs to pursue his claim. In fact, it appears he voluntarily dismissed the parties actually responsible for contacting him solely for the sake of his own convenience.

Beyond urging use of the wrong legal standards, Plaintiff did not meet his evidentiary burden under Rule 12(b)(1). Because no presumption of truth attaches to the FAC on a factual challenge, *Mortensen*, 549 F.2d at 891, he must do more than point to his own pleading. Rather, he must submit actual evidence to rebut Pure Energy's factual standing challenge. *See Baccari v. Carguard Admin., Inc.*, 2022 WL 3213839, at *3 (E.D. Pa. Aug. 8, 2022). He did not. Plaintiff's "rebuttal" consists entirely of citations to the FAC paragraphs describing what Plaintiff says his

subpoenas showed, which notably does not attach the purported "evidence" it cites. Dkt. 36 at 4–6, 12–13. Even taken at face value, those allegations establish only that: (i) the toll-free number is subscribed to Mr. Amar, not Pure Energy (*see* Dkt. 23, ¶ 45); (ii) the post-suit "Alan" call came from a Google Voice number registered to Mr. Akhavan and linked to his personal cell phone (*id.* ¶ 47) again, not Pure Energy; and (iii) a user log-in associated with "alan@psg.zone" and the alias "PurePSGPA" exists within a VerbatimTPV verification account (*id.* ¶¶ 50–51, 66). These allegations point ***away*** from Pure Energy and ***toward*** three third parties, two of whom Plaintiff voluntarily dismissed prior to service and the other of whom has defaulted. Moreover, the third allegation concerns a post-sale verification step, not the subject calls themselves. This does not show Pure Energy placed them. Nor does it contradict Pure Energy's sworn evidence. That someone had access to Pure Energy's VerbatimTPV account does not mean that individual (or anyone else) was authorized to place ***outbound calls*** on Pure Energy's behalf. That is precisely the "factual link" the Routhier Declaration breaks. *Baccari*, 2022 WL 3213839, at *3.

Because Plaintiff cannot rebut the Routhier Declaration and apparently has no evidence to submit, he attempts (but fails) to criticize that evidence as "conclusory" and omitting critical facts regarding the VerbatimTPV access. Dkt. 36 at 10-13. These criticisms fail for several reasons:

**<u>First</u>**, the Declaration is not "conclusory." Ms. Routhier attested from personal knowledge to concrete facts firmly breaking the factual link between Pure Energy and Plaintiff's alleged harm, including *inter alia* that: (i) Pure Energy does not make outbound telemarketing calls; (ii) it contractually prohibits third parties from doing so; (iii) its sales are consumer-initiated through inbound calls; (iv) it does not own or use the (833) 423-0533 number, which does not reach Pure Energy; (v) it does not do business as or with "Energy Source Services," "PurePSGPA," "PSG Zone," "Pure PSG," or "PSGPA"; (vi) it does not know Mr. Amar, Mr. Akhavan, or "Alan"; and

(vii) it did not place, authorize, or know of the calls to Plaintiff or his counsel. Dkt. 35-2, ¶¶ 2, 7–15. Those are plain, unambiguous, and unequivocal facts, not legal conclusions; and they are the same facts the Court previously found Plaintiff unable to refute. Dkt. 21 at 3. Nothing has changed.

**Second**, the VerbatimTPV log-in does not demonstrate who is responsible for initiating the subject calls. The FAC itself describes VerbatimTPV as the vendor that administers a "state-mandated third party verification ('TPV') process" (Dkt. 23, ¶ 44), i.e., a regulatory compliance step that occurs ***after*** a consumer has agreed to switch suppliers. Access to a post-sale verification portal says nothing about who actually dialed Plaintiff's phone, when, or at whose direction. Further, the Routhier Declaration squarely denies that Pure Energy does business with "PSG Zone" or "PurePSGPA" or otherwise had any involvement in the calls. Dkt. 35-2, ¶¶ 11, 13, 15. Plaintiff's unsworn account of what VerbatimTPV "told" his counsel about who controls access to the account (Dkt. 23 ¶ 53) is unsupported by evidence, and it certainly does not demonstrate that Pure Energy, or anyone acting on its behalf, made outbound calls to Plaintiff in violation of the TCPA.

**Third**, the Routhier Declaration does not "confirm" agency. It does the opposite. Plaintiff seizes on Ms. Routhier's statements that contractors' outbound calls, "if any," are limited to ordinary business calls following a consumer-initiated contact, such as a requested callback or a dropped inbound call, and are "not for advertising or marketing purposes." Dkt. 35-2, ¶ 10; Dkt. 36 at 11–12. Indeed, a defendant does not control the "manner and means" of a telemarketing campaign by expressly forbidding it, and Plaintiff cites no authority holding that a seller becomes vicariously liable for calls that violate its own express contractual prohibition. That is because none exists. As Chief Judge Beetlestone held in *Baccari*, this is precisely the type of prohibition that "break[s] the factual link" between the seller and the calls. 2022 WL 3213839, at *3.

**Fourth**, Plaintiff's effort to distinguish the nearly identical *Baccari* case (Dkt. 36 at 12–

13) misses the mark. The plaintiff in *Baccari*, like Plaintiff here, relied only on his pled allegations to connect the defendant to calls placed by a third party; but in the end what mattered was that the defendant's sworn evidence went unrebutted by competent evidence. Indeed, when dismissing the case under Rule 12(b)(1), Chief Judge Beetlestone noted that, in this Circuit, "'[w]hen a 'defendant contests the jurisdictional allegations ... under oath, then it is incumbent upon the plaintiff to respond to the defendant's sworn factual assertions. In doing so, a conclusory response will not suffice.' [] Instead, the plaintiff must present proof of jurisdiction countering the defendant's facts 'by affidavits or other sworn proofs.'" *Baccari*, 2022 WL 3213839, at *3 (quoting *Int'l Ass'n of Machinists & Aerospace Workers v. Nw. Airlines, Inc*., 673 F.2d 700, 711-12 (3d Cir. 1982)).

The same is true here. Plaintiff's attempt to rely solely on the conclusory allegations of his FAC, which again need not be accepted as true under Rule 12(b)(1), cannot overcome Pure Energy's factual standing challenge and its sworn evidence. Plaintiff's assertion to the contrary is based solely upon decisions analyzing Rule 12(b)(6) motions to dismiss, which are inapposite for the reasons discussed above. *See* Dkt. 36 at 12 (citing *Hudson* and *Abboud*).

## II. THE FAC FAILS TO STATE A CLAIM UNDER RULE 12(B)(6).

### A. Plaintiff Does Not Allege a Plausible TCPA Liability Theory Against Pure Energy.

Plaintiff readily admits that he "does not contend" that Pure Energy physically placed the calls and that his claim against Pure Energy "is one for vicarious liability." Dkt. 36 at 13, 22. The FAC's passing reference to Pure Energy being "directly and/or vicariously liable" (Dkt. 23, ¶ 70) therefore adds nothing, and any direct liability theory should be dismissed as abandoned. *See Bordoni v. Chase Home Fin. LLC*, 374 F. Supp. 3d 378, 384 (E.D. Pa. 2019) ("Failure to address even part of a motion in a responsive brief may result in that aspect of the motion being treated as unopposed.'") (quoting *Bridges v. Astrue*, 2014 WL 1281158, at *14 (E.D. Pa. Mar. 28, 2014)).

As to vicarious liability, Plaintiff contends that agency need only be pled through

"generalized as opposed to evidentiary facts" and that "a 'minimal level of control'" suffices. Dkt. 36 at 6, 13–14. However, courts in this Circuit apply *Iqbal* and *Twombly* to vicarious TCPA allegations and require actual facts supporting a reasonable inference that the defendant controlled the caller and more specifically the "manner and means" of the subject call campaign, not conclusory labels. *See* Dkt. 35-1 at 18-20 (citing *Zarichny*, *Kline*, *Doyle*, *Landy*). Plaintiff must plead non-conclusory facts, in accord with *Iqbal*/*Twombly*, suggesting Pure Energy had the right to control whether, when, to whom, and how the subject calls were made. *See id*. He failed.

Plaintiff's "information asymmetry" argument (Dkt. 36 at 14, 19–22) is misplaced. Again, Plaintiff is not entitled to discovery to plausibly allege his TCPA claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). Further, the Court has already authorized discovery directed to "the identity of the caller and the source of the alleged calls," Dkt. 21 at 3, and Plaintiff used it to identify the subscriber of the calling number and the person he believes is "Alan," only to dismiss two defendants and to default other. Having let go of the defendants he says are actually responsible, Plaintiff now asks the Court to hold Pure Energy liable solely because it is the one defendant left in this case. The Court should reject this blatant attempt to hold a blameless party liable.

In any event, Plaintiff's arguments on the relevant agency theories each lack merit.

**<u>First</u>**, Plaintiff argues that Pure Energy should be held vicariously liable under an "actual authority" theory of liability for four reasons. Dkt. 36 at 14–16. None plausibly suggests that Pure Energy controlled the manner and means of the calls, which is all that matters. For example, the FAC alleges that Pure Energy gave the "Energy Source Services Defendants" log-in credentials to its VerbatimTPV account and that the state-mandated TPV process was a step "through which every sale . . . had to pass." Dkt. 23, ¶¶ 64–65; Dkt. 36 at 14–15. But the TPV process, by the FAC's own account, is a regulatory verification step that occurs <u>after</u> the consumer has agreed to

enroll. Dkt. 23, ¶¶ 37, 44, 65. It has nothing to do with whether, when, or to whom a marketer calls. The cases Plaintiff cites illustrate this difference. For example, the defendants in *Mestas* allegedly gave telemarketers access to their "sales, dialing or operational systems," and the insurers in *Dobronski v. Tobias & Assocs., Inc.* gave call centers access to their pricing systems and authority to market under their names. 769 F. Supp. 3d 681 (E.D. Mich. 2025). Dkt. 36 at 14–15. Plaintiff alleges nothing comparable here. His conclusion that the TPV process gave Pure Energy "control over the sequence and compliance framework of the enrollment" (Dkt. 23, ¶ 65) describes, at most, control over the *enrollment*, not the calls themselves. And the "CSD 02" code (*id.*, ¶ 66) shows only which log-in submitted Plaintiff's verification, which says nothing about who placed the three unanswered calls the day before. Access to the post-enrollment TPV system does not equate to access (or permission) to place outbound marketing calls on Pure Energy's behalf.

**Second**, the allegation that the representatives on Plaintiff's inbound calls conveyed Pure Energy's "specific pricing and benefit terms," which was "possible only if" they were authorized to do so (Dkt. 23, ¶ 63), is a conclusion, not a fact. The FAC identifies a single statement, that Plaintiff "would be eligible for a reimbursement of up to $200 from Pure Energy USA every six months" (*id.* ¶ 36), made on the second call ***Plaintiff*** placed, after Plaintiff supplied an electric account number for a different property (*id.* ¶¶ 32–36). That a third party mentioned a supplier's publicly available offer on an inbound call does not plausibly show that the supplier scripted or controlled the earlier outbound calls. *See, e.g., Cunningham v. Health Plan Intermediaries Holdings, LLC*, 2018 WL 835222, at *6 (N.D. Ill. Feb. 13, 2018) (telemarketers did not have authority "simply because they mentioned Defendants' products on their calls"); *see also Hale v. Teledoc Health, Inc.*, 2021 WL 1163925, at *4 (S.D.N.Y. Mar. 25, 2021) (ruling similarly).

**Third**, Plaintiff treats the post-suit call from "Alan" a concession of agency by Pure

Energy. Dkt. 36 at 16. It is not. On the one hand, Plaintiff is referring to apparent authority here, which is a different legal concept than actual authority. On the other hand, common law agency, and apparent authority in particular, must be traced to the ***principal's*** own manifestations, not those of the putative agent. *Landy v. Nat. Power Sources, LLC,* 2021 WL 3634162, at *4 (D.N.J. Aug. 17, 2021). A third party's own assertion he is calling "on behalf of" a company is precisely the kind of agent-side statement that cannot establish the principal's consent or control. That is especially so here, where the FAC alleges that the post-lawsuit call came from a number registered to Mr. Akhavan and linked to his ***personal*** cell phone (Dkt. 23, ¶ 47), and not from Pure Energy.

<u>**Fourth**</u>, Plaintiff argues that Pure Energy "had the means" to audit TPV records and recordings after the fact. Dkt. 23 ¶ 72; Dkt. 36 at 16. The theoretical ability to review verification records after an enrollment is not control over the manner and means of the calls that preceded it. Indeed, it is well established that a seller "cannot be held [vicariously] liable under the TCPA 'merely because they stand to benefit from the call.'" *Landy*, 2021 WL 3634162, at *4 (quoting *Klein v. Just Energy Grp., Inc.*, 2016 WL 3539137, at *8 (W.D. Pa. June 29, 2016)).

<u>**Fifth**</u>, the FAC alleges "Amar ***and/or his agents and vendors,*** including possibly Akhavan and PSG Zone," used the number that called Plaintiff. Dkt. 23, ¶ 46 (emphasis added). Plaintiff responds that "[p]leading that persons in a chain of vendors may have participated is not a defect." Dkt. 36 at 20. But a court reasonably cannot infer an agency relationship between Pure Energy and an unidentified, speculative set of countless possible callers. *See* Dkt. 35-1 at 22-23 (citing *Wilson* and *Cosenza* (dismissing similar claims)). Such is particularly true since Plaintiff has dismissed or defaulted the very parties he alleges subscribed to and operated the calling number.

<u>**Sixth**</u>, Plaintiff also argues that apparent authority turns only on whether a "reasonable person" would believe the callers were authorized to act for Pure Energy, and that reliance is

unnecessary. Dkt. 36 at 17. Courts in this Circuit hold otherwise: apparent authority requires that "the appearance of authority has been created by the conduct of the alleged principal," that "a third party has relied on the agent's apparent authority," and that "the reliance was reasonable." *Capriglione v. Radisson Hotels Int'l, Inc.*, 2011 WL 4736310, at *4 (D.N.J. Oct. 5, 2011); *see also Michalak v. ServPro Indus., Inc.*, 2018 WL 3122327, at *6 (D.N.J. June 26, 2018) ("the essential element of reliance must be present"). The FAC identifies no manifestation by Pure Energy to Plaintiff before, during or after the calls at issue on which Plaintiff could have "reasonably relied." The only Pure Energy conduct alleged, the contract and confirmation mailed to Plaintiff after his inbound call (Dkt. 23, ¶¶ 38–39, 44), postdates the calls and could not have induced any belief about them. *See Hamilton v. El-Moussa*, 2020 WL 2614625, at *2 (C.D. Cal. Feb. 10, 2020).

Nor does the FAC plausibly allege reliance. By Plaintiff's own account, he called the number back "to see who had called him" (Dkt. 23, ¶ 30), and he cites a decision from this District recognizing that he "play[s] along" with telemarketers "to find out who [they] really are" so that he can sue them. Dkt. 36 at 25 (quoting *Shelton v. Nat'l Gas & Elec., LLC*, 2019 WL 1506378, at *5 (E.D. Pa. Apr. 5, 2019)). A plaintiff who engages a caller for the purpose of identifying a litigation target, and who then rescinds the resulting contract (Dkt. 36 at 4; Dkt. 23, ¶ 39), has not relied on any appearance of authority to his detriment. *See Perrong v. Aspen Dental Mgmt., Inc.*, 2022 WL 23026978, at *5 (E.D. Pa. Nov. 1, 2022) (dismissing where the plaintiff had "not alleged any statements or actions by [the moving defendant] that would lead him to believe that [the alleged caller] was [the defendant's] agent for the purpose of the calls the plaintiff.").

**Seventh,** ratification presupposes an actual authority/agency relationship and requires that the principal have had knowledge of the material facts of the agent's conduct. Dkt. 35-1 at 26-27 (citing *Pascal*, *Johansen*, *Klein*). Plaintiff responds that Pure Energy "accepted the enrollment with

knowledge of the channel through which it arrived" (Dkt. 36 at 18–19), but yet the FAC pleads no facts showing that Pure Energy knew, before or when it processed the enrollment, that the enrollment was generated by allegedly unlawful outbound calls rather than the consumer-initiated inbound call the FAC itself describes. *See* Dkt. 23, ¶¶ 30–37. Processing an enrollment and mailing a contract is the ordinary acceptance of a sale (one Plaintiff himself solicited), not affirmance of an unknown third party's calls. *See, e.g., Landy*, 2021 WL 3634162, at *4–5 (rejecting ratification where plaintiff was transferred to defendant and solicited to purchase its products).[3]

**Eighth**, Plaintiff insists there was no "reversal" because the original Complaint alleged calls by "Defendant and/or its affiliates, agents, and/or other persons." Dkt. 36 at 19–20. But Plaintiff's Opposition to Pure Energy's first motion told the Court that he "received calls directly from Pure Energy" and pressed only a direct-liability theory. Dkt. 15 at 1–2, 9–13. Plaintiff now concedes the opposite—that he is only asserting vicarious liability. Dkt. 36 at 23. That is a "180º reversal" on his allegations, showing that his FAC is nothing more than a "sham" pleading (*see* Dkt. 35-1 at 3, n. 2 (citing *Scott*)); and it is well-accepted that the Court may consider his prior pleadings when determining the plausibility of the allegations in his FAC, need not accept the contradictory allegations in the FAC true, and may even strike them (*id.* at 11 (collecting cases)).

**Lastly**, recognizing the implausibility of his about face, Plaintiff argues that only Pure Energy can identify the callers and "refuse[d] to identify any third parties as the Court ordered." Dkt. 36 at 3, 20–22. Not so. Pure Energy cannot possibly identify the caller if it does not know who they are. That is not a refusal to identify. And Pure Energy has stated under oath, twice, that it does not know Mr. Amar, Mr. Akhavan, or "Alan," and that it does not do business with "PSG

[3] Plaintiff's out-of-circuit authorities, *Dobronski* and *Hossfeld*, do not displace that rule, and in neither case did the plaintiff rescind the transaction or the defendant deny any relationship with the caller under oath. Therefore, those decisions are not remotely applicable here.

Zone," "PurePSGPA," or "Energy Source Services." Dkt. 35-2, ¶ 15. More fundamentally, the persons Plaintiff alleges actually subscribed to and used the calling number were before the Court until Plaintiff chose to dismiss or default them. Dkt. 31. The absence of plausible facts connecting Pure Energy to the calls is a fatal pleading failure, not an invitation to further discovery.

### B. Plaintiff Does Not Plausibly Allege a "Telephone Solicitation" (Count I)

Plaintiff concedes that his own callbacks cannot violate the TCPA and that Count I rests on the three unanswered outbound calls. Dkt. 36 at 23. He contends that the purpose of those calls can be inferred from what was said on the calls ***he*** later placed. Dkt. 36 at 23–25. But the FAC's own allegations defeat that inference. According to the FAC, the representative on Plaintiff's second callback identified him as "Philip Fleming" from Philadelphia, "as that was the incorrect information they had for the individual they were looking for on the previous calls." Dkt. 23, ¶ 34. In other words, Plaintiff alleges that the outbound calls were directed to someone else, for reasons the FAC does not give. And Pure Energy's name surfaced only after Plaintiff volunteered an electric account number for a different property. Dkt. 23, ¶¶ 35–36. Those allegations do not permit a reasonable inference that the earlier unanswered calls were initiated "for the purpose of encouraging the purchase" of Pure Energy's services from ***Plaintiff***. 47 C.F.R. § 64.1200(f)(15).

Plaintiff's cited authorities on this point do not compel a different result. *Abboud*, *Hudson*, and *Coffey* each involved messages the plaintiff actually received and whose content could be examined. Dkt. 36 at 23–25. Here, there is no factual content <u>at all</u> for the calls at issue in the FAC, which alone warrants dismissal on this basis. Dkt. 35-1 at 29 (citing *Greene* and *Gillam*).

As to registration, Pure Energy rests on its opening brief. *See* Dkt. 35-1 at 31–33. Plaintiff's principal authority, *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 656–57 (4th Cir. 2019), addressed whether non-subscriber users of a registered number may sue, not whether the plain text of 47 C.F.R. § 64.1200(c)(2) requires that the "residential telephone subscriber" have "registered

his or her [own] telephone number." Plaintiff does not dispute the FAC is silent on who registered the number, a fact "easily within the knowledge of Plaintiff." Dkt. 35-1 at 32 (quoting *Rogers*).

### C. Count II Fails as a Matter of Law and on the Facts Pled.

Count II fails first for the same reason as Count I: the FAC does not plausibly connect Pure Energy to the subject calls. In response, Plaintiff argues no vicarious liability analysis is needed because § 64.1601(e) contemplates transmission of "the name of the seller on behalf of which the telemarketing call is placed." Dkt. 36 at 28–29. That regulation imposes its obligation on the "person or entity that engages in telemarketing" (47 C.F.R. § 64.1601(e)), and the FAC alleges Pure Energy did not place the subject calls (and thus it did not engage in telemarketing). Dkt. 36 at 22. Moreover, the FAC alleges it was the ***carrier*** that was "transmitting a placeholder" in lieu of a name (Dkt. 23, ¶ 41), not that any ***telemarketer*** failed to transmit required information.[4]

Count II also fails because § 64.1601(e) does not carry a private right of action. Pure Energy acknowledged in its opening brief that courts are divided, and that some courts in this Circuit have reached a different conclusion. *See* Dkt. 35-1 at 33-34 (citing cases). Those decisions are not binding on this Court, and Pure Energy respectfully submits that the majority view on this front is correct: § 64.1601(e) is a technical caller-identification standard of the kind Congress addressed in § 227(d), which contains no private right of action. *See* Dkt. 35-1 at 33 (citing *Worsham* and *Tom*). Absent clear congressional intent, "a cause of action does not exist and courts may not create one." *Alexander v. Sandoval*, 532 U.S. 275, 286–87 (2001). This Court should not to do here.

[4] Plaintiff's effort to reconcile the FAC's inconsistent identification of the "ultimate" carrier by asserting in his brief that Onvoy and Inteliquent "are the same carrier" (Dkt. 36 at 28–29) is of no moment, as his "complaint may not be amended by the briefs in opposition to a motion to dismiss." *Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988).

Dated: November 17, 2026

Respectfully submitted,

*/s/ Steven C. Tolliver, Jr.*

FREDERICK P. SANTARELLI (PA 53901)
STEVEN C. TOLLIVER, JR. (PA 327165)
ELLIOTT GREENLEAF, P.C.
925 Harvest Drive, Suite 300
Blue Bell, PA 19422
(215) 977-1000 (phone)
(215) 977-1099 (fax)
FPSantarelli@elliottgreenleaf.com
sct@elliottgreenleaf.com

JOHN W. MCGUINNESS
(*Pro Hac Vice* to be requested)
A. PAUL HEERINGA
(*Pro Hac Vice* to be requested)
MADELAINE A. NEWCOMB
(Admitted *Pro Hac Vice*)
MANATT, PHELPS & PHILLIP, LLP
1700 M Street, NW 4th Floor
Washington, D. C., 20036
Telephone: 202-585-6500
Facsimile: 202-585-6600
jmcguinness@manatt.com
pheeringa@manatt.com
mnewcomb@manatt.com

*Counsel for Defendant Pure Energy USA PA, LLC*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that I am causing the foregoing to be filed electronically with the Court, where it is available for viewing and downloading from the Court's ECF system, and that such electronic filing automatically generates a Notice of Electronic Filing constituting service of the filed document upon all counsel of record.

Dated: November 17, 2026

*/s/ Steven C. Tolliver, Jr.*
STEVEN C. TOLLIVER, JR.

*Counsel for Defendant Pure Energy USA PA, LLC d/b/a Pure Energy*